1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  JULIE L. GARLAND
   Senior Assistant Attorney General
4  ANYA M. BINSACCA
   Supervising Deputy Attorney General
5  SCOTT C. MATHER, State Bar No. 190912
   Deputy Attorney General
6    455 Golden Gate Avenue, Suite 11000
     San Francisco, CA 94102-7004
7    Telephone: (415) 703-5709
     Fax: (415) 703-5843
8    Email: Scott.Mather@doj.ca.gov

9  Attorneys for Respondent Ben Curry, Acting Warden

10

11              IN THE UNITED STATES DISTRICT COURT

12          FOR THE NORTHERN DISTRICT OF CALIFORNIA

13                  SAN FRANCISCO DIVISION

14

15  **HECTOR HERNANDEZ,**                          C07-3427 PJH

16                              Petitioner,   **ANSWER TO THE ORDER
                                              TO SHOW CAUSE;
17           v.                               MEMORANDUM OF POINTS
                                              AND AUTHORITIES**
18  **ARNOLD SCHWARZENEGGER, Governor,**

19                              Respondent.   Judge:    The Honorable
                                                        Phyllis J. Hamilton
20

21

22

23

24

25

26

27

28

Ans. to OSC; Mem. of P. & A.                    *Hernandez v. Schwarzenegger*
                                                C07-3427 PJH

**TABLE OF CONTENTS**

Page

INTRODUCTION                                                                                      1

ANSWER TO THE ORDER TO SHOW CAUSE                                                 2

MEMORANDUM OF POINTS AND AUTHORITIES                                         10

ARGUMENT                                                                                          10

I.    THE STATE COURT'S DENIAL OF PETITIONER'S HABEAS
      CLAIM WAS NOT CONTRARY TO OR AN UNREASONABLE
      APPLICATION OF CLEARLY ESTABLISHED FEDERAL LAW,
      NOR BASED ON AN UNREASONABLE DETERMINATION
      OF THE FACTS.                                                                           10

      A.    The State Court Decision Was Not Contrary to or an Unreasonable
            Interpretation of Clearly Established Federal Law.                        11

            1.    Petitioner received all process due under the only United States
                  Supreme Court law addressing due process in the parole context.   11

            2.    The Ninth Circuit's some-evidence test is not clearly established
                  Supreme Court law, and thus not applicable to Petitioner's
                  federal habeas corpus claims under AEDPA.                          12

            3.    Even if the some-evidence standard was clearly established federal
                  law, the standard was correctly applied by the state courts.       15

            4.    The Governor may rely on static factors to deny parole.           17

      B.    The Reasoned State Court Decision Upholding the Board's Parole Denial
            Was a Reasonable Interpretation of the Facts.                           19

CONCLUSION                                                                                      21

# TABLE OF AUTHORITIES

Page

**Cases**

*Biggs v. Terhune*
334 F.3d 910 (9th Cir. 2003) ......................................................... 18

*Benny v. U.S. Parole Comm'n*
295 F.3d 977 (9th Cir. 2002) ......................................................... 9

*Carey v. Musladin*
__ U.S. __ 127 S. Ct. 649 (2006) ................................................ 8, 12-15

*Crater v. Galaza*
___F.3d___, 2007 WL 1965122, *2 (9th Cir. July 9, 2007) ............... 13, 14

*Foote v. Del Papa*
___F.3d___ 2007 WL 1892862 (9th Cir. July 3, 2007) ..................... 13, 14

*Greenholtz v. Inmates of Neb. Pen. & Corr. Complex*
442 U.S. 1 (1979) ..................................................... 8, 11, 15, 18

*Hernandez v. Small*
282 F.3d 1132 (9th Cir. 2002) ....................................................... 16

*In re Capistran*
107 Cal. App. 4th 1299 (2003) ....................................................... 9

*In re Dannenberg*
34 Cal. 4th 1061 (2005) ............................................................... 8

*In re Honesto*
130 Cal. App. 3d 81 (2005) ........................................................... 21

*In re Rosenkrantz*
29 Cal. 4th 616 (2002) ............................................................... 9, 15

*Irons v. Carey*
__F.3d __, 2007 WL 2027359 (9th Cir. July 13, 2007) ..................... 9

*Irons v. Carey*
479 F.3d 658 (9th Cir. 2007) ......................................................... 18

*Jancsek v. Oregon Board of Parole*
833 F.2d 1289 (9th Cir. 1987) ....................................................... 12

*Juan H. v. Allen*
408 F.3d 1262 (9th Cir. 2005) ....................................................... 20

*Lockyer v. Andrade*
583 U.S. 63 (2003) ..................................................................... 10

TABLE OF AUTHORITIES  (continued)

Page

*Maynard v. Cartwright,*
486 U.S. 356, 361-62 (1988)                                                11

*Nguyen v. Garcia*
477 F.3d 716 (9th Cir. 2007)                                               14

*Pedro v. Oregon Parole Board*
825 F.2d 1396 (9th Cir. 1987)                                              11

*Rompilla v. Beard*
545 U.S. 374 (2005)                                                        13

*Sandin v. Conner*
515 U.S. 472 (1995)                                                         8

*Sass v. Cal. Bd. of Prison Terms*
461 F.3d 1123 (9th Cir. 2006)                                     8, 9, 16, 19

*Schriro v. Landrigan*
___U.S.___, 127 S. Ct. 1933 (2007)                                     13, 14

*Stanley v. Cal. Supreme Court*
21 F.3d 359 (9th Cir. 1994)                                                 2

*Wainwright v. Greenfield*
474 U.S. 284 (1986)                                                        14

*Wiggins v. Smith*
539 U.S. 510 (2003)                                                        13

*Wilkinson v. Austin*
545 U.S. 2384 (2005)                                                   12, 14

*Williams (Terry) v. Taylor*
529 U.S. 362 (2000)                                                        10

*Wolff v. McDonnell*
418 U.S. 539 (1974)                                                        14

*Ylst v. Nunnemaker*
501 U.S. 797 (1991)                                                        10


**Regulations**

California Code of Regulations, Title 15
        § 2402                                                              9
        § 2402(a)                                                         17
        § 2402(b)                                                         21

# TABLE OF AUTHORITIES  (continued)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Page

**Statutes**

28 United States Code
      § 2254                                            2, 15
      § 2254(a)                                            8
      § 2254(d)                                           12
      § 2254(d)(1)                                        13
      § 2254(d)(1-2)                                  10, 19
      § 2254(d)(2)                                        19
      § 2254(e)(1)                                        19

California Penal Code
      § 3401                                           8, 17
      § 3041(b)                                           17


**Constitutional Provisions**

Sixth Amendment                                          15


**Other Authorities**

Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)          8, 10-12, passim

1 | EDMUND G. BROWN JR.
Attorney General of the State of California
2 | DANE R. GILLETTE
Chief Assistant Attorney General
3 | JULIE L. GARLAND
Senior Assistant Attorney General
4 | ANYA M. BINSACCA
Supervising Deputy Attorney General
5 | SCOTT C. MATHER, State Bar No. 190912
Deputy Attorney General
6 |   455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
7 | Telephone: (415) 703-5709
Fax: (415) 703-5843
8 | Email: Scott.Mather@doj.ca.gov

9 | Attorneys for Respondent Ben Curry, Acting Warden

10 |

11 | IN THE UNITED STATES DISTRICT COURT

12 | FOR THE NORTHERN DISTRICT OF CALIFORNIA

13 | SAN FRANCISCO DIVISION

14 |

| | |
|---|---|
| **HECTOR HERNANDEZ,** | C07-3427 PJH |
| Petitioner, | **ANSWER TO THE ORDER TO SHOW CAUSE; MEMORANDUM OF POINTS AND AUTHORITIES** |
| v. | |
| **ARNOLD SCHWARZENEGGER, Governor,** | Judge:   The Honorable Phyllis J. Hamilton |
| Respondent. | |

## INTRODUCTION

Petitioner Hector Hernandez is a California state inmate incarcerated at the Correctional

Training Facility in Soledad, California, proceeding pro se in this habeas corpus action.

Petitioner alleges that the Governor unconstitutionally denied him parole in November 2006. In

issuing the Order to Show Cause, this Court found cognizable Petitioner's claim that the

Governor's decision was "not supported by evidence sufficient to avoid a due process violation,"

citing Ninth Circuit authority that addressed the issues of continued reliance on the commitment

offense to deny parole and the application of the some-evidence standard. (Order to Show

1  Cause, filed July 9, 2007, at 2.)  Respondent Warden Ben Curry answers as follows:[1]

2  **ANSWER TO THE ORDER TO SHOW CAUSE**

3       In response to the Petition for Writ of Habeas Corpus and this Court's July 9, 2007 Order to

4  Show Cause, Respondent admits, denies, and alleges the following:

5       1.    Petitioner is lawfully in the custody of the California Department of Corrections and

6  Rehabilitation following his March 1986 conviction of second-degree murder with use of a

7  firearm.  (Ex. 1, Judgment-Commitment; Ex. 2, Probation Officer's Report, at 2.)  He is currently

8  serving an indeterminate sentence of seventeen years to life.  (*Id.*)  Petitioner does not challenge

9  his underlying conviction in the current proceeding.

10       2.    On August 15, 1985, Petitioner "shot to death Sylvestre Bustos while attempting to

11  purchase heroin."  The confrontation resulting in Mr. Bustos's death began earlier that morning

12  when Petitioner went to Mr. Bustos's home to purchase heroin.  Petitioner initially knocked on

13  one of the windows, which awoke Mr. Bustos's roommate, Enrique Casias.  Mr. Casias opened

14  the window and, after talking with Petitioner, agreed to sell him some heroin for twenty dollars.

15  After Petitioner paid, Mr. Casias went to retrieve the heroin, which was hidden inside Mr.

16  Bustos's boots next to the living room couch.  At that time, Mr. Bustos was asleep on the couch

17  "with a gun tucked into his waistband" and there were other people in the house as well.

18       While Mr. Casias was bent over the boots, Petitioner forced his away through the home's

19  front door.  Armed with a sawed-off shotgun, Petitioner demanded Mr. Bustos's gun and heroin.

20  When Mr. Bustos arose from the couch, Petitioner shot him from a distance of approximately

21  seven to eight feet and then fled, taking Mr. Bustos's gun with him.  Mr. Bustos was

22  subsequently pronounced dead at the scene.  Petitioner was apprehended approximately three

23  weeks later and, following a jury trial, convicted of second-degree murder.  (Ex. 2 at 2-5; Ex. 3,

24

___

25      1. The proper respondent in this action is Ben Curry, the acting warden at the Correctional

26  Training Facility in Soledad, where Petitioner is incarcerated.  *Stanley v. Cal. Supreme Court*, 21 F.3d 359, 360 (9th Cir. 1994) (holding that the warden where petitioner is incarcerated is the proper

27  respondent); Rule 2(a), 28 U.S.C. §§ 2254. Because the actions complained of in this petition concern a Governor parole decision, however, the term "Governor" is used interchangeably with

28  Respondent in this answer and supporting memorandum of points and authorities.

1 | Governor's Indeterminate Sentence Parole Release Review, at 1; Ex. 4, July 2005 Life Prisoner

2 | Evaluation Report [Board Report] at 1.)

3 |     3.   On June 8, 2006, the Board of Parole Hearings found Petitioner suitable for parole.  In

4 | calculating Petitioner's sentence, the Board determined that Petitioner's murder offense included

5 | the aggravating circumstances of use of a weapon and severe trauma to the victim.  (Ex. 5,

6 | Excerpt of June 8, 2006 Subsequent Parole Consideration Hearing [cover and decision pages

7 | only], at Decision Page 10.)

8 |     4.   On October 20, 2006, the Board issued Petitioner a letter indicating that the June 2006

9 | hearing panel's decision was final.  Petitioner was advised, however, that "[t]he decision finding

10 | [him] suitable for parole may be subject to review by the Governor."  (Ex. 6, Oct. 20, 2006

11 | letter.)

12 |     5.   On November 3, 2006, the Governor's office issued a cover letter and written decision,

13 | both of which indicated that Governor Schwarzenegger had reversed the Board's decision finding

14 | Petitioner suitable for parole.  The cover letter informed petitioner that the Governor's decision

15 | was based on the same factors considered by the Board and that the decision was made pursuant

16 | to Penal Code section 3041.2, which authorizes the Governor to review the Board's parole

17 | decisions regarding persons sentenced to an indeterminate term for a murder conviction.  (Ex. 3;

18 | Ex. 7, Nov. 3, 2006 Cover Letter.)

19 |     6.   The Governor's 2005 decision initially recounted the facts of Petitioner's murder

20 | offense.  The Governor then addressed Petitioner's disciplinary history, which consisted of seven

21 | disciplinary actions for rules violations, including possession of a utility blade knife and inmate

22 | manufactured alcohol (Ex. 8, Disciplinary History Sheet), and twelve instances in which he was

23 | counseled for "minor misconduct," most recently in 2000.  (Ex. 3 at 1; Ex. 4 at 5-6.)

24 |     7.   The Governor also considered the evidence in support of Petitioner's parole, finding

25 | that Petitioner had "made efforts to enhance his ability to function within the law upon release."

26 | The evidence in support of parole included Petitioner's educational, vocational, work-

27 | assignment, and self-help programming.  In addition, the Governor found Petitioner had

28 | maintained "seemingly solid relationships and close ties with supportive family and friends" and

Ans. to OSC; Mem. of P. & A.                                     *Hernandez v. Schwarzenegger*

1   that he had received "some positive evaluations from mental-health and correctional

2   professionals over the years." (Ex. 3 at 1.)

3       8.   The Governor also found that Petitioner had made parole plans. The Governor stated,

4   however, that while Petitioner had marketable skills he had not yet secured a job offer. The

5   Governor determined that "[h]aving a legitimate way to provide financial support for himself

6   immediately upon release is essential to [Petitioner's] success on parole." (Ex. 3 at 2.)

7       9.   In weighing the evidence in support of parole, the Governor indicated that "[d]espite

8   the positive factors," Petitioner's murder offense was "particularly grave, in part because of the

9   callous manner in which it was carried out." The Governor noted the probation officer's

10   determination that the victim had been "particularly vulnerable" when Petitioner had burst into

11   the victim's house and then shot the victim "just after waking him up." (Ex. 3 at 2.)

12       The Governor also determined that there was some evidence of premeditation. The

13   Governor referenced the Court of Appeal opinion regarding Petitioner's offense, which indicated

14   that at his criminal trial Petitioner testified he had previously purchased heroin from the victim

15   on several prior occasions. According to one witness, Petitioner had been arguing with the

16   victim over the quantity of the heroin he received just days before the murder. (Ex. 9, Jan. 25,

17   1988 California Court of Appeal opinion, at 5.) Further, Petitioner not only went to the victim's

18   residence armed with a shotgun, he then "forced his way through the front door of the residence

19   and shot Mr. Bustsos when he got up off the couch." As a result, the Governor concluded that

20   the gravity of Petitioner's crime "is alone sufficient for me to conclude presently that his release

21   from prison would pose an unreasonable public-safety risk." (Ex. 3 at 2.)

22       10.   The Governor also considered Petitioner's statement that he was remorseful and

23   accepted responsibility for his actions. But the Governor noted that Petitioner stated in the Board

24   Report that "the actual gunshot which took [Mr. Bustos'] life was fired in self-defense."

25   Similarly, Petitioner had claimed in his 2006 mental health evaluation that the victim had pulled

26   his gun and fired before Petitioner shot him. (Ex. 10, May 2006 Mental Health Evaluation, at 3.)

27   The Governor indicated that this self-defense claim was contrary to the statements of at least two

28   witnesses, who indicated both in the Fresno County Sheriff's report (ex. 11, Sheriff's Department

1   report) and at trial (ex. 9 at 5) that they had heard only one gunshot on the night of the murder.

2   (Ex. 3 at 2.)  Additionally, according to the Probation Officer's Report (ex. 2 at 3), the Governor

3   considered that a witness saw Petitioner take the gun from the victim.  (Ex. 3 at 2.)

4       "[I]n any event," the Governor stated that Petitioner had taken "a sawed-off shotgun to Mr.

5   Bustos's home, kicked open the door to the residence, and, according to the Court of Appeal

6   opinion, pointed the gun at everyone inside."  In addressing the dangerous situation Petitioner

7   had created, the Governor considered that the 2003 Board panel had asked Petitioner about his

8   self-defense claim and how he would have expected Mr. Bustos to respond to Petitioner's

9   intrusion into his home while armed with a shotgun.  Petitioner acknowledged that he would not

10  have expected a different outcome, saying that he would expect "[p]robably everything that

11  happened."  (Ex. 3 at 2; ex. 21, Excerpts of Feb. 2003 Subsequent Parole Consideration Hearing

12  Transcript, at 47-48.)

13      11.  The Governor also considered that when Petitioner committed this murder he was 26

14  years old and "already had an extensive criminal record."  The Governor indicated that

15  Petitioner's juvenile record included adjudications for "armed robbery, assault with a deadly

16  weapon, burglary, petty theft, carrying a concealed firearm, joyriding, and resisting an officer."

17  Further, the Governor observed that Petitioner's criminal conduct continued as an adult with

18  convictions for "discharging a firearm at an occupied dwelling/vehicle, harboring a federal

19  fugitive, being under the influence of a controlled substance, and driving under the influence of a

20  controlled substance."  Additionally, the Governor noted that Petitioner had admitted to the

21  probation officer that he "routinely abused heroin, and he used cocaine, LSD, marijuana and PCP

22  prior to the life offense."  The Governor therefore concluded that Petitioner's "criminal history,

23  which began at a young age and include incidents of violent and assaultive behavior toward

24  others, demonstrates his unwillingness to conform his behavior to the rules of society, and this

25  weighs against his parole suitability at this time."  (Ex. 3 at 2; Ex. 2 at 5-15; Ex. 4 at 3-4.)

26      12.  The Governor stated that the 2006 Board panel had "noted [Petitioner's] prior criminal

27  history and drug abuse when it found he 'committed the crime as a result of significant stress in

28  [his] life."  But the Governor also observed that the Board found this stress was "self-induced"

Ans. to OSC; Mem. of P. & A.                                    *Hernandez v. Schwarzenegger*
                                                               C07-3427 PJH

1   and that the panel clarified that "[w]e're not in any way, shape or form saying that you had stress

2   in your life." The Governor then stated that while Petitioner was "indeed abusing heroin at the

3   time, he was also aware of available treatment programs in the community," as evidenced by his

4   telling the probation officer that he had completed a Methadone treatment program in 1985, the

5   same year in which he later murdered Mr. Bustos. Thus, the Governor concluded that even if

6   Petitioner was "under stress" when he committed the murder, the Governor believed "that factor

7   alone is presently insufficient to mitigate the nature and circumstances of the murder." (Ex. 3 at

8   3; Ex. 2 at 15.)

9       13. Finally, the Governor considered that the Fresno County District Attorney had opposed

10   parole in regard to Petitioner's 2006 parole hearing "based, in part, of the gravity of the offense,

11   [Petitioner's] lengthy criminal and drug abuse history, his lack of insight into the nature of his

12   offense, and his failure to establish concrete parole plans." (Ex. 3 at 3; Ex. 12, Fresno County

13   District Attorney letter.)

14       14. In his conclusion, the Governor stated that Petitioner was now age 47 and, "after being

15   incarcerated for more than 21 years," had made "some creditable gains in prison." But the

16   Governor concluded that based on the record before him, and "after carefully considering the

17   very same factors the Board must consider, I find that the negative factors weighing against

18   [Petitioner's] parole suitability presently outweigh the positive ones." As a result, because the

19   Governor determined that Petitioner's parole release would "pose an unreasonable risk of danger

20   to society at this time," he reversed the Board's 2006 decision to grant Petitioner parole. (Ex. 3

21   at 3.)

22       15. On January 11, 2007, the Fresno County Superior Court denied Petitioner's habeas

23   corpus petition in which Petitioner appears to have alleged the same causes of action as found

24   cognizable in his federal Petition. The superior court initially stated that regardless of whether or

25   not the court agreed with the Governor's decision, it could not overturn that decision so long as it

26   was supported by some evidence. The court then found that the Governor's decision was

27   supported by some evidence that Petitioner's parole release "could pose an unreasonable risk to

28   society or a threat to public safety, because of the violent nature of the original offense, and the

Ans. to OSC; Mem. of P. & A.                                    *Hernandez v. Schwarzenegger*
                                                                C07-3427 PJH

1 escalating pattern of petitioner's criminal conduct before the murder, as well as his multiple

2 disciplinary infractions during his incarceration."

3     As to the murder offense, the court specifically found that there was some evidence of

4 premeditation and that the murder was "committed in a callous manner." Further, the court

5 indicated that although Petitioner claimed he shot Mr. Bustos in self-defense, two witnesses had

6 testified that they heard only one shot. Also, the court determined that Petitioner had "created the

7 dangerous situation by forcing his way into Bustos' residence armed with a shotgun." The court

8 thus found that "the Governor's skepticism about petitioner's expressed remorse and acceptance

9 of responsibility has at least some basis in fact." In denying the petition, the court concluded that

10 "there was at least some evidence that petitioner might still pose a risk if released based on the

11 petitioner's criminal history, as well as the seriousness of the life offense itself and the

12 petitioner's multiple disciplinary infractions while incarcerated." (Ex. 13, Cal. Super. Ct. Pet.;

13 ex. 14, Cal. Super. Ct. Order.)

14     16.  On March 1, 2007, the California Court of Appeal summarily denied Petitioner's

15 habeas corpus petition, in which he alleged the same causes of action as in his federal Petition.

16 (Exs. 15-16.)

17     17.  On May 9, 2007, the California Supreme Court summarily denied Petitioner's petition

18 for review, in which he alleged the same causes of action as in his federal Petition. (Exs. 17-18.)

19 Hence, Respondent admits that Petitioner has exhausted his state court remedies in regard to the

20 issues currently before this Court. However, Respondent does not admit that Petitioner has

21 exhausted his claims to the extent that they are more broadly interpreted to encompass any

22 systematic issues beyond this particular review of the Governor's November 2006 parole denial.

23     18.  Respondent denies that Petitioner has shown that the state court's denial of

24 habeas corpus was contrary to, or involved an unreasonable application of, clearly established

25 Supreme Court law, or that the denial was based on an unreasonable determination of facts in

26 light of the evidence presented. Petitioner therefore fails to make a case for relief under the

27 Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).

28     19.  Respondent denies that Petitioner has a federally protected liberty interest in parole.

Ans. to OSC; Mem. of P. & A.                                          *Hernandez v. Schwarzenegger*
                                                                     C07-3427 PJH

1    *Greenholtz v. Inmates of Neb. Pen. & Corr. Complex*, 442 U.S. 1 (1979); *In re Dannenberg*, 34

2    Cal. 4th 1061, 1087-88 (2005) (clarifying that under California Penal Code section 3041, the

3    setting of a parole release date is neither mandatory nor presumed); *Sandin v. Conner*, 515 U.S.

4    472, 484 (1995); *contra Sass v. Cal. Bd. of Prison Terms*, 461 F.3d 1123, 1128 (9th Cir. 2006).

5    Accordingly, because Petitioner is not in custody in violation of federal law, he has not alleged a

6    federal question and this Court does not have subject matter jurisdiction to decide his petition.

7    28 U.S.C. § 2254(a).

8        20.    Respondent affirmatively alleges that even if Petitioner has a federally protected liberty

9    interest in parole, Petitioner had an opportunity to present his views at his 2006 parole hearing,

10    and that the Governor provided Petitioner with a detailed explanation as to why he was denied

11    parole.  Hence, Petitioner received all the process due under *Greenholtz*, the only clearly

12    established Supreme Court law regarding the due process rights of inmates at parole

13    consideration hearings.

14        21.    Respondent affirmatively alleges that there is no United States Supreme Court decision

15    requiring a state parole decision to be supported by some evidence.  *See Carey v. Musladin*, __

16    U.S. __ 127 S. Ct. 649, 654  (2006) (holding that the absence of Supreme Court law on a

17    particular issue precludes habeas relief under AEDPA).  Thus, Petitioner has not shown that the

18    state court's denial of habeas corpus was contrary to, or involved an unreasonable application of,

19    clearly established Supreme Court law, or that the denial was based on an unreasonable

20    determination of facts in light of the evidence presented.  Hence, Petitioner fails to make a prima

21    facie case for relief under AEDPA.

22        22.    Respondent affirmatively alleges that the Governor considered all reliable and relevant

23    evidence in determining Petitioner's suitability for parole, and that the Governor's decision

24    finding that Petitioner's parole release would "pose an unreasonable risk of danger to society at

25    this time" (Ex. 3 at 3) is supported by some evidence.

26        23.    Respondent affirmatively alleges that the Governor properly considered the gravity of

27    Petitioner's commitment offense and criminal history, as required under California Penal Code

28    section 3041(b), as well as his post-incarceration disciplinary history and parole plans, as

Ans. to OSC; Mem. of P. & A.                                              *Hernandez v. Schwarzenegger*
                                                                          C07-3427 PJH

1   provided for under California Code of Regulations, title 15, section 2402. Respondent further

2   affirmatively alleges that federal due process, as determined by clearly established Supreme

3   Court law, does not preclude the Governor from relying on the immutable factors of the crime

4   and criminal history to deny parole. *Irons v. Carey*, __F.3d __, 2007 WL 2027359 (9th Cir. July

5   13, 2007); *Sass*, 461 F.3d at 1129.

6   24. Respondent denies that the Governor's November 2006 decision denying parole

7   violated Petitioner's federal due process rights.

8   25. Respondent affirmatively alleges that Petitioner fails to state or establish any grounds

9   for federal habeas corpus relief.

10   26. Respondent affirmatively alleges that if the petition is granted, Petitioner's remedy is

11   limited to a new parole review by the Governor that comports with due process. *Benny v. U.S.*

12   *Parole Comm'n*, 295 F.3d 977, 984-85 (9th Cir. 2002) (finding that the parole authority must

13   exercise the discretion in determining whether or not an inmate is suitable for parole); *In re*

14   *Rosenkrantz*, 29 Cal. 4th 616, 658 (2002) (finding that the proper remedy if a parole decision

15   lacks some evidence is a new proceeding that comports with due process).[2]

16   27. Respondent does not allege that there is any procedural bar to this action, including

17   statute of limitations or non-retroactivity.

18   28. Respondent denies that an evidentiary hearing is necessary in this matter.

19   29. Except as expressly admitted above, Respondent denies, generally and

20   specifically, each and every allegation of the petition, and specifically denies that Petitioner's

21   administrative, statutory, or constitutional rights have been violated in any way.

22   For the reasons stated in this Answer and in the following Memorandum of Points and

23   Authorities, this Court should deny the Petition.

24   //

25

26   _____

27   2. Although *Rosenkrantz* specifically addressed the remedy regarding Board parole hearing, because the Governor and the Board possess equal discretion in reviewing parole suitability, equal remedies should be applied to correct due process violations. *In re Capistran*, 107 Cal. App. 4th

28   1299, 1307 (2003).

Ans. to OSC; Mem. of P. & A.                                                                 *Hernandez v. Schwarzenegger*
                                                                                                            C07-3427 PJH

1       **MEMORANDUM OF POINTS AND AUTHORITIES**

2       **ARGUMENT**

3       **I.**

4       **THE STATE COURT'S DENIAL OF PETITIONER'S HABEAS**
        **CLAIM WAS NOT CONTRARY TO OR AN UNREASONABLE**
5       **APPLICATION OF CLEARLY ESTABLISHED FEDERAL LAW,**
        **NOR BASED ON AN UNREASONABLE DETERMINATION**
6       **OF THE FACTS.**

7           Under AEDPA, when a state inmate's claim has been adjudicated on the merits in state

8       court, a federal court may grant a writ of habeas corpus on the same claim only if the state court's

9       adjudication was either (1) "contrary to, or involved an unreasonable application of, clearly

10      established Federal law, as determined by the Supreme Court of the United States;" or (2) "based

11      on an unreasonable determination of the facts in light of the evidence presented at the State Court

12      proceeding." 28 U.S.C. § 2254(d)(1-2).

13          "Clearly established federal law, as determined by the Supreme Court of the United States,"

14      refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time

15      of the relevant state-court decision." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412 (2000).  A

16      state court decision is contrary to established federal law if "the state court applies a rule that

17      contradicts the governing law set forth in [United States Supreme Court] cases," or "the state

18      court confronts a set of facts that are materially indistinguishable from a decision of [the United

19      States Supreme] Court and nevertheless arrives at a result different from [the Court's]

20      precedent." *Lockyer v. Andrade*, 583 U.S. 63, 73 (2003) (citations and internal quotation marks

21      omitted).  A state court decision is an unreasonable application of clearly established law "if the

22      state court identifies the correct governing legal principle from [the United States Supreme

23      Court's] decision but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

24      at 75.  It is not enough that the state court applies the law erroneously or incorrectly; rather, the

25      application must be objectively unreasonable. *Id.* at 75-76.

26          When, as here, the California Supreme Court denies a petition for review without

27      comment, the federal court will look to the last reasoned decision as the basis for the state court's

28      judgment. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991).  In this case, the last reasoned

Ans. to OSC; Mem. of P. & A.                                    *Hernandez v. Schwarzenegger*
                                                               C07-3427 PJH

1  decision is the Fresno County Superior Court's order denying Petitioner's habeas claims.  (Ex.

2  14.)  As this decision is neither contrary to or an unreasonable application of federal law, nor

3  based on an unreasonable determination of the facts in light of the evidence presented, Petitioner

4  fails to establish a violation of AEDPA standards.  Therefore, his petition for writ of habeas

5  corpus must be denied.

6          **A.    The State Court Decision Was Not Contrary to or an Unreasonable**
                  **Interpretation of Clearly Established Federal Law.**

7

8        The first standard under AEDPA is that a state court habeas decision must not be contrary

9  to, or an unreasonable interpretation of, clearly established federal law.  Here, Petitioner received

10  all process due under *Greenholtz*, the only clearly established federal law regarding the due

11  process rights of inmates at a parole consideration hearing.  Furthermore, federal law does not

12  preclude the Board from relying on the commitment offense or other immutable factors to deny

13  parole.  As such, the state court decision denying relief must stand.

14          **1.    Petitioner received all process due under the only United States Supreme**
                  **Court law addressing due process in the parole context.**

15

16        The setting of a parole date is not part of the criminal prosecution so the full panoply of

17  rights afforded a defendant in a criminal proceeding are not constitutionally mandated in a parole

18  proceeding.  *Pedro v. Or. Parole Bd.*, 825 F.2d 1396, 1398-99 (9th Cir. 1987).  The only

19  Supreme Court decision to address the requirements of due process at a parole consideration

20  hearing has held that a parole board's procedures are constitutionally adequate if the inmate is

21  given an opportunity to be heard and a decision informing him of the reasons he did not qualify

22  for parole.  *Greenholtz*, 442 U.S. at 16.  Thus, as a matter of "clearly established" Supreme Court

23  law for review of a federal habeas corpus petition under AEDPA, an inmate's challenge to a

24  parole decision will fail if the inmate has received the protections required under *Greenholtz*.

25  *Maynard v. Cartwright*, 486 U.S. 356, 361-62 (1988).[3/]

26  _____

27        3. The Supreme Court has continued to cite *Greenholtz* approvingly for the proposition that
the "level of process due for inmates being considered for release on parole includes an opportunity

28  to be heard and notice of any adverse decision" and noted that *Greenholtz* remains "instructive for

Ans. to OSC; Mem. of P. & A.                           *Hernandez v. Schwarzenegger*
                                                                      C07-3427 PJH

1    Here, Petitioner does not contend that he failed to receive these protections. (*See*

2    *generally* Pet.) Rather, it is undisputed that Petitioner appeared at the June 2006 Board parole

3    consideration hearing and received an opportunity to be heard, and that the Governor, after

4    considering the same factors considered by the Board, issued a decision informing Petitioner of

5    the grounds upon which he was denied parole. (Ex. 3 at 3; ex. 7.)  Because Petitioner thus

6    received all the process due under the United States Supreme Court precedent finding a federal

7    liberty interest in discretionary parole release, the state court decision was not contrary to or an

8    unreasonable application of clearly established federal law as determined by the United States

9    Supreme Court. *See* 28 U.S.C. § 2254(d).

10      **2.    The Ninth Circuit's some-evidence test is not clearly established Supreme**
        **Court law, and thus not applicable to Petitioner's federal habeas corpus**
11      **claims under AEDPA.**

12      Petitioner alleges that the Governor's decision must be overturned because it is not

13    supported by some evidence.  This argument stems from the holding in *Hill*, 472 U.S. at 455, in

14    which the United States Supreme Court determined that some evidence must support the decision

15    of a prison disciplinary board to revoke good time credits.  In *Jancsek v. Oregon Board of*

16    *Parole*, 833 F.2d 1289, 1290 (9th Cir. 1987), the Ninth Circuit held that this standard applies not

17    only in the disciplinary context, but the parole context as well, and that some evidence must

18    support the Board's denials of parole.  Because the holding in *Jancsek* is not clearly established

19    federal law under AEDPA standards, the some-evidence standard may not be applied in federal

20    habeas proceedings challenging parole denials.

21      As the Supreme Court clarified in *Musladin*, 127 S. Ct. 649, where the Court has not

22    applied a test or standard to a certain type of case it cannot be said that the failure of a state court

23    to do so was an unreasonable application of clearly established federal law.  In *Musladin*, the

24    petitioner challenged a state court decision finding that the fact that the victim's family wore

25    buttons displaying the victim's image at the defendant trial was not inherently prejudicial. *Id.* at

26    _____

27    [its] discussion of the appropriate level of procedural safeguards." *Wilkinson v. Austin*, 545 U.S.
      2384, 2397 (2005).
28

Ans. to OSC; Mem. of P. & A.                                      *Hernandez v. Schwarzenegger*
                                                                 C07-3427 PJH

650. The Ninth Circuit held that the state court decision was contrary to or an unreasonable application of federal law regarding state sponsored courtroom practices. *Id.* In reversing the Ninth Circuit, the Supreme Court noted that although it had articulated a test to determine whether state sponsored courtroom practices were inherently prejudicial, it had never addressed the issue of whether conduct by a private party was so prejudicial that it deprived the defendant of his right to a fair trial. *Id.* at 654. "Given the lack of holdings" on the specific issue, the Court reversed the Ninth Circuit and held that the state court's decision was not an unreasonable application of federal law. *Id.*

The Supreme Court has since reiterated its holding in *Musladin*, confirming that a state court decision cannot be contrary to or an unreasonable application of federal law where the Court has not addressed what protection or test is required in a specific factual or legal scenario. In *Schriro v. Landrigan*, ___U.S.___, 127 S. Ct. 1933 (2007), the Ninth Circuit found that the state court unreasonably applied *Wiggins v. Smith*, 539 U.S. 510 (2003) and *Rompilla v. Beard*, 545 U.S. 374, 381 (2005) when it denied federal habeas relief to a defendant asserting ineffective assistance of counsel, despite the fact that he had refused to allow the presentation of any mitigating evidence. *Landrigan*, 127 S. Ct. at 1942. The Supreme Court reversed that part of the decision after distinguishing the facts of the case from those in *Wiggins* and *Rompilla*. *Wiggins* did not address a situation in which the client had interfered with counsel's efforts to present mitigating evidence. *Id.* And in *Rompilla*, the defendant had not informed the court that he did not want mitigating evidence presented. *Id.* Because the high court had never addressed a situation like the one raised in *Landrigan*, the state court's decision was not objectively unreasonable. *Id.*

Several recent Ninth Circuit decisions also emphasize that there can be no clearly established federal law where the Supreme Court has never addressed a particular issue or applied a certain test to a specific type of proceeding. *Crater v. Galaza*, ___F.3d___, 2007 WL 1965122, *2, 5 and n.8 (9th Cir. July 9, 2007) (citing *Musladin*, the Ninth Circuit acknowledged that decisions by courts other than the Supreme Court as "non-dispositive" under § 2254(d)(1)); *Foote v. Del Papa*, ___F.3d___, 2007 WL 1892862 (9th Cir. July 3, 2007) (affirming district

1  court's denial of petition alleging ineffective assistance of appellate counsel based on an alleged

2  conflict of interest because no Supreme Court case has held that such an irreconcilable conflict

3  violates the Sixth Amendment); *Nguyen v. Garcia*, 477 F.3d 716, 718, 727 (9th Cir. 2007)

4  (holding that state court's decision finding *Wainwright v. Greenfield*, 474 U.S. 284 (1986) did

5  not apply to a state court competency hearing was not contrary to clearly established federal law

6  because Supreme Court had not held that *Wainwright* applied to competency hearings);[4]

7      Because the Supreme Court developed the some-evidence standard in the context of a

8  prison disciplinary hearing, which is fundamentally different from a parole proceeding,

9  application of this standard to a parole decision cannot be clearly established federal law.

10  *Musladin*, 127 S. Ct. at 654; *Landrigan*, 127 S. Ct. at 1942. The level of due process protections

11  to which an inmate is entitled is directly related to the level of his liberty interest and the nature

12  of the decision being made. *Greenholtz*, 442 U.S. at 13-14. At a disciplinary hearing, the inquiry

13  is retrospective and factual in nature, and the prisoner faces a potential loss of credits.

14  *Greenholtz*, 442 U.S. at 14. A decision to parole an inmate is fundamentally different. First, the

15  level of liberty interest an inmate has in the possibility of parole is markedly different from that

16  of an inmate who is facing a loss of credits. *Wolff v. McDonnell*, 418 U.S. 539, 560-561 (1974)

17  (contrasting the different interests that a parolee and a prisoner may have in their deprivation of

18  liberty); *Greenholtz*, 442 U.S. at 13-14 (distinguishing the parole suitability decision from the

19  parole revocation and disciplinary decisions). Second, a parole decision is not factual in nature.

20  Rather, it is a predictive and subjective decision requiring discretionary analysis of the inmate's

21  suitability for release. *Greenholtz*, 442 U.S. at 9-10; *Wilkinson*, 545 U.S. at 229. In fact, due to

22  the discretionary nature of parole decisions, the Supreme Court has held that, in contrast to prison

23  disciplinary hearings, due process does not require the decision-maker to specify the evidence

24  showing that a prisoner is unsuitable for parole. *Greenholtz*, 442 U.S. at 15.

25      In summary, application of the some-evidence standard to a parole proceeding is not

26  ────────────────────────────

27      4. As required by local rule, a copy of *Foote v. Del Papa*, ___F.3d___, 2007 WL 1892862
    (July 3, 2007) is attached as Exhibit 19; and *Crater v. Galaza*,___F.3d___, 2007 WL 1965122 (July

28  9, 2007) is attached as Exhibit 20.

Ans. to OSC; Mem. of P. & A.                                    *Hernandez v. Schwarzenegger*
                                                                C07-3427 PJH

1   clearly established federal law.  Instead, the *only* clearly established Supreme Court authority

2   describing the process due when there is a federal liberty interest in parole simply requires that

3   the inmate be given an opportunity to be heard and advised of the reasons he was not found

4   suitable for parole.  *Greenholtz*, 442 U.S. at 16.  Indeed, in *Greenholtz* the Supreme Court

5   rejected the argument that due process requires an evidentiary standard of review in parole cases,

6   holding that "nothing in the due process concepts as they have thus far evolved that requires the

7   Parole Board to specify the particular 'evidence' in the inmate's file or at his interview on which

8   it rests the discretionary determination that an inmate is not ready for conditional release." *Id.* at

9   15-16.  The Supreme Court has thus explicitly rejected the notion that a parole decision must be

10  supported by any particular quantum of evidence.  *Id.*

11          Accordingly, because application of the some-evidence standard to parole denial

12  challenges is not clearly established Supreme Court law regarding federal due process, AEDPA

13  precludes this standard from being applied to Petitioner's claims in this case.  *See* 28 U.S.C. §

14  2254(d); *Musladin*, 127 S. Ct. at 654.

15          **3.    Even if the some-evidence standard was clearly established federal
            law, the standard was correctly applied by the state courts.**

16

17          Even if the some-evidence standard was clearly established federal law for AEDPA

18  purposes, Petitioner's claim would nonetheless fail because the state court correctly applied the

19  standard.  Under California law, the proper level of judicial review is whether "some evidence in

20  the record before the Board supports the decision to deny parole, based upon the factors specified

21  by statute and regulation." *Rosenkrantz*, 29 Cal. 4th at 658.  The some-evidence standard "does

22  not require examination of the entire record, independent assessment of the credibility of

23  witnesses, or weighing of the evidence;" rather, it is satisfied if there is "any evidence in the

24  record that could support the conclusion reached by the [B]oard." *Hill*, 472 U.S. at 455-57; *see*

25  *also Sass*, 461 F.3d at 1129 (stating that "*Hill's* some evidence standard is minimal.")

26          Here, the state court reasonably determined the Governor's decision denying parole was

27  supported by some evidence that Petitioner's parole release "could pose an unreasonable risk to

28  society or a threat to public safety, because of the violent nature of the original offense, and the

Ans. to OSC; Mem. of P. & A.                                    *Hernandez v. Schwarzenegger*
                                                                C07-3427 PJH

15

1    escalating pattern of petitioner's criminal conduct before the murder, as well as his multiple

2    disciplinary infractions during his incarceration." (Ex. 14 at 2-4.) As to the murder offense, the

3    state court specifically found that there was some evidence of premeditation and that the murder

4    was "committed in a callous manner." (Ex. 14 at 3.) Further, the court indicated that although

5    Petitioner claimed he shot Mr. Bustos in self-defense, two witnesses had testified that they heard

6    only one shot. (*Id.*) Also, the court determined that Petitioner had "created the dangerous

7    situation by forcing his way into Bustos' residence armed with a shotgun." (*Id.*) The court thus

8    reasonably found that "the Governor's skepticism about petitioner's expressed remorse and

9    acceptance of responsibility has at least some basis in fact." (*Id.*)

10         Based on the state court's review of the Governor's decision, Petitioner cannot show that

11    the state court unreasonably concluded that "there was at least some evidence that petitioner

12    might still pose a risk if released based on the petitioner's criminal history, as well as the

13    seriousness of the life offense itself and the petitioner's multiple disciplinary infractions while

14    incarcerated." (Ex. 14 at 4.) Moreover, although not explicitly considered by the state court, the

15    Governor had also cited Petitioner's lack of a job offer in his parole plans, stating that "[h]aving

16    a legitimate way to provide financial support for himself immediately upon release is essential to

17    [Petitioner']s success on parole." (Ex. 3 at 2.) This Court may consider that aspect of the

18    Governor's decision as further grounds in support of the validity of the state court decision given

19    that under AEDPA, this Court is only concerned with whether the superior court's decision

20    granting or denying relief, as opposed to its reasoning, is contrary to or an unreasonable

21    application of Supreme Court law. *Hernandez v. Small*, 282 F.3d 1132, 1140 (9th Cir. 2002)

22    (determining in habeas proceedings that "the intricacies of the state court's analysis need not

23    concern us; what matters is whether the *decision* the court reached was contrary to controlling

24    federal law").

25         Accordingly, to the extent that the some-evidence test in *Superintendent v. Hill* is clearly

26    established federal law, Petitioner's claims must be denied because he cannot show that this

27    standard was unreasonably applied by the state courts.

28    //

1    **4.    The Governor may rely on static factors to deny parole.**

2        Petitioner also argues that due process precludes the Governor from relying on static

3    factors—namely, the circumstances of the commitment offense and his significant criminal

4    record—to deny parole. (Pet. at 11-12.)  But for several reasons, Petitioner cannot show that the

5    state court's decision to uphold the Governor's parole denial based in part of these immutable

6    factors was contrary to, or an unreasonable application of, clearly established Supreme Court

7    law.

8        First, California Penal Code section 3401 requires that the parole authority examine the

9    commitment offense, providing that the parole authority "shall set a release date unless it

10   determines that the gravity of the current convicted offense or offenses, or the timing and gravity

11   of current or past convicted offense or offenses, is such that consideration of the public safety

12   requires a more lengthy period of incarceration."  Cal. Pen. Code, § 3041(b); *Dannenberg*, 34

13   Cal. 4th at 1080.[5/]  The applicable regulations also provide that a prisoner shall be denied parole

14   if he "will pose an unreasonable risk of danger to society if released from prison."  Cal. Code

15   Regs. tit. 15, § 2402(a).

16       Second, the California Supreme Court held in *Dannenberg* that the parole authority may

17   rely *solely* on the circumstances of the commitment offense.  34 Cal. 4th at 1094.  Hence, "an

18   inmate whose offense was so serious as to warrant, at the outset, a maximum term of life in

19   prison, may be denied parole during whatever time the Board deems required for 'this individual'

20   by 'consideration of the *public safety*.'"  *Id.* at 1084.

21       Third, the Governor's consideration of public safety is not limited solely to the inmate's

22   potential for violence as suggested by Petitioner's argument that it is improper to consider the

23   static circumstances of his commitment offense given the length of time since that offense was

24   committed.  Rather, the Supreme Court has indicated that the parole authority's consideration of

25   the commitment offense also must account for "whether, in light of the nature of the crime, the

26

27

28       5.    The Governor's parole suitability decisions are subject to the same due process requirements that apply to the Board.  *Rosenkrantz,* 29 Cal. 4th at 660.

1   inmate's release will minimize the gravity of the offense, weaken the deterrent impact on others,

2   and undermine respect for the administration of justice." *Greenholtz*, 442 U.S. at 8.

3          The Ninth Circuit's holding in *Biggs v. Terhune*, 334 F.3d 910 (9th Cir. 2003), does not

4   compel a different result. In *Biggs*, the Ninth Circuit stated that the Board's continuing reliance

5   on an unchanging factor to deny parole "could result in a due process violation." *Id.* at 917.

6   However, the *Biggs* court did not definitively indicate that reliance on an unchanging factor

7   necessarily violates due process, only that it possibly could. Indeed, the court praised Biggs for

8   being "a model inmate," and found that the record was "replete with the gains Biggs has made,"

9   including a master's degree in business administration. *Id.* at 912. Nonetheless, the court denied

10  habeas relief because the Board's decision to deny parole–which relied solely on the commitment

11  offense–was supported by some evidence. *Id.* at 917.

12         Most importantly, the statement in *Biggs* is merely circuit court dicta, and not clearly

13  established federal law sufficient to overturn a state court decision under AEDPA standards. The

14  Ninth Circuit has emphasized that *Biggs* does not contain mandatory language, and that "[u]nder

15  AEDPA, it is not our function to speculate about how future parole hearings could proceed."

16  *Sass*, 461 F.3d at 1129. The *Sass* court then rejected the argument that the Board's reliance on

17  "immutable behavioral evidence" to deny parole violated federal due process. *Id.*

18         The Ninth Circuit most recently addressed this issue in *Irons*. In overturning a district

19  court grant of habeas corpus, the Ninth Circuit held that despite substantial evidence of the

20  inmate-petitioner's rehabilitation, the Board acted properly and did not abuse its discretion by

21  relying on the circumstances of the commitment offense to deny parole. *Irons*, 2007 WL

22  2027359 at *5-6. Particularly relevant to this case, the court noted that Irons, like Petitioner in

23  this case, had not yet served his minimum term. *Id.* at *5. Thus, the dicta from *Biggs* and its

24  progeny do not prelude the Board from using circumstances of the commitment offense to deny

25  parole, nor may this dicta be used to overturn a valid state court decision.

26         Accordingly, because Petitioner fails to prove that the state court decision denying parole

27  in part based on the Governor's consideration of his commitment offense and criminal history is

28  contrary to or an unreasonable application of clearly established Supreme Court law, his federal

1  petition must be denied.

2  **B.    The Reasoned State Court Decision Upholding the Board's Parole Denial Was a Reasonable Interpretation of the Facts.**

3

4      The second standard under AEDPA is that a state court habeas decision must be based on

5  a reasonable determination of the facts in light of the evidence presented. 28 U.S.C. §

6  2254(d)(2). AEDPA affords a great deal of deference to the state courts in this regard, stating

7  that "a determination of a factual issue made by a State court shall be presumed to be correct."

8  28 U.S.C. § 2254(e)(1). Although Petitioner invites the Court to re-examine the facts of his case

9  and re-weigh the evidence considered by the Governor, AEDPA does not permit this degree of

10  judicial intrusion. So long as the state court's reasoned decision was a reasonable determination

11  of the facts presented, Petitioner's claim must fail.

12      Petitioner bears the burden of proving that the state court's factual determinations were

13  objectively unreasonable. 28 U.S.C. § 2254(e)(1); *Juan H. v. Allen*, 408 F.3d 1262, 1270 (9th

14  Cir. 2005). Petitioner fails to meet this burden, as the state court reasonably found that some

15  evidence in the record supported the Governor's findings that Petitioner's parole release "could

16  pose an unreasonable risk to society or a threat to public safety, because of the violent nature of

17  the original offense, and the escalating pattern of petitioner's criminal conduct before the murder,

18  as well as his multiple disciplinary infractions during his incarceration." (Ex. 14 at 2-4.)

19      As to the murder offense, Petitioner cannot dispute that the state court reasonably

20  determined that there was some evidence of premeditation, that the murder was "committed in a

21  callous manner, and that "the Governor's skepticism about petitioner's expressed remorse and

22  acceptance of responsibility has at least some basis in fact." (Ex. 14 at 3.) As to this last

23  consideration, the state court observed that although Petitioner claimed he shot Mr. Bustos in

24  self-defense, two witnesses had testified that they heard only one shot. (*Id.*) Furthermore,

25  Petitioner had "created the dangerous situation by forcing his way into Bustos' residence armed

26  with a shotgun." (*Id.*) Indeed, as the Governor noted, when asked by the Board in 2003 about

27  his self-defense claim and the way he would expect Mr. Bustos to have responded to Petitioner's

28  intrusion into his home while armed with a shotgun, Petitioner acknowledged that he would not

Ans. to OSC; Mem. of P. & A.                                          *Hernandez v. Schwarzenegger*
                                                                      C07-3427 PJH

1    have expected a different outcome. (Ex. 3 at 2.) Rather, Petitioner stated he would expect

2    "[p]robably everything that happened." (*Id.*; *see also* ex. 21 at 47-48.) Thus, Petitioner cannot

3    show that the state court unreasonably construed the evidence regarding the murder offense and

4    Petitioner's remorse that was relied on by the Governor.

5         Petitioner also alleges that his criminal and substance abuse history should not have been

6    considered given that, although admittedly reflecting some violent crime, he never seriously

7    injured anyone and because he committed the robberies solely to support his drug addiction

8    (which is now in institutional remission). (Pet. at 12-13.) The state court, however, indicated

9    that under the some-evidence standard it could not grant relief even if it disagreed with the

10   Governor's decision (or if agreed with Petitioner's perspective regarding his parole suitability),

11   but rather was required to uphold the Governor's decision "so long as it is supported by 'some

12   evidence.'" (Ex. 14 at 1-2.) The state court subsequently indicated that Petitioner had an

13   extensive criminal record both as a juvenile and as an adult, as well as an extensive substance

14   abuse history. (*Id.* at 3-4.)

15        While Petitioner may disagree with the weight the Governor attributed to these factors, he

16   cannot demonstrate that the state court unreasonably interpreted the facts of his criminal and

17   social history. Petitioner thus cannot demonstrate under AEDPA that the state court

18   unreasonably upheld, as supported by some evidence, the Governor's determination that

19   Petitioner's "criminal history, which began at a young age and include incidents of violent and

20   assaultive behavior toward others, demonstrates his unwillingness to conform his behavior to the

21   rules of society, and this weighs against his parole suitability at this time" (Ex. 2 at 2).

22        Similarly, Petitioner also cannot show that the state court unreasonably interpreted the

23   facts regarding his substantial disciplinary history, consisting of twelve counseling memoranda

24   for minor misconduct and seven rules violations for more serious misconduct (notably, two of

25   the rules violations were for possession of a utility blade knife and inmate manufactured alcohol).

26   (Ex. 3 at 1; ex. 8.) Hence, Petitioner cannot show that the court unreasonably applied the some-

27   evidence standard in finding that "petitioner's conduct while incarcerated was not discipline-free,

28   which tends to support the Governor's conclusion that petitioner could still be a risk to public

Ans. to OSC; Mem. of P. & A.

*Hernandez v. Schwarzenegger*
C07-3427 PJH

1  safety if released." (Ex. 14 at 3.)

2       Finally, although not explicitly considered by the state court, its decision denying relief is

3  further supported by Petitioner's lack of a secured job offer as part of his parole plans. The

4  Governor acknowledged that Petitioner has marketable skills. (Ex. 3 at 2.) But the Governor

5  also reasonably determined that Petitioner's lack of a secured job offer was significant, stating

6  that "[h]aving a legitimate way to provide financial support for himself immediately upon release

7  is essential to [Petitioner's] success on parole." (*Id.*) And while the applicable regulations do

8  not list having a secure job offer in the illustrative parole criteria, the regulations not only permit

9  the parole authority to consider whether the inmate has made "realistic plans for release," but

10 also specifically requires that the parole authority consider any "other information which bears on

11 the prisoner's suitability for release." Cal. Code Regs. tit. 15, § 2402(b); *In re Honesto*, 130 Cal.

12 App. 3d 81, 97 (2005) (holding that in finding an inmate unsuitable for parole, the parole

13 authority may validly consider and rely on the inmate's lacks a current employment offer). Thus,

14 Petitioner's lack of an employment offer also further demonstrates that the state court reasonably

15 upheld the Governor's parole denial.

16      In summary, the state court's decision holding that some evidence supported the

17 Governor's parole denial is both supported by the record and a reasonable interpretation of the

18 evidence presented. Petitioner therefore cannot prove that the state court's factual determinations

19 were unreasonable under AEDPA standards, and thus his federal petition must be denied.

20                              **CONCLUSION**

21      Under AEDPA, the Court may grant a writ of habeas corpus only if it determines that the

22 state court findings denying relief were contrary to, or an unreasonable application of, clearly

23 established federal law, or that the decisions involved an unreasonable interpretation of the facts.

24 Petitioner fails to prove that this is the case. First, he received all process due under *Greenholtz*,

25 the only clearly established federal law specifically addressing the process due at parole

26 consideration hearings. Second, due process does not preclude the Governor from relying on

27 static factors to deny parole. Finally, Petitioner cannot show that the state court decision denying

28 habeas relief was contrary to, or an unreasonable application of, clearly established Supreme

Ans. to OSC; Mem. of P. & A.                                    *Hernandez v. Schwarzenegger*
                                                                C07-3427 PJH

21

1    Court law, nor that the state court unreasonably determined the facts in light of the evidence

2    considered by the Governor.  For these reasons, Respondent respectfully requests that the petition

3    for writ of habeas corpus be denied.

4        Dated:  September 7, 2007

5                       Respectfully submitted,

6                       EDMUND G. BROWN JR.
                         Attorney General of the State of California

7                       DANE R. GILLETTE
                         Chief Assistant Attorney General

8

9                       JULIE L. GARLAND
                         Senior Assistant Attorney General

10                      ANYA M. BINSACCA
                         Supervising Deputy Attorney General

11

12

13

14                      SCOTT C. MATHER
                         Deputy Attorney General
                         Attorneys for Respondent Ben Curry

15

16

17    20101994.wpd
     SF2007200544

18

19

20

21

22

23

24

25

26

27

28

*Hernandez v. Schwarzenegger*
C07-3427 PJH

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:    **HERNANDEZ, HECTOR v. ARNOLD SCHWARZENEGGER**

No.:    **C07-3427 PJH**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On **September 7, 2007**, I served the attached

### ANSWER TO THE ORDER TO SHOW CAUSE; MEMORANDUM OF POINTS AND AUTHORITIES

### RESPONDENT'S INDEX OF EXHIBITS TO ANSWER

by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 455 Golden Gate Avenue, Suite 11000, San Francisco, CA 94102-7004, addressed as follows:

**Hector Hernandez**
**D-33689**
**Correctional Training Facility**
**P.O. Box 689**
**Soledad, CA 93960**
in pro per

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on **September 7, 2007**, at San Francisco, California.

| | |
|---|---|
| J. Palomino | J. Palomino |
| Declarant | Signature |

20103722.wpd