# EXHIBIT 1

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF FRESNO | FOR COURT USE ONLY |
|---|---|
| 1100 Van Ness Avenue, P.O. Box 1628 | |
| Fresno, California 93717 | |

**PEOPLE OF THE STATE OF CALIFORNIA**

**DEFENDANT:** HECTOR HERNANDEZ   [X] Present   [ ] Not Present

| [x] JUDGMENT OF COMMITMENT TO: [X] STATE PRISON [ ] COUNTY JAIL | CLK 3008.00 E08-70 R06-76 |
|---|---|
| [ ] ORDER GRANTING PROBATION  [X] AND MINUTE ORDER | CASE NUMBER: 336275-3 |

| Date of hearing: 6-10-86 | Dept. No.: 12 | Judge: JOHN FITCH | Clerk: BEA PEREZ | Reporter: RAMONA SCHOTT |
|---|---|---|---|---|
| Counsel for People: W. ROBINSON | | Counsel for defendant: L. WHEATON | | Probation Officer: E. KING |

1. Defendant was convicted of the commission of the following crime on (Date): MAY 13, 1986

| Count | Code Section | Crime | Degree | By Jury, Court or Plea (Specify) |
|---|---|---|---|---|
| 1 | P.C. | 187 | 2ND | JURY |

2. Defendant [ ] was arraigned [x] waived arraignment for judgment.

3. The court, having read and considered the probation report and no legal cause having been shown why judgment should not be pronounced

   a. [X] Sentences defendant to State Prison for the term prescribed by law. 17 YRS. TO LIFE

   b. [ ] Specifies, pursuant to Pen. C. 1202b, the minimum term of imprisonment shall be six months as to count:

   c. [ ] Sentences defendant to County Jail for the period of (Specify number of days):

   d. [ ] Suspends imposition of sentence and defendant is placed on probation for the period of:

       [ ] upon conditions set forth in attachment 3d.

4. [ ] Defendant, convicted of more than one count, shall

   a. [ ] serve the sentence as to each count as follows:

| Count | Consecutive With | Concurrent with |
|---|---|---|

   b. [ ] serve the counts made consecutive in the following order:

5. Defendant shall serve this sentence with respect to any prior uncompleted sentence   a. [ ] concurrently.   b. [ ] consecutively.

   c. [ ] as set forth below or in attachment 5c.

6. Execution of sentence is

   a. [ ] stayed on the following count: . . . . . . . . . . . . . . . pending appeal, with the stay to become permanent when the sentence is completed as to count:

   b. [ ] suspended and defendant is placed on probation for the period of:

       [ ] upon conditions set forth in attachment 6b.

7. [ ] No allegation to enhance punishment was made in count: . . . . . . . .

8. [ ] It was alleged

   a. [ ] Defendant was armed with a deadly weapon at the time of the commission or attempted commission of the crime charged in count: . . . . . . . . . . . . [ ] and allegation stricken as to count: . . . . . . . . .

**(Continued on reverse side)**

This form satisfies the requirements of Penal Code 1213.5 (Abstract of Judgment and Commitment). Singular includes the plural. This form is to be used in judgments other than death. A copy of probation report shall accompany this form pursuant to Penal Code 1203c and a copy of any supplementary probation report shall be transmitted to the Department of Corrections. Attachments may be used but must be incorporated by reference.

Form Approved by the
Judicial Council of California
Effective July 1, 1976

**JUDGMENT-COMMITMENT**

Pen C. 644, 969c, 969d, 1202, 1213.5

# EXHIBIT 2

HECTOR HERNANDEZ

SUPERIOR COURT OF CALIFORNIA, COUNTY OF FRESNO

THE PEOPLE OF THE STATE OF CALIFORNIA, Plaintiff

vs.

HECTOR HERNANDEZ          Defendant

ACTION NUMBER   336275-3

REPORT AND RECOMMENDATION OF THE
PROBATION OFFICER

Probation No.  82028
CII  A05400164      FBI  0827976V3
///SO  139961       DA  85S0435
Race:  Mexican

TO THE HONORABLE JUDGE OF THE ABOVE ENTITLED COURT:

Pursuant to the statutes and at the direction of the court, your probation officer hereby respectfully submits the following report and recommendation as to the above named defendant, after ( ) conviction in court trial (X) verdict in jury trial ( ) plea: Guilty

| 942 Edgar Street, Sanger, CA | PC 187, Second Degree Murder w/PC 12022.5, |
|---|---|
| Address | Charge(s)    Use of Gun |

| 27 (2-28-59)  /   518 days | August 15, 1985 |
|---|---|
| Age          Time in Custody | Date of Offense |

| Lucile Wheaton, Public Defender | September 5, 1985 |
|---|---|
| Attorney | Date of Arrest |

| June 10, 1986              8:30 a.m. | John Fitch              Twelve |
|---|---|
| Date of Sentencing      Time | Judge                  Dept. |

BRIEF SUMMARY OF FACTS:

On August 15, 1985, defendant Hernandez shot and killed Silvestere (Odulio) Bustos.

NOTE: Defendant Hernandez was, on October 23, 1984 under Fresno Municipal Court #675358, placed on two years formal probation on misdemeanor violations of CVC 23152a, Driving while Intoxicated, H&S 11550a, Under the Influence of a Controlled Substance, and PC 148, Resisting Arrest.

## OPENING STATEMENT

On May 13, 1986, defendant Hector Hernandez was found guilty by a jury trial in Department Twelve of the Fresno County Superior Court of a felony violation of Section 187, Murder in the Second Degree, as charged in Count One the First Amended Information.  Additionally, the jury found the defendant guilty of an enhancement within the meaning of Penal Code Section 12022.5, Personal Use of a Gun, as charged within Count One.

A referral was then directed to the probation officer for the preparation of a presentence investigation report, and sentencing was calendared for June 10, 1986 at 8:30 a.m. in Department Twelve of the Fresno County Superior Court. The probation officer was instructed to file a written report on June 7, 1986.

## CIRCUMSTANCES OF THE OFFENSE

The defendant was convicted by jury trial on May 13, 1986, and the information presented to the jury which resulted in the conviction of the defendant was not made available to your officer.  Therefore, the circumstances of the offense were obtained from the preliminary hearing transcript, the Fresno County Sheriff's Department Crime Report, Case #85-16278, and from the Fresno County District Attorney's file #85S0435:

On August 15, 1985 at approximately 3:56 a.m., Officer F. Lopez was dispatched to 2448 South Eleventh #4, Calwa, regarding an injured person and there met with four Mexican males and one female who were standing outside the residence.  The officer entered the front living room area of the apartment and observed a Mexican male subject lying on the living room floor with a large pool of blood under the chest and face area.  Paramedics and American Ambulance personnel arrived at the scene and advised Officer Lopez that the victim was deceased.  The victim was subsequently identified as being Silvestere Odulio Bustos.  Subsequent investigation determined that the victim had been shot at close range by a shotgun and at the time that he was shot, the victim was wearing a watch, two gold-colored rings on each hand and had his car keys and currency in his pocket.  Officers made contact with Eleno Santa Maria Mojica, Genaro Flores, Doroteo Juarez, Enrique Casias and Mary Lopez.

Enrique Casias was given immunity by the prosecution and then testified that he had been living with the victim at the apartment on South Eleventh Street for approximately one month, that he knew the man killed as being Odulio Bustos with a nickname of "Lolo", and that victim Bustos was the one renting the apartment.  Casias testified that at 3:00 a.m. on August 15, 1985, there was a knock on the door, at which time Casias looked out the window and observed defendant Hernandez, who asked Casias if he "had some" (meaning heroin) and then gave Casias $20.00.  Casias said he then told defendant Hernandez, "Let me see if my friend has some," referring to victim Bustos. Casias was getting "pieces" from victim Bustos' boots when the defendant

-2-

kicked open the door, entered with a shotgun and stated, "Give me the gun." Victim Bustos was asleep, however, the defendant again repeated, "Give me the gun." The defendant also asked victim Bustos for the "chiva", which means heroin. As soon as defendant Hernandez said, "Give me the gun," the defendant shot Bustos. Casias stated that defendant Hernandez had pointed the gun at Casias first and as Casias ran backwards with his hands up and stayed in the background, he heard the gun go off. Casias then ran and hid in the next room with his friends. Casias stated that Bustos had been sleeping on the sofa facing up with a gun tucked into and sticking from his waistband and that defendant Hernandez did not get any heroin that night because Casias did not have time to give it to him. Casias further related that victim Bustos only had two or three pieces in his boot that he sold for $10.00 and that Bustos told Casias that if someone came to the home and the victim was asleep, Casias could obtain two or three pieces from victim Bustos' boot.

Witness Casias testified that when Bustos went to sleep, he would put two or three $10.00 pieces into his boot and as Casias was bending over the victim on the night of the instant crime, the defendant came in with his weapon and said, "la chiva". Witness Casias had seen the defendant there at the house three or four days before and had seen the defendant at the apartment for a total of four or five times. Casias testified he had sold drugs to the defendant for Bustos at those times but denied knowing that it was heroin that he was selling and that Bustos had never given Casias any money for having sold the "chiva". Casias testified that he and his friends continued to hide in the bedroom for about ten minutes, then after being convinced that the defendant left the apartment telephoned the authorities.

Witness Eleno Santa Maria Mojica told the officers and later testified that he had been staying at the house of the victim approximately three days prior to the shooting. On the night of the instant crime, while sleeping on the floor in the kitchen, he heard an argument and sat up. Mojica testified that the defendant pointed a gun at Mojica and said, "Don't move." At the sound of the shot, Casias and Mojica ran and remained in a bedroom. Mojica also testified that he had been awakened by people talking, however, was not sure that an argument had ensued.

An additional witness, Doroteo Juarez, told the officers and later testified that he was living at another house, however, on the night of the instant crime spent the night at victim Bustos' residence and was sleeping in the kitchen when he heard a knock on the door and then saw defendant Hernandez come into the residence with a shotgun. He testified that before the defendant shot Bustos, defendant Hernandez said, "Give me the gun" twice to victim Bustos. He testified that when the defendant said that, victim Bustos got up and pulled the gun from his waistband, at which time defendant Hernandez took the gun from the victim, and witness Juarez ran and hid.

Two unexpended shotgun shells were observed near the victim's left knee, and a partially filled box of nine millimeter ammunition was on the floor near the victim's head. A smear of possible blood was located on the inside windowsill on the west window and on a chair outside of the door which had been entered. Each item was taken as evidence, and it was believed that the defendant had left the residence through the window rather than the door. Foot tracks found

outside indicated that one suspect ran northbound through an alley to an intersecting alley, then ran westbound through the alley to Tenth Street. The foot tracks were followed southbound on Tenth to the intersection of Burns. At that location, a small piece of chewed gum was observed where the suspect possibly stopped for a short time. The gum was also taken as evidence, however, the shoe tracks could not be followed from the intersection. Three shoe tracks were additionally found near the victim.

On August 15, 1985 at approximately 7:00 a.m., Detective J. Rascon interviewed witness Maria Lopez, who was statedly a friend of victim Bustos, and to the other witnesses in the case who had contacted her at her residence. Witness Lopez advised the officer that from the description provided by the witnesses, she believed the suspect to be a subject she knew from Sanger, however, was unable to remember the name. She further related that she frequented the victim's residence, knew the victim was dealing narcotics and had seen the subject from Sanger at the victim's residence on numerous occasions buying drugs. Lopez stated that in fact a few days prior to the shooting, she heard the victim and the suspect arguing at the victim's residence over money and later told the officer that the suspect's name was Hector Hernandez and identified a photograph as being defendant Hector Hernandez. On August 15, 1985, witness Casias, who had had prior contacts with the defendant as he had sold the defendant heroin on five occasions face-to-face, was shown a single photograph by Detective Rascon of suspect Hernandez, at which time Casias identified defendant Hector Hernandez as the person who shot and killed victim Bustos. On August 15, 1985, witness Flores was provided with three photograph albums of booking photographs from the Sheriff's Department booking files, at which time he selected the photograph of defendant Hector Hernandez as the subject from Sanger who was constantly buying narcotics from victim Bustos.

On September 5, 1985 at approximately 2:25 p.m., officers from the Fresno County Sheriff's Department were conducting a surveillance on the residence of 1315 Faller in Sanger when a 1976 dark blue Ford T-Bird arrived at the residence, which was a vehicle occupied by Fidencio Martinez, who then entered the residence and exited along with Juanita Hernandez, wife of the defendant. Both Martinez and Hernandez proceeded out of Sanger and went to the area of Chestnut and King Canyons Avenue, where Hernandez exited the vehicle, used the telephone located there and then she and Martinez drove to the area of Maple and Shields Avenue. Juanita Hernandez then exited the vehicle and made contact with a male subject standing near a convenience store located at the northeast corner of Maple and Shields, who then got into the vehicle, as did Juanita Hernandez. The vehicle was followed to the area of Barton and Nevada, where a felony vehicle stop was conducted after defendant Hector Hernandez had been identified as being the wanted suspect. All occupants were arrested and taken into custody.

Defendant Hernandez was subsequently Mirandized and after waiving his rights, he agreed to talk to Detectives Trevino and Morrison, however, denied knowing the victim, having purchased heroin from the victim or having committed the instant crime. He then invoked his right to have an attorney, and the interview was terminated.

## DEFENDANT'S STATEMENT

As of the date of dictation, defendant Hernandez had failed to supply your officer with a defendant's statement. However, during an interview with the defendant at the Fresno County Jail on May 21, 1986, the defendant stated that the victim was his connection for heroin and that he had thought for some time that the victim was "pinching" on his buys and that he had talked to him before about it prior to the commission of the instant crime. The defendant stated to your officer that he had been involved in at least two arguments with the victim because of his shorting the supply of purchased heroin. The defendant made no other statements regarding the instant crime.

## VICTIM STATEMENT AND ASSESSMENT

A referral has been directed to the Victim Services Unit by your officer in an attempt to have contact made with the victim's mother, who is said to be residing in Mexico. Their report should be provided to the Court by the date of sentencing.

## STATEMENT OF THE DISTRICT ATTORNEY

A letter requesting a statement of views has been directed to the Fresno County District Attorney's Office. As of the date of dictation, no reply has been received at the Probation Office. Should one be received prior to sentencing, it will be attached to the report for the Court's consideration.

## DEFENSE STATEMENT

A statement of views has been received from the Fresno County Public Defender's Office. It has been read and considered and is attached to this report for the Court's consideration.

Attached for the Court's consideration is a letter from the Defense Attorney, dated December 30, 1985.

## RESTITUTION

Restitution may be an issue in this matter due to the fact that the victim's body was transported to Mexico for burial.

## PRIOR JUVENILE RECORD

The following information was obtained from the defendant's prior juvenile record:

7-31-70        <u>Referred on informal probation without petition by probation
               officer</u>:  Section 602:  Burglary, until January 31, 1971.

               The circumstances of the above offense were that on July 28,
               1970, defendant Hernandez at approximately 5:30 p.m. broke into
               the office of Dr. R. Lee at Tenth and "N" Streets in Fresno and
               from there removed $80.00 in cash.

10-5-70        <u>Petition Filed</u>:  Section 602:  Burglary.

10-23-70       <u>Hearing</u>:  Allegations true; placed on probation without wardship
               until April 23, 1971.

               The circumstances of the above offense were that on September
               22, 1970, the defendant entered the residence located at 15570
               East Anadale, Sanger, and from there removed property valued at
               approximately $515.00.  The property included a .410 shotgun, a
               .20 gauge shotgun, a .218 caliber rifle, a .22 caliber pistol, a
               Winchester rifle, a .22 semiautomatic rifle, a .22 caliber
               bolt-action, single shot rifle, a Polaroid camera and a radio.

5-19-71        <u>Order</u>:  Dismissed.

4-22-71        <u>Petition Filed</u>:  Section 602:  Burglary.

5-19-71        <u>Hearing</u>:  Adjudged ward of the Court, on probation until further
               order of the Court; released to parents.

               The circumstances of the above offense were that on April 7,
               1971, the defendant entered the Mission Baptist Church at 1417
               "J" Street in Sanger and from there removed $10.50.

9-23-71        <u>Petition Filed (Subsequent)</u>:  Section 602:  Petty Theft.

10-14-71       <u>Hearing</u>:  Allegations true; remain ward of the Court, on
               probation until further order of the Court; pay restitution;
               work program at Sanger Police Department.

               The circumstances of the above offense were that on July 26,
               1971, defendant Hernandez in association with the co-defendant
               stole approximately $190.00 belonging to Luallen's 76 Service
               Station at 466 Academy in Sanger, California.  As a condition of
               probation, the defendant was ordered to work six weekends at the
               Sanger Police Department and was placed on intensive supervision
               and ordered to pay restitution through the probation officer.

6-29-72        <u>Petition Filed (Subsequent)</u>:  Section 602:  Burglary.

7-18-82      Hearing:  Allegations true as amended; remain ward of the Court, on probation until further order of the Court; commit to Youth Center, suspended.

The circumstances of the above offense were that on June 26, 1972 at approximately 10:15 p.m., the defendant and a co-defendant were found inside the closed business of Padilla's Market at 85 Acacia Drive in Sanger.

10-27-72     Petition Filed (Subsequent):  Section 602:  Burglary.

11-16-72     Hearing:  Remain ward of the Court, on probation until further order of the Court; commit to Youth Center; detain Juvenile Hall pending transfer.

The circumstances of the above offense were that on October 25, 1972, the defendant entered the residence located at 1131 "N" Street in Sanger and from there removed a purse from a victim which contained approximately $20.00.  The defendant was committed to the Fresno County Youth Center for a period not to exceed 180 days.

10-31-73     Petition Filed (Subsequent):  Section 602:  Burglary.

11-6-73      "A" Petition Filed:  Section 602:  Burglary.

11-28-73     Disposition Hearing:  Remain ward of the Court; commit C.K. Wakefield School; detain Juvenile Hall pending transfer.

The circumstances of the above offenses were that on October 25, 1973, the defendant entered the residence at 1201 Rawson, Sanger.  Further investigation determined that no property was lost as the defendant and a co-defendant were discovered during the commission of the crime and had fled.  The circumstances of the "A" petition were that on November 5, 1973, the defendant in association with a co-defendant removed a hasp and lock from a garage located at 1211 "P" Street, Apartment "A", in Sanger, where the defendant was observed and subsequently apprehended. On November 28, 1973, after both petitions were found true, the defendant was committed to the C.K. Wakefield School for a period not to exceed 180 days, however, on May 24, 1974, the Court ordered that the commitment to C.K. Wakefield be terminated.  The defendant was continued on probation until further order of the Court.

11-6-74      Petition Filed (Subsequent):  Section 602:  Joyriding;  Count Two:  Section 602:  Carrying a Concealed Firearm.

11-7-74      Detention Hearing:  Allegations true Count Two;  detained Juvenile Hall pending adjudication on Count One November 19, 1974.

-7-

11-19-74     Adjudication and Disposition Hearing:    Allegations true both
             counts.

12-3-74      Disposition Hearing:    Remain ward of the Court, in charge of
             probation officer, commit to California Youth Authority; County
             pay maintenance; detain Juvenile Hall pending transfer by Fresno
             Sheriff's Office.

             The circumstances of the above offenses were that on November 4,
             1974, the defendant in association with an unidentified person
             took a 1955 Chevrolet pickup without the consent of the owner.
             Additionally, on November 5, 1974, the defendant was found to be
             in possession of a firearm with a barrel of less than twelve
             inches without having a license to carry such a firearm.

11-12-75     Petition Filed (Subsequent):    Section 602:  Armed Robbery; Count
             Two:  Section 602:  Resisting an Officer.

11-13-75     Detention Hearing:    Count Two true; detain Juvenile Hall pending
             adjudication.

11-25-75     Adjudication Hearing:    Count One dismissed; detain Juvenile Hall
             pending disposition on Count Two.

             The circumstances of the above offense were that at
             approximately 4:50 p.m. on October 22, 1975, Mrs. Lozada along
             with Mr. Higaneda and Mr. Gutierrez arrived at the Sanger Police
             Department and contacted Officer Ramirez and Sergeant Padilla.
             Mr. Gutierrez reported that on October 21, 1975 at approximately
             9:30 p.m., he was home cleaning the dishes when six young
             subjects came into his home, told him that he owed someone some
             money and was asked by the suspects where his check was.
             Gutierrez stated three of the suspects held him at knifepoint
             while they took his wallet, and then three suspects had gone
             into the bedroom where Mr. Higaneda was lying in bed.  Gutierrez
             stated that the three suspects who entered the bedroom were
             armed with two pipes and a large stick.  Mr. Higaneda stated
             that the three suspects who entered his bedroom had ransacked
             his room and had found his wallet, which contained $246.00.
             After the suspects found his wallet, one of them had struck him
             on the head with a pipe.  After he was struck with the pipe, Mr.
             Gutierrez told the suspects not to hit him.  At that point, one
             of the suspects struck Gutierrez in the left eye with his closed
             hand.  Higaneda stated that one of the suspects had placed a
             knife to Mr. Gutierrez's neck and had told him to shut his mouth
             or he would "get it".  Higaneda stated that the suspects had
             taken the money from him and Mr. Gutierrez and had left.
             Gutierrez stated that the suspects had stolen approximately
             $79.00 from his wallet.

11-26-75    <u>Petition 38154-A Filed</u>:  Section 602:  Armed Robbery.

12-22-75    <u>Petition 38154-B Filed</u>:  Section 602:  Armed Robbery;  Count Two:  Section 602:  Assault with Deadly Weapon.

12-30-75    <u>Adjudication Hearing</u>:  Allegations true "A" petition and Count Two "B" petition;  Count One in "B" petition untrue.

1-12-76     <u>Disposition Hearing</u>:  Remain ward of the Court, in charge of probation officer;  recommitted to California Youth Authority; detain Juvenile Hall pending transfer by Fresno Sheriff's Office.

On December 22, 1975, a Supplemental "B" Petition was filed alleging Assault with a Deadly Weapon.  The circumstances of the offense were that on October 27, 1975, the defendant returned to the residence of Mr. Higaneda and stabbed him on the left thigh with a knife.  On December 30, 1975, a hearing was held, at which time the Armed Robbery in the "A" petition was found true, and the Assault with a Deadly Weapon in the "B" petition was found true.  A dispositional hearing was calendared for January 12, 1976.  On that date, the defendant was committed to the California Youth Authority.

On February 20, 1976, a rehearing was held in Department Eight of the Fresno County Superior Court, at which time defendant Hernandez was again committed to the California Youth Authority and was ordered detained in the Fresno County Juvenile Hall pending transfer to the Fresno County Sheriff's Office.  On February 23, 1976, the defendant was successful in escaping from the Fresno County Juvenile Hall.  Subsequent to the defendant's arrest on the instant offense, he appeared in the Fresno County Juvenile Court, at which time he was remanded to the custody of the Fresno County Sheriff awaiting transfer to the California Youth Authority per orders of the Juvenile Court, dated January 12, 1976 and February 20, 1976.

<u>PRIOR CRIMINAL RECORD</u>

The following is the defendant's prior criminal record as provided by the California Identification and Investigation Bureau and from the United States Department of Justice:

| DATE | ARRESTING AGENCY | CHARGE | DISPOSITION |
|------|------------------|--------|-------------|
| 12-2-74 | CYA Perkins | Juv Tk Veh Tmp Use Carry Concl Wpn on Person/Vehicle | 7-29-75: paroled |

| 3-13-78 | PD Sanger | H&S 11350, Poss<br>Narc Contrld Subs | 5-16-78 Fresno SC<br>#228480-0; comm<br>CYA |
| --- | --- | --- | --- |

The circumstances of the above offense were that on March 12, 1978, defendant Hernandez was booked in to the Sanger Police Department on other charges and on March 13, 1978, the defendant's property was searched. Found therein was aluminum foil containing .32 grams of heroin.

| 3-12-78 | PD Sanger | PC 245a, Asslt<br>with Deadly Wpn<br>PC 246<br>VC 12025<br>VC 12031 | 5-8-78 Sanger JC<br>#C-879, PG PC 246<br>1 yr BP; 364 ds<br>w/cred 57 ds |
| --- | --- | --- | --- |

The circumstances of the above offense were that on March 12, 1978 at approximately 9:46 p.m., Sanger Officers were dispatched to the area of Faller and Eleventh Street regarding subjects in a white vehicle shooting firearms in the area. There they observed a white 1965 Pontiac and saw a flash of a weapon and three explosions as the vehicle slowly turned southbound onto Faller Avenue. The shots came from the vehicle and from the direction of the muzzle flashes, the officers felt they were directed in an easterly direction towards Eleventh Street. The officers pursued the vehicle, stopped it and arrested the driver, Jose Ramirez, and the passenger, Hector Hernandez, who was holding a handgun in his right hand at the time of the vehicle stop. Both subjects then ran from the officers and after an extensive chase with several officers in pursuit, defendant Hernandez was found hiding in a large dog house. The handgun was subsequently located in one of the yards through which the defendant had run. When the defendant was en route to the police vehicle, he kicked out at a bystander and struck him in the head with the tip of his shoe. The defendant was then placed into a police unit and while en route to the police department, defendant Hernandez kicked out the rear window of the police unit.

NOTE: On April 12, 1978, the defendant appeared in the Sanger Justice Court and entered a guilty plea to a violation of Health and Safety Code Section 11350a, and the matter was certified to the Fresno Superior Court under Information #22848-0. The change of plea transcript indicated that upon the defendant's plea of guilty to Criminal Complaint #C-857 and further, upon the defendant's plea of guilty to Count One of Criminal Complaint #C-850, alleging a misdemeanor violation of Penal Code Section 246, the following agreements were made with the District Attorney: That a motion would be made to dismiss Count Two of Criminal Complaint #C-850, alleging a violation of Penal Code Section 245; Count Three, alleging a violation of Penal Code Section 594c; and Count Four, alleging a violation of Penal Code Section 148. The District Attorney agreed further to motion the Court to dismiss Criminal Complaint #C-830, alleging in Count One a violation of Penal Code Section 245a and in Count Two, a violation of Penal Code Section 415. The Court granted the motions of the District Attorney, and no other promises or agreements were made in regard to sentencing under Fresno Superior Court #22848-0.

| 3-14-79 | CYA Perkins &A 09111 | 1) H&S 11350, Poss Narc Contr Subst | 12-17-79, paroled 2-16-82, discharged |

Your officer notes that on May 16, the defendant was ordered committed to the
California Youth Authority under Action #22848-O. However, on May 8, 1978,
the defendant was ordered to serve one year in custody of the Fresno County
Sheriff on a misdemeanor violation of Penal Code Section 246. In a letter
dated December 15, 1978, the Youth Authority reported to the Court that it had
been over six months since the defendant's case was referred by the Court to
the Youth Authority and that he had never been delivered to them. A check
with the Fresno County Jail revealed that the defendant had timed out on the
aforementioned Sanger Justice Court case on January 9, 1979 and was then
presently pending transportation to the California Youth Authority. On
February 23, 1979 under Fresno Superior Court #228480-O, the Court ordered the
defendant recommitted to the California Youth Authority.

| 10-6-81 | CAUS MO100 USM LA, CA 8112-1006 | 1) Acc Aft Fact, 18USC3 2) Conc Pers Frm 18USC1701 | 12-8-81, PG bth cts; sent 179 ds ea ct to srvd consec |

| 2-22-82 | TX071017C Latuna Fed Corr 74322-012 | 1) Acc Aft Fact 2) Conc Pers Frm Arrest | 7-23-82, discharged; rel exp to comm in Sanger, CA |

The circumstances of the above offense were that from November 16, 1980 to
December 1, 1980, defendant Hernandez, having knowledge that Jose DeLeon was
under judgment of conviction and a ten-year prison sentence and knowing that
DeLeon was a fugitive from said commitment, aided and assisted DeLeon from
being apprehended by the U.S. Marshall's Office. Further information was
developed by the U.S. Marshall's Office to the effect that during November of
1980 through December of the same year, defendant Hernandez rented a house
trailer in the rural outskirts of Fresno and was told by the landlord that
Jose DeLeon also resided in that trailer for approximately two to three
weeks. In September of 1981, the U.S. Marshall's Office centered their
investigation in the southern California area as they had received information
to the effect that defendant Hernandez as well as Jose DeLeon were residing in
a religious retreat in San Bernardino County. On October 6, 1981, the U.S.
Marshall's Office with assistance from numerous law enforcement agencies
converged on the religious retreat called Victory Outreach located in a
deserted, unpopulated area of San Bernardino and arrested both defendant
Hernandez and Jose DeLeon.

| 10-26-84 | SO Fresno | 1) H&S 11550(a), Use/Und Inf Contr Substance 2) PC 148, Resist Officer | 10-23-84 MC Fresno #675358; PG H&S 11550; 2 yrs FP; 180 ds ss exc 90 w/31 ds cred; DWI; no alc; $110 fn ss; OAL; PG VC 23152a; 180 das ss exc 90 conc; $673 fn ss exc $130 |

-11-

The circumstances of the above offense were that on February 10, 1984, a California Highway Patrolman was southbound on Belmont Avenue when he observed a vehicle being driven in a slow manner and weaving. After making a traffic stop and contacting the driver, who was defendant Hernandez, it was noted that Hernandez was unsteady on his feet, his eyelids were drooped, and the officer noted an injection site on the defendant's left arm which had scarring. His right arm had several non-hygenic sites, one of which was still bleeding. The officer questioned the defendant about his drug usage, at which time the defendant stated he started on the Methadone Program that day. The officer then had the passengers in the vehicle get out and as they were so doing, the defendant ran. The officer did not chase the defendant, however, filed a complaint against him.

NOTE: Your officer notes that the defendant has outstanding failures to appear under Fresno Court #644637 and 674429 for CVC 12951a (two counts) and VC 5200. Additionally, the defendant has a failure to appear under Sanger Court #10680 for VC 12951a and VC 27360a.


PROBATION HISTORY

The defendant's juvenile probation history has been covered under that section of this report. The following information was obtained from the defendant's adult probation file:

On May 8, 1978, defendant Hernandez was placed on one year bench probation on a misdemeanor violation of PC 246 under Sanger Justice Court #C-879 and was ordered to spend 364 days in custody with credit for time served of fifty-seven days. On October 23, 1984 under Fresno Municipal Court #675358, the defendant was placed on two years formal probation on a misdemeanor violation of H&S 11550a, CVC 23152a and PC 148. The defendant was ordered to spend 180 days in custody, all of which was suspended except ninety days, with thirty-one days credit for time served for the H&S 11550a violation. In addition, he was to enroll himself in the DWI Program, was ordered not to consume alcohol, to pay a fine of $110.00, which was suspended, and ordered to obey all laws. On his violation of CVC 23152a, the defendant was ordered to spend 180 days in jail, all of which was suspended except ninety days which was to run concurrent with the time being served on the H&S 11550a violation. The defendant was ordered to pay a fine of $673.00, all of which was suspended with the exception of $130.00. On May 14, 1985, the defendant's probation was revoked and a bench warrant issued. On June 10, 1985, the defendant's probation was reinstated with the same terms and conditions.

On August 27, 1984 under Fresno #714123, the defendant was placed on two years bench probation on a misdemeanor violation of CVC 14601l.

## PAROLE HISTORY

On December 28, 1974, the defendant was committed to the California Youth Authority for Joyriding and Carrying a Concealed Weapon and was paroled on July 29, 1975. On January 12, 1976, the defendant was committed to the California Youth Authority on petitions alleging Assault with a Deadly Weapon and Armed Robbery, however, on February 20, 1976, a rehearing was held in Department Eight of the Fresno Superior Court, at which time the defendant was again committed to the California Youth Authority. The defendant was ordered detained in the Fresno County Juvenile Hall pending transfer by the Fresno County Sheriff's Office. On February 23, 1976, the defendant was successful in escaping from the Fresno County Juvenile Hall. On May 16, 1978 under Fresno County Superior Court #228480-0, the defendant was committed to the California Youth Authority on a felony violation of H&S 11350a, however, due to the fact that he was on May 8, 1978 under Sanger Case #C-879 ordered to spend 364 days in custody at the Fresno County Jail on a misdemeanor violation of PC 246, the defendant was on February 23, 1979 recommitted to the California Youth Authority under Superior Court #22848-0 and was on December 17, 1979 paroled. On February 16, 1982, the defendant received a dishonorable discharge as a result of his having been committed to federal prison on February 22, 1982 for Harboring a Federal Fugitive and Accessory After the Fact. The defendant was discharged from federal prison on July 23, 1982.

## SOCIAL HISTORY

The following information was obtained from the defendant during an interview with your officer at the Fresno County Jail on May 21, 1986:

## FAMILY HISTORY

Hector Hernandez, age twenty-seven, was born February 28, 1959 in Fresno, California, where he has lived most of his life. The defendant lived last with his parents at 942 Edgar in Sanger, California.

The defendant is one of eight children born of the marriage between Guadalupe Hernandez and Dolores Mejia. The natural father is employed as a machinist, and the natural mother is employed by the Barr Packing Shed in Sanger. The defendant has six brothers and one sister, and the defendant is the seventh child.

The defendant's brother, Guadalupe, Jr., has for the past five years been in Soledad State Prison on a charge of murder. According to the defendant, he was ordered to serve twenty-nine years to life. No other history of family criminality or mental illness was noted by the defendant.

-13-

The defendant completed the tenth grade at Sanger High School in 1975 and obtained his G.E.D. while incarcerated in federal prison in 1982. The defendant has received additional vocational training at the Valley Technical and Trade School in Fresno during 1980 or 1981 in welding and stated the course consisted of three months, which he successfully completed. The defendant has never been in any branch of the United States military, is involved in no community organizations, however, irregularly attends the Pentecostal Church. The defendant lists as his recreational interests reading, handball, jogging, lifting weights, calisthenics, music, camping, television, parks, picnics and spending time with his family.

## MARITAL HISTORY

Hector Hernandez married Janie Ramirez on October 3, 1982 in San Bernardino, California by whom four children have been born: Christina (age 5); Rebecca (age 4); Corina (age 2); and Hector, Jr. (age 6 months). The defendant's wife and children currently reside with her family in Sanger and are supported by funds from the Aid to Families with Dependent Children and food stamp programs. The defendant related that he was having problems with his wife prior to the commission of the instant crime but that his marriage was intact.

## EMPLOYMENT HISTORY

The defendant was last employed as a field laborer from June, 1985 through August 1985 for a man named "Polo", who was said to be a field contractor. The defendant also during that same period of time was employed by another contractor named Esteban. The defendant stated that he has done mostly field work, some gardening, packing shed and agricultural ranch work.

## FINANCIAL STATUS AND REPORT FEES

Attached hereto and to be considered a part of this report unless waived is the form containing a recommendation in regard to Presentence Investigation Report fees, pursuant to Section 1203.1b of the Penal Code.

The defendant stated that he has no assets, however, that he owes fines in Sanger for traffic matters.

## USE OF ALCOHOL/CONTROLLED SUBSTANCES

The defendant drinks four or five beers or wine every other day and on weekends drinks heavier. The defendant does not consider himself to have an alcohol problem and stated that he first began using alcohol at the age of twelve years. The defendant denies having received any type of treatment for alcohol.

-14-

The defendant last used heroin approximately nine months ago, stating he was using shortly before and after the commission of the instant crime. The defendant denies that he was under the influence of any drug when he committed the instant crime, however, estimated that he had a daily heroin habit of $20.00 to $40.00 for the past two years. The defendant was involved in the Methadone Detox Program for twenty-one days in 1985 and stated he went three or four times and completed their program. The defendant has smoked marijuana on an average of once a day since he was twelve years of age. He tried PCP four to five times when he was approximately sixteen years of age. During the same period, the defendant also experimented with LSD. The defendant last used cocaine in August of 1985, stating he used "a few bags", and first used cocaine in 1981. As a youth, the defendant used paint "a lot". Defendant Hernandez stated that, "I did crank for awhile", for about three months in 1979 on a daily basis but not since that date.

## PSYCHOLOGICAL OR MEDICAL HISTORY

The defendant considers himself to be in fair health and currently has venereal disease for which he is receiving treatment while incarcerated. Defendant Hernandez related that he has had venereal disease for about two years and that he has received treatment on an off and on basis during that time. The defendant has also been obtaining counseling from a psychologist while in jail due to a condition of being unable to sleep, depression and anxiety. The defendant was, during his current incarceration, taking the drugs Synaquat and Milloril, however, currently receives no type of medication.

Attached for the Court's consideration is a letter from Dr. Howard B. Terrell, dated January 13, 1986.

## STATEMENT OF REFERENCES AND INTERESTED PARTIES

At the time of dictation, the defendant had failed to supply your officer with a character reference form.

## CUSTODY

Defendant Hernandez was arrested on the instant crime on September 5, 1985 and has remained in custody since that date. Therefore, by the date of sentencing on June 10, 1986, the defendant will have served 279 days, is entitled to good time credits of 139 days, for total confinement credits of 518 days.

DISCUSSION AND EVALUATION

## FACTORS AFFECTING PROBATION

Defendant Hernandez is statutorily ineligible for probation under Penal Code Section 1203.06(a)(1)(i).

(The recommended application of the following factors and circumstances is set forth in the Conclusion section of this report.)

## CIRCUMSTANCES IN MITIGATION

Your officer finds no factors in mitigation relating to the crime as set forth in Rule 423a.

Under Rule 423b, facts relating to the defendant, your officer notes that the defendant was suffering from a mental or physical condition that significantly reduced his culpability for the crime due to his stated use of the drug heroin one day prior to the commission of the crime (Subsection 2).

## CIRCUMSTANCES IN AGGRAVATION

Regarding factors in aggravation relating to the crime as set forth in Rule 421a, your officer notes that the victim was particularly vulnerable in that the defendant entered the victim's home and shot him while he was lying on his couch and awakened by the defendant (Subsection 3). The planning, sophistication and professionalism with which the crime was carried out indicated premeditation (Subsection 8).

Under Rule 421b, facts relating to the defendant, your officer notes that defendant Hernandez has engaged in a pattern of violent conduct which indicates that he is a serious danger to society; the defendant's prior convictions as an adult or adjudications of commissions of crime as a juvenile are numerous and increasingly serious in nature; the defendant has served prior prison terms, whether or not charged or chargeable as an enhancement under Section 667.5; the defendant was on probation when he committed the instant crime; and the defendant's prior performance on probation and on parole was unsatisfactory (Subsections 1, 2, 3, 4 and 5).

## ENHANCEMENTS

Penal Code Section 12022.5 mandates that the sentence be enhanced by two years and consecutive to the punishment prescribed for the instant crime.

## CONCLUSION

Appearing before the Court is a twenty-seven-year-old defendant who was convicted by jury of Second Degree Murder and Use of a Shotgun. As previously noted, the defendant has an extensive criminal record, both as a juvenile and as an adult, involving serious property crimes and burglaries where the defendant has removed many guns in addition to a serious record of assaultive behavior, demonstrating his past and current propensity for violence.

Pursuant to Section 1203.06(a)(1)(i), defendant Hernandez is ineligible for a grant of probation. Additionally, Penal Code Section 190 mandates that the defendant be committed to the California Department of Corrections for a term of fifteen years to life. PC 12022.5 mandates that the sentence be enhanced by two years in addition and consecutive to the sentence imposed by the Court on the instant crime.

## RECOMMENDED PRISON TERM

| CRIME | MIT/MID/AGG | BASE TERM | ENHANCEMENTS | CONSEC/CONCURR | |
|-------|-------------|-----------|--------------|--------|---|
| PC 187, 2nd Degree | 15 yrs. to life | 15 yrs. to life | Yes/PC 12022.5/ 2 yrs. | Yes | N/A |

TOTAL YEARS:  SEVENTEEN YEARS TO LIFE

### RECOMMENDATION

It is hereby recommended that probation be denied and that the defendant, Hector Hernandez, be committed to the California Department of Corrections for the indeterminate term of imprisonment of fifteen years to life in Count One.

It is further recommended that the defendant's term of imprisonment be enhanced for a period of two years pursuant to PC 12022.5 and that this term be served prior to the indeterminate sentence.

It is further recommended that the defendant be committed to the California Department of Corrections for a total term of seventeen years to life with credit for 518 days time served (279/139).

In compliance with Government Code Section 13967, it is respectfully recommended that a restitution fine of $1,000.00 be imposed.

The attorney hours did not appear on the Court referral to the Probation Department.

Respectfully submitted,

DON HOGNER, CHIEF PROBATION OFFICER

By: _Evelyn H. King_

Evelyn H. King, Deputy

Dated: June 3, 1986

Read and Approved:

_Charles Smith_

Supervising Probation Officer
jm

***************

The foregoing report has been read and considered.

Dated: June 10, 1986

/s/ John Fitch

JUDGE OF THE SUPERIOR COURT

The foregoing instrument is a correct copy of the original on file in this office.

ATTEST: JUN 17 1986

GALEN LARSON, County Clerk
State of California, County of Fresno

By _____ DEPUTY

-18-

COURT FINDING

| CRIME | MIT/MID/AGG | BASE TERM | ENHANCEMENTS | CONSEC/CONCURR |
|-------|-------------|-----------|--------------|----------------|
| PC 187, 2nd Degree | . . . . . . . . . . . . | . . . . | . . . . . . . . . . . . . | . . . . . . . . . . . . . |

TOTAL YEARS: . . . . . . . . . . . .

# EXHIBIT 3

# INDETERMINATE SENTENCE PAROLE RELEASE REVIEW
(Penal Code Section 3041.2)

**HECTOR HERNANDEZ, D-33689**
**SECOND-DEGREE MURDER**

AFFIRM: _____

MODIFY: _____

REVERSE: _____X_____

On August 15, 1985, Hector Hernandez shot to death Sylvestre Bustos while attempting to purchase heroin. Early that morning, Mr. Hernandez went to Mr. Bustos' home to buy heroin. He knocked on one of the windows, waking Mr. Bustos' roommate, Enrique Casias. Mr. Casias went to the window and saw Mr. Hernandez standing outside. Mr. Casias opened the window and talked with Mr. Hernandez, agreeing to sell him heroin for $20. Mr. Hernandez paid the money and Mr. Casias went to retrieve some heroin. The heroin was inside Mr. Bustos' boots, which were next to the couch in the living room. Mr. Bustos was asleep on the couch with a gun tucked into his waistband.

While Mr. Casias bent over Mr. Bustos' boots, Mr. Hernandez forced his way through the front door of the residence, armed with a sawed-off shotgun. He demanded Mr. Bustos' gun and heroin. When Mr. Bustos rose from the couch, Mr. Hernandez shot him one time from a distance of approximately seven or eight feet. He took Mr. Bustos' gun and fled the scene.

Mr. Hernandez was subsequently arrested. Following a jury trial, he was convicted of second-degree murder with the use of a firearm. He was sentenced to 15 years to life for murder, plus two consecutive years for the firearm enhancement. The judgment was affirmed on appeal.

During his incarceration for the life offense, Mr. Hernandez was disciplined seven times for rules violations involving grooming standards, possession of inmate manufactured alcohol, possession of a utility knife blade, stealing food, improperly loaning personal property, and disrespecting staff. He was also counseled 12 times for minor misconduct, most recently in 2000.

I considered various positive factors in reviewing whether Mr. Hernandez is suitable for parole at this time. Mr. Hernandez made efforts to enhance his ability to function within the law upon release. He earned his GED in 1998, and he took additional adult basic education courses and infectious disease courses. He completed vocational training in graphic arts, and in mill and cabinet work. He held institutional jobs as a furniture assembler, industry worker, teacher's aide, boiler room operator, and machine operator, among other things. In addition, he availed himself of an array of self-help and therapy, including the Employability Program, Anger Management, Impact, Character Development, Life Skills, Responsibility for Self-Determination, Mind Transformation, Chemical Dependency, Red Road, Alcoholics Anonymous, and Narcotics Anonymous. He maintains seemingly solid relationships and close ties with supportive family and friends, and he received some positive evaluations from mental-health and correctional professionals over the years.

Hector Hernandez, D-33689
Second-Degree Murder
Page 2

Mr. Hernandez also made plans upon his release to live with family in Fresno County, the county of last legal residence. Although he has marketable skills, he has not secured a job offer in Fresno County. Having a legitimate way to provide financial support for himself immediately upon release is essential to Mr. Hernandez's success on parole.

Despite the positive factors I have considered, the second-degree murder for which Mr. Hernandez was convicted was especially grave, in part because of the callous manner in which it was carried out. According to the probation report, Mr. Bustos was asleep on his couch when Mr. Hernandez kicked open the door and entered with a sawed-off shotgun. The probation officer noted that Mr. Bustos "was particularly vulnerable" when Mr. Hernandez entered the home and shot Mr. Bustos just after waking him up. There is also evidence in the record before me that the murder involved some level of premeditation. According to the Court of Appeal opinion, Mr. Hernandez testified at trial that he purchased heroin from Mr. Bustos on several prior occasions. One witness testified that, days before the murder, she heard Mr. Hernandez arguing with Mr. Bustos over the quantity of the heroin he received. On the night of the murder, Mr. Hernandez went to Mr. Bustos' residence armed with the shotgun. Mr. Hernandez then forced his way through the front door of the residence and shot Mr. Bustos when he got up off the couch. The gravity of the second-degree murder committed by Mr. Hernandez is alone sufficient for me to conclude presently that his release from prison would pose an unreasonable public-safety risk.

Mr. Hernandez says he is remorseful and accepts responsibility for his actions. But in his statement summarized in the 2006 Life Prisoner Evaluation, he said, "the actual gunshot which took [Mr. Bustos'] life was fired in self defense." Likewise, according to his statement as summarized in the 2006 mental-health evaluation, Mr. Hernandez claimed that Mr. Bustos pulled his gun and fired before Mr. Hernandez shot him. But at least two witnesses reported in the Fresno County Sheriff's report that they heard one gunshot the night of the murder. They testified similarly at trial, according to the Court of Appeal opinion. According to the probation report, one witness also saw Mr. Hernandez take the gun from Mr. Bustos after Mr. Bustos removed it from his waistband.

In any event, Mr. Hernandez took a sawed-off shotgun to Mr. Bustos' home, kicked open the door to the residence, and according to the Court of Appeal opinion, pointed the gun at everyone inside. The 2003 Board asked, "what would you expect [Mr. Bustos'] reaction to be if he's confronted with a man with a shotgun?" Mr. Hernandez later responded, "[p]robably everything that happened."

When he committed this crime, Mr. Hernandez was 26 years old and already had an extensive criminal record, including juvenile adjudications for armed robbery, assault with a deadly weapon, burglary, petty theft, carrying a concealed firearm, joyriding, and resisting an officer. His criminal behavior continued into adulthood, as he was convicted of discharging a firearm at an occupied dwelling/vehicle, harboring a federal fugitive, being under the influence of a controlled substance, and driving under the influence of a controlled substance. He also admitted to the probation officer that he routinely abused heroin, and he used cocaine, LSD, marijuana and PCP prior to the life offense. Mr. Hernandez's criminal history, which began at a young age and includes incidents of violent and assaultive behavior toward others, demonstrates his inability or unwillingness to conform his behavior to the rules of society, and this weighs against his parole suitability at this time.

Hector Hernandez, D-33689
Second-Degree Murder
Page 3

The 2006 Board noted Mr. Hernandez's prior criminal history and drug abuse when it found that he "committed the crime as a result of significant stress in [his] life." The Board, however, also said that the stress was "self-induced," and that "[w]e're not in any way, shape or form saying that you had stress in your life." While Mr. Hernandez was indeed abusing heroin at the time, he was also aware of available treatment programs in the community. He told the probation officer that he completed a Methadone treatment program in 1985, the same year that he murdered Mr. Bustos. Even if Mr. Hernandez was under stress when he perpetrated the life offense, I believe that factor alone is presently insufficient to mitigate the nature and circumstances of the murder.

I note that the Fresno County District Attorney's Office opposed parole with the 2006 Board based, in part, on the gravity of the offense, Mr. Hernandez's lengthy criminal and drug abuse history, his lack of insight into the nature of his offense, and his failure to establish concrete parole plans.

At age 47 now, after being incarcerated for more than 21 years, Mr. Hernandez made some creditable gains in prison. But given the current record before me, and after carefully considering the very same factors the Board must consider, I find that the negative factors weighing against Mr. Hernandez's parole suitability presently outweigh the positive ones. Accordingly, because I believe his release would pose an unreasonable risk of danger to society at this time, I REVERSE the Board's 2006 decision to grant parole to Mr. Hernandez.

Decision Date: 11-02-2006

ARNOLD SCHWARZENEGGER
Governor, State of California