# EXHIBIT 4

## LIFE PRISONER EVALUATION REPORT
## SUBSEQUENT PAROLE CONSIDERATION HEARING
## JULY 2005 CALENDAR

**HERNANDEZ, HECTOR**                                        **D33689**

I.      **COMMITMENT FACTORS:**

A.      **Life Crime:** Murder second, 187 P.C., Fresno County Case #336275-3, with the Use of a Firearm (gun) 12022.5 P.C. Sentenced to 15 years plus 2 years enhancement. Total term 17 years to Life; MEPD: 4/21/97; received by CDC: 7/7/86. Victim: Silvestere Bustos, Age: Unknown.

1.      **Summary of Crime:** On 8/15/85, at approximately 3:56 a.m., Officer F. Lopez was dispatched to 2448 South 11th #4, Calwa, regarding an injured person. Upon arrival Officer Lopez met four Mexican males and one female standing outside the residence. Upon entering the living room of the residence, the officer observed a Mexican male subject lying on the floor with a large pool of blood under the chest and face area. The victim was pronounced dead at the scene. The victim was identified as Silvestere Odulio Bustos. Subsequent investigation determined that the victim had been shot at close range by a shotgun. The officer's made contact with several witnesses to the crime, one of whom was Enriquez Casias (a roommate of the victim). He testified that at 3:00 a.m. on 8/15/85 there was a knock on the door at which time he (Casias) observed Hernandez standing there. Hernandez asked Casias if he had some heroin then gave him $20.00. Casias said he told Hernandez let me see if my friend has some, referring to the victim Bustos. Casias was getting "pieces" from Bustos boots when Hernandez kicked open the door and entered the residence with a shotgun and stated, "give me the gun and give me the chiva," which means heroin. According to Casias, as soon as Hernandez said, "give me the gun" Hernandez shot Bustos. The Probation Officer's Report (POR) indicates that several witnesses were interviewed and that their statements correlated with Casias' statement. They also related in part that Hernandez had been to the residence on numerous occasions to purchase drugs and one day prior to the incident, had been in an argument with the victim about money. Hernandez was convicted of the crime by jury trial on 5/13/86. [Source: document POR pages 2 and 3.]

2.      **Prisoner's Version:** In an interview for this report, Hernandez indicated that his version remains the same as stated in the addendum Subsequent Hearing #5 dated February 2004 remains the same. In the addendum,

COPY TO INMATE ON June 13, 2005

LIFE PRISONER EVALUATION REPORT
PAROLE CONSIDERATION HEARING
JULY 2005 CALENDAR

he stated the following: "In order to make a statement that would give some clarity and resolution, I would practically have to answer the question of, 'What is the meaning if Life and Death?' As difficult and at times overwhelming as this task is, it is what I've endeavored to do.

I should say my opponent (who became the victim) had been stealing from me and threatening my life, and that the actual gunshot which took his life was fired in self defense. All of which is true. Yet in order to reach a greater and healthier understanding, I would first have to admit responsibility which is what I've done. A few of the areas I addressed (in order to gain a deeper understanding of the crime I committed) includes my childhood, peer environment and spirituality only after extensive self-examination in those areas I have reached the conclusion that I needed a major adjustment in the way I relate to others, which entails developing a great integrity for morals and ethics. This is an ongoing process with continual room for improvement. Suffice to say that this journey of recovery and healing is something I'll be doing for the rest of my life."

3. **Aggravating/Mitigating Circumstances:**

   a. **Aggravating Factors:**

      1. The victim, was particularly vulnerable in that the prisoner entered the victim's home and shot him while he was lying on his couch and awakened by the prisoner.
      2. The prisoner had a history of criminal behavior for which the term is being enhanced under BPT Rule 2286.
      3. The prisoner engaged in other reliably documented criminal conduct (attempted drug purchase) which was an integral part of the crime for which he is currently committed.
      4. The inmate was on probation at the time the crime was committed.
      5. During the commission of the crime, the prisoner had a clear opportunity to cease but instead continued.
      6. The manner in which the crime was committed created potential for serious injury to persons other than the victim of the crime.

   b. **Mitigating Factors:**

      1. The prisoner participated in the crime under partially excusable circumstances (heroin, inebriation) that do not amount to a legal defense.

B. **Multiple Crime(s):** N/A.

HERNANDEZ, HECTOR          D33689                    CTF-SOLEDAD            **JUL/2005**

LIFE PRISONER EVALUATION REPORT
PAROLE CONSIDERATION HEARING
JULY 2005 CALENDAR

1.    **Summary of Crime:** N/A.

2.    **Prisoner's Version:** N/A.

II.    **PRECONVICTION FACTORS:**

A.    **Juvenile Record:**

07/31/70    Burglarized doctor's office in Fresno, removed $80.00 cash. Disposition placed on informal probation.

10/5/70    Burglary/entered a residence, removed 9 different types of weapons, a polaroid camera, and a radio. Disposition: placed on probation without wardship until 5/23/71. Case dismissed: 5/19/71.

04/22/71    Burglary/entered Mission Baptist Church and removed $10.50. Disposition: probation ordered; then released to parents.

09/23/71    Petty theft subject and accomplish stole $190.00 from Luallen's 76 Service Station. Disposition: remain ward of the court, pay restitution, work program Samger PD.

06/29/72    Burglary. Disposition: commit to youth center; detain juvenile hall pending transfer.

07/18/72    Defendant and accomplish were found inside the closed business of Padillas Market. Disposition: remain ward of court on probation. Commit to youth center suspended.

B.    **Adult Convictions and Arrests:**

01/10/80    Carrying a concealed weapon, carrying a loaded weapon, receiving stolen property. Disposition: none.

11/12/80    Burglary. Disposition: none.

11/14/80    Burglary. Disposition: none.

10/06/84    Harboring a federal fugitive. Disposition: convicted sentence to 358 days in a federal correctional institution.

LIFE PRISONER EVALUATION REPORT
PAROLE CONSIDERATION HEARING
JULY 2005 CALENDAR

        08/25/82     Sale or transport marijuana, burglary, transport/sale controlled substance. Disposition: all charges dismissed.

        10/26/84     Under the influence of a controlled substance/obstruct/resist arrest. Disposition: none.

**C.**    **Personal Factors:**  Hernandez was born on 2/28/59 in Fresno California to Guadalupe Hernandez and Delores Mejia. He is one of eight children. His brother, Guadalupe Hernandez Jr. was also convicted of murder in an unrelated case. His brother is currently housed at California State Prison, Corcoran. Hernandez completed the 10th grade at Sanger High School in 1975 and passed his general education development (GED) test on 5/4/92. He also indicated he completed vocational training in welding at Valley Technical and Trade School in Fresno. Hernandez married Janice Ramirez on 10/2/82 in San Bernardino. Four children were born to this union. The marriage is no longer in tact. His work history consists of agricultural related labor. He admitted being a daily user of heroin, using between $20 to $40 dollars worth of heroin every day. He also admitted to being a regular consumer of beer, as well as sniffing glue and paint and using PCP, LSD and cocaine occasionally. While Hernandez was incarcerated in the county jail, he was prescribed Synaquad. Hernandez has not received an psychiatric treatment or medication since coming into the California Department of Corrections.

## III.   POSTCONVICTION FACTORS:

**A.**    **Special Programming/Accommodations:**  None.

**B.**    **Custody History:**  The prisoner was received at the California Medical Facility for his initial processing on 7/7/86. He was transferred and was received at Folson-IV on 7/29/86. He was subsequently transferred and received at the Correctional Training Facility on 10/7/03. On 10/14/86, he received his Initial Classification and was assigned Close B Custody and released to the general population. He was assigned to the PIA textiles program as a machine operator and earned satisfactory work grades. On 1/26/89, he transferred to California Men's Colony as a medical case and returned awaiting medical treatment. The prisoner returned to CTF from CMC-E on 4/12/89. On 1/22/90, during Annual Program Review, his custody was reduced to Medium A. He was assigned to the CTF Central Facility Boiler Room. He was unassigned on 9/3/91, non-adversely from his boiler room assignment. He was reassigned to the lunch box crew on 10/19/91. On 4/22/93, the prisoner transferred to North Kern State Prison under Medium A custody. He was assigned to the vocational mill and cabinet and teacher's aide position. On 12/21/95, the prisoner was assigned to a clerk's position. On 9/16/97, he was received at CTF. He received his Initial Classification and custody was established at Medium A and he was released to the general population. While at CTF, the prisoner's work assignments included

HERNANDEZ, HECTOR     D33689            CTF-SOLEDAD       **JUL/2005**

LIFE PRISONER EVALUATION REPORT                                         5
PAROLE CONSIDERATION HEARING
JULY 2005 CALENDAR

textiles, vocational graphics and print.  He completed the vocational graphic and
print program per Instructor K. Eng.  The prisoner subsequently transferred to the
East Dorm for housing and job placement.  He was assigned to the landscape and
painter's position on 4/11/03.  However there are no CDC 101's noting the
prisoner's work performance during that period noted in the Central File.  The
prisoner is currently assigned to the PIA Wood Furniture Factory Assembly Shop.
His work supervisor's reports (CDC 101s) dated 9/1/04 and 12/1/04 reflect
satisfactory to above average work grades.  His supervisor's comments were:
Hernandez continues to work well with other inmates.  However, during this
review period the prisoner's Central File did not reflect any documents of any
educational or vocational upgrading experience.

C.    **Therapy and Self-Help Activities:**  Participated in Narcotics Anonymous group
meetings for the first, second, third and fourth quarters of year 2004 (January,
February, March, April, May, June, July, August, September, October, November,
and December).  The prisoner was elected by the group to be its co-chairperson.

D.    **Disciplinary History:**  None during this review period.

      CDC 115s

      02/10/99    CTF    3062(e)     Hair exceeding 3 inches in length.
                                     Disposition: <u>Guilty:</u> 20 hours of
                                     extra duty. Counseled and
                                     reprimanded.

      10/10/92    CTF    3053        Misuse (stealing) state food.
                                     Disposition: <u>Guilty:</u> 20 hours extra
                                     duty.  warned and reprimanded.

      09/10/92    CTF    3191(B)     Out of possession of non-expandable
                                     personal property.  Disposition
                                     <u>Guilty:</u> 40 hours extra duty.

      09/02/92    CTF    3053        Stealing state food.  Disposition:
                                     <u>Guilty:</u> 20 hours extra duty.
                                     Counseled and reprimanded.

      12/18/91    CTF    3016        Possession of Inmate Manufactured
                                     Alcohol. Disposition: <u>Guilty:</u> 90
                                     days LOC.

      12/18/91    CTF    3006        Possession of Utility Knife Blade
                                     (dangerous contraband).

HERNANDEZ, HECTOR        D33689                    CTF-SOLEDAD        **JUL/2005**

LIFE PRISONER EVALUATIC    REPORT
PAROLE CONSIDERATION HEARING
JULY 2005 CALENDAR

|  |  |  |  | Disposition: <u>Guilty</u>: 30 days LOC. Counseled and reprimanded. |
|---|---|---|---|---|
| 11/18/90 | CTF | 3004 |  | Disrespect towards staff. Disposition: <u>Guilty</u>: Counseled and reprimanded. |

### CDC 128As

| 06/17/00 | Disregarding yard recall procedures. |
|---|---|
| 03/25/94 | Excessive contact with visitor. |
| 06/20/92 | Stealing state property. |
| 06/18/92 | Stealing state property. |
| 04/14/92 | Unauthorized absence. |
| 03/26/90 | Unauthorized absence. |
| 03/05/90 | Destruction of state property. |
| 09/29/89 | Unauthorized possession. |
| 01/17/89 | Excessive contact with visitor. |
| 11/06/88 | Out of bounds. |
| 06/14/88 | Absent from job. |

E.    **Other:**  On 7/1/04, Hernandez appeared before the Board of Prison Terms for his Subsequent Parole Consideration Hearing #5.  The Board denied parole for (1) year and recommended that he remain disciplinary free, upgrade educationally/vocationally, participate in self help substance abuse programs and cooperate with the clinicians in the completion of a new psych report.

## IV.    FUTURE PLANS:

A.    **Residence:**  The prisoner states that he plans to live with his parents, Mr. Guadalupe and Lolita Hernandez, located at 842 Edgar Street, Sanger, California 93657.  Telephone number (559) 875-3482.  The prisoner indicates that he has an alternate address as a residence with his sister, Ms. Hope Hernandez who resides at 2362 North View, Selma, California 93662; telephone #(559) 896-3802.

B.    **Employment:**  The prisoner indicates that his main desire is to work as a counselor in the recovery with youth and drug offenders and violence intervention.  However, Hernandez did not offer any letters of interest from any potential employers indicating job offers at this time.

C.    **Assessment:**  The prison indicates he has family support and a place to live if he is granted parole.  However, he did not submit any potential job offers from employers or have a viable employment parole plan at this time.

HERNANDEZ, HECTOR        D33689                CTF-SOLEDAD            **JUL/2005**

LIFE PRISONER EVALUATION REPORT
PAROLE CONSIDERATION HEARING
JULY 2005 CALENDAR

V.    **USINS STATUS:** N/A.


VI.   **SUMMARY**:

    A.    Prior to release the prisoner could benefit from by:

        1.    Remaining disciplinary free.
        2.    Participate in self help/substance abuse programs.
        3.    Cooperate in the completion of a new psych report.

    B.    This report is based upon an interview with the prisoner on 3/29/05, lasting approximately 1 hour and a complete review of the Central File lasting 3 hours.

    C.    The prisoner was afforded an opportunity to examine his Central File on 3/29/05. He declined to review his file pursuant the Olson Decision. The 128B is located in the general section of the Central File.

    D.    No accommodation was required per the Armstrong vs. Davis BPT Parole Proceedings Remedial Plan (ARP) for effective communication.

LIFE PRISONER EVALUATION REPORT
PAROLE CONSIDERATION HEARING
JULY 2005 CALENDAR

_____     5-5-05
H. Staten                           Date
Correctional Counselor I


_____     6/3/05
R. Leach                            Date
Correctional Counselor II


_____     6-6-05
R. Pope                             Date
Facility Captain


_____     6-7-05
D. S. Levorse, CPR                  Date
Classification and Parole Representative


HERNANDEZ, HECTOR        D33689              CTF-SOLEDAD              **JUL/2005**

BOARD OF PRISON TERMS                                                                                    STATE OF CALIFORNIA

## LIFE PRISONER: POSTCONVICTION PROGRESS REPORT

☐  DOCUMENTATION HEARING

☒  PAROLE CONSIDERATION HEARING

☐  PROGRESS HEARING

INSTRUCTIONS
    TO CDC STAFF:  DOCUMENT EACH 12-MONTH PERIOD FROM THE DATE THE LIFE TERM STARTS TO PRESENT
    TO BPT STAFF:  FOR EACH 12-MONTH INCREMENT APPLY THE GUIDELINES UNDER WHICH THE PAROLE DATE WAS ORIGINALLY
                ESTABLISHED, ie., 0-2 MONTHS FOR PBR AND 0-4 MONTHS FOR BPT. SEE BPT §§2290 - 2292, 2410 AND 2439.

| POSTCONVICTION CREDIT | | | REASONS |
|---|---|---|---|
| YEAR | BPT | PBR | |
| 12/16/03 to 12/15/04 | | | **PLACEMENT**:  Remained at the Correctional Training Facility II and housed in the general population. **CUSTODY**:  Medium A. **VOC. TRAINING**:  None during this review period. **ACADEMICS**:  None during this review period. **WORK RECORD**:  Assigned to the PIA Furniture Assembly Shop.  He earned satisfactory to above average work grades per his work supervisor's reports (CDC 101s) dated 9/1/04 and 12/1/04.  His supervisor's comments were: Hernandez continues to work well with other inmates. **GROUP ACTIVITIES**:  Participated in Narcotics Anonymous group meetings for the first, second, third, and fourth quarters of year 2004 (January, February, March, April, May, June, July, August, September, October, November and December) per 128Bs dated 10/1/04, 3/24/04 and 2/22/04.  Hernandez was also elected by the group its co-chairperson. **PSYCH. TREATMENT**:  None due to this review period. **PRISON BEHAVIOR**:  None during this review period. **OTHER**:  N/A. |

CORRECTIONAL COUNSELOR'S SIGNATURE                                      DATE  5/5/05

HERNANDEZ                    D33689                    CTF-SOLEDAD                    JUL/2005

BPT 1004 (REV 7/86)                                    Page _1_

BOARD OF PRISON TERMS                                                              STATE OF CALIFORNIA

CONTINUATION SHEET: LIFE PRISONER : POSTCONVICTION PROGRESS REPORT

| POSTCONVICTION CREDIT | | | REASONS |
|---|---|---|---|
| YEAR | BPT | PBR | |
| 12/16/04 to 4/7/05 (Present) | | | **PLACEMENT:** CTF II and housed in the general population. **CUSTODY:** Medium A. **VOC. TRAINING:** None during this review period. **ACADEMICS:** None during this review period. **WORK RECORD:** Assigned to the PIA wood furniture factory assembly shop. There are no work supervisor reports (CDC 101s) noted in the Central File during this review period. **GROUP ACTIVITIES:** There are no CDC 128Bs to note participation in self help therapy or programming. **PSYCH. TREATMENT:** None during this review period. **PRISON BEHAVIOR:** None during this review period. **OTHER:** On 3/29/05, in preparation for the scheduled Board of Prison Terms Lifer Prisoner Hearing, Inmate Hernandez declined to review his Central File pursuant the Olson Decision. |

ORDER:
☐    BPT date advanced by      months.          ☐    BPT date affirmed without change.
☐    PBR date advanced by      months.          ☐    PBR date affirmed without change.

SPECIAL CONDITIONS OF PAROLE:
☐    Previously imposed  conditions affirmed.
☐    Add or modify

☐    Schedule for Progress Hearing on appropriate institutional calendar

HERNANDEZ                    D33689                    CTF-SOLEDAD                    JUL/2005

BOARD OF PRISON TERMS                                                              STATE OF CALIFORNIA

BPT 1004 (REV 7/86)                              Page _2_

# EXHIBIT 5

SUBSEQUENT PAROLE CONSIDERATION HEARING

STATE OF CALIFORNIA

BOARD OF PAROLE HEARINGS

In the matter of the Life )
Term Parole Consideration )
Hearing of:               )     CDC Number D-33689
                          )
HECTOR HERNANDEZ          )     INMATE
                          )     COPY
_____)

CORRECTIONAL TRAINING FACILITY

SOLEDAD, CALIFORNIA

JUNE 8, 2006

11:20 A.M.

PANEL PRESENT:

TOM SAWYER, Presiding Commissioner
SUZANNE ROTHLISBERGER, Deputy Commissioner

OTHERS PRESENT:

HECTOR HERNANDEZ, Inmate
MARY ANN TARDIFF, Attorney for Inmate
CORRECTIONAL OFFICERS, Unidentified

CORRECTIONS TO THE DECISION HAVE BEEN MADE

_____  No     See Review of Hearing
_____  Yes    Transcript Memorandum

Ramona Cota              Peters Shorthand Reporting

49

1       CALIFORNIA BOARD OF PAROLE HEARINGS

2                 D E C I S I O N

3       PRESIDING COMMISSIONER SAWYER:  Fifty-

4  six, 12:56 in the afternoon and everyone has

5  returned to the room in the matter of

6  Mr. Hernandez.  The panel has reviewed all of

7  the information received from the public and

8  relied on the following circumstances in

9  concluding the prisoner is suitable for parole.

10       INMATE HERNANDEZ:  Thank you, thank you,

11  thank you.

12       PRESIDING COMMISSIONER SAWYER:  And would

13  not pose an unreasonable risk of danger to

14  society or a threat to public safety if released

15  from prison.  Congratulations.

16       DEPUTY COMMISSIONER ROTHLISBERGER:  You

17  okay, want some Kleenex?

18       INMATE HERNANDEZ:  I'll be fine thank

19  you.

20       PRESIDING COMMISSIONER SAWYER:  Is it

21  sinking in?

22       INMATE HERNANDEZ:  Thank you very much.

23       PRESIDING COMMISSIONER SAWYER:  You've

24  never heard that before have you?

25       INMATE HERNANDEZ:  Never have, no.

26       PRESIDING COMMISSIONER SAWYER:  You did a

27  HECTOR HERNANDEZ  D-33689  DECISION PAGE 1  06/08/06

50

1    remarkable job.

2         INMATE HERNANDEZ:    Thank you sir.    Thank

3    you sir.    I want to look you in the eye and tell

4    you thank you.    Thank you, thank you.

5         DEPUTY COMMISSIONER ROTHLISBERGER:    Your

6    welcome.    You earned it.    You've gone down a

7    long road.    You're still on that journey.

8         INMATE HERNANDEZ:    Yes.    And I will

9    remain on it too.

10        PRESIDING COMMISSIONER SAWYER:    The

11   prisoner has no juvenile record of assaulting

12   others.    While in prison he's enhanced his

13   ability to function within the law upon release

14   through participation in educational programs.

15   He's attained his GED.    Probably one of the

16   things that we feel very strongly about in this

17   case is your Buddhist Meditation, the last three

18   years and the letter of commendation from Tim.

19   That was pretty compelling.    Because not only

20   did we read that letter and think, okay, letter

21   of commendation.    This guy really likes him.

22   But I think you displayed it here today.    I knew

23   you displayed it.    We both feel you displayed

24   it.    You're not just telling us that you believe

25   this, you're showing us.

26        DEPUTY COMMISSIONER ROTHLISBERGER:    You

27   HECTOR HERNANDEZ    D-33689    DECISION PAGE 2    06/08/06

51

1    live it.

2        PRESIDING COMMISSIONER SAWYER:   So that

3    was very compelling.  As well as your closing

4    speech.  I can honestly tell you I've been doing

5    these for eleven months.  I started last July

6    1st.  And I've never, ever heard a closing

7    remark better than yours.  That was well thought

8    out.  It was well read.  And it was very

9    sincere.  You're a very serious guy.  And I

10   think you have the courage of your convictions.

11   I really do.  And so let the record reflect that

12   you, during your speech that you did not falter

13   and during your speech pulled some beaded

14   artwork from around your neck and displayed that

15   with an eagle and an American flag and a bear on

16   the back and even turned it around.  I mean you

17   could probably use both hands huh?  You can eat

18   with both hands right (laughter from inmate)?

19   If you played golf you'd hit either side of the

20   ball, it doesn't matter.  Very articulate.

21   Another issue in self-help programs and this is

22   very meaningful as you got 11 years in NA.

23   You've clearly articulated to us how important

24   that is.  You're also the co-chairman.  How long

25   have you been the co-chairman?

26        INMATE HERNANDEZ:   Off and on for quite a

27   HECTOR HERNANDEZ  D-33689  DECISION PAGE 3  06/08/06

52

1  while.

2          PRESIDING COMMISSIONER SAWYER:  Yeah,

3  because I saw it back in the history there too.

4  You've had ten weeks of hep C.  You've had a 13-

5  week course of IMPACT and these are just the

6  most recent courses.  We're not going all the

7  way back to the beginning here.  Through PIA

8  viewed the inmate employability program.  Some

9  very important issues in terms of your

10  vocational programs.  Your vocational welding,

11  arc welding certificate.  That's a marketable

12  skill that can be used in your future.  You do

13  have some, well you don't have a certificate,

14  you've got vocational graphic arts and printing.

15  That was in about three years ago.  Currently

16  you're working in the furniture factory with

17  above average work reports for PIA.  And you

18  have a certificate in mill and cabinet, right?

19          INMATE HERNANDEZ:  Yes.

20          PRESIDING COMMISSIONER SAWYER:  Okay.

21  You've received numerous laudatory chronos

22  behind your NA.  That's so important given your

23  history and the commitment offense.  Your

24  involvement with NA is very, very important.

25  You committed the crime as a result of a

26  significant stress in your life.  This is not an

27  HECTOR HERNANDEZ  D-33689  DECISION PAGE 4  06/08/06

53

1  excuse.  We're not in any way, shape or form

2  saying that you had stress in your life.  But

3  you were out of control.  You started at 11

4  years of age burglarizing.  You didn't have any

5  respect for anybody's stuff or yourself more

6  importantly.  And that stress was self-induced,

7  substance abuse.  It looks like you've done just

8  about everything.  Paint, glue, you're lucky to

9  be alive today.

10        INMATE HERNANDEZ:  Yes.

11        PRESIDING COMMISSIONER SAWYER:  Because

12  we know horror stories about paint and glue.

13  You lack a significant criminal history of

14  violent crime.  You got lots of substance abuse

15  history.  You've got a lot of burglaries.  Again

16  taking people's stuff when they weren't looking.

17  Going to the markets, going into a pharmacy or

18  doctor's office and taking money.  You have

19  realistic parole plans.  While they do not have

20  a job offer you have a tremendous amount of

21  family support.  You've got two places to live,

22  one in Sanger, one in Selma with your mom and

23  dad in Sanger, the old family homestead.  And

24  with your sister in Selma.  What with your arc

25  welding this is for the record, these are both

26  farming communities.  And mill and cabinet work,

27  HECTOR HERNANDEZ  D-33689  DECISION PAGE 5  06/08/06

54

1   woodwork as well as arc welding clearly are

2   marketable skills and could very valuable in

3   those areas.  Do you agree?

4          INMATE HERNANDEZ:  I agree.

5          PRESIDING COMMISSIONER SAWYER:  So we

6   don't feel that given your what we've seen here

7   today as well as the skills that you have, we

8   don't have a problem that you can get out there

9   and get a job.  You're still young enough to do

10  that.  You don't have any physical maladies and

11  so you're in good shape there.  We feel that

12  because of your maturation, your growth, greater

13  understanding and your age at this time which is

14  not prohibitive in terms of working, this has

15  reduced your probability of recidivism.  We

16  don't think you're going to come back.  We feel

17  comfortable that we release you, you're going to

18  be a success in whatever you endeavor.

19  Institutional behavior, while you do have seven

20  115's, none, none of them are violent.

21         INMATE HERNANDEZ:  Okay.

22         PRESIDING COMMISSIONER SAWYER:  And the

23  last one was in 1999.  It was for long hair and

24  that's a violation of the rule, clearly.  You've

25  had eleven 128's.  The last one being in the

26  year 2000.  So you've distanced yourself from

27  HECTOR HERNANDEZ  D-33689  DECISION PAGE 6  06/08/06

55

 1   any of the discipline problems that you had.

 2   You had some streaks there.  You weren't

 3   programming well.  You weren't doing anything

 4   well.  But you've certainly gotten the handle on

 5   that.  We feel you show a sign of remorse.  It

 6   indicates that you understand the nature and the

 7   magnitude of the offense, accepts responsibility

 8   for the criminal behavior and has the desire to

 9   change towards good citizenship.  Give me an

10   affirmative.

11        INMATE HERNANDEZ:  That's an affirmative,

12   that's obviously a duty.

13        PRESIDING COMMISSIONER SAWYER:  Okay.

14        INMATE HERNANDEZ:  Absolutely.

15        DEPUTY COMMISSIONER ROTHLISBERGER:  The

16   tape machine doesn't read your nods though

17   (laughter by all).

18        PRESIDING COMMISSIONER SAWYER:

19   Commissioner Rothlisberger.

20        DEPUTY COMMISSIONER ROTHLISBERGER:

21   Absolutely, Dr. Reed back in 1999 which is your

22   prior psych report had written that your

23   violence potential within a controlled setting

24   is considered to be below average.  Released to

25   the community violence potential is considered

26   to be no more than the average citizen.  But did

27   HECTOR HERNANDEZ  D-33689  DECISION PAGE 7  06/08/06

56

1    say that heroin abuse did present a significant

2    risk factor.  And this inmate does appear to

3    have a heroin abuse problem.  This was in '99

4    and you continued participation in NA during

5    your incarceration as well as a contingency of

6    parole is suggested.  And Dr. Macomber in his

7    most recent psychological evaluation states of

8    course on the Axis I, you have no mental

9    disorder, Axis II, no personality disorder.  He

10   agreed with Dr. Reed and says that the potential

11   for dangerousness behavior in the institution

12   agrees with the prior evaluator, below average

13   in comparison to other inmates.  Never received

14   any disciplinaries for aggressive, violent or

15   dangerous behavior.  And stated again that in

16   1991 when you underwent serious life changes.

17   When you got clean and sober.

18          INMATE HERNANDEZ:  That's it.

19          DEPUTY COMMISSIONER ROTHLISBERGER:  And

20   considering potential for dangerous when

21   released to the community, the level of service

22   inventory revised, you retained a score of 4.2.

23   Means that if a hundred men were released on

24   parole you're expected to do better on parole

25   than 95.8 of them.  But agrees also with the

26   prior evaluator that you do not pose any more

27   HECTOR HERNANDEZ  D-33689  DECISION PAGE 8  06/08/06

57

1  risk to the community at this time in his life

2  than the average citizen.  In fact probably

3  poses less risk due to is growth, maturity and

4  improvement.  And found no significant risk

5  factors.  Again I believe we have this on the

6  record before but you have excellent wood

7  working skills.  You are able to obtain

8  employment.  Considerable family support.  And

9  your level of insight and self-understanding is

10  impressive.  I know it impressed the panel.  You

11  obviously have undergone significant mental,

12  spiritual and emotional changes over the years

13  of incarceration.  And the doctor concludes with

14  the prognosis for successful adjustment in the

15  community is excellent.  Commissioner.

16       PRESIDING COMMISSIONER SAWYER:  Thank

17  you.  And it's okay to smile a little

18  (laughter).  You don't have to be so stoic.

19       DEPUTY COMMISSIONER ROTHLISBERGER:

20  You're so serious.

21       PRESIDING COMMISSIONER SAWYER:  Okay the

22  base term of confinement, we're going to do the

23  numbers here.  In fact I've given --

24       DEPUTY COMMISSIONER ROTHLISBERGER:

25  Counsel.

26       PRESIDING COMMISSIONER SAWYER:  Counsel,

27  HECTOR HERNANDEZ  D-33689  DECISION PAGE 9  06/08/06

58

1    a copy of this for you. The base term offense

2    for which the prisoner has been convicted is

3    murder in the second degree, PC 187, 12022., in

4    addition 12022.5. The offense occurred on 8/15

5    of 1985. The term is derived from the matrix

6    located in the California Code of Regulations,

7    Title 15 at 2403(c), second degree murder.

8    Offense committed on or after 11/8 of 1978. The

9    panel finds the Category 1C is appropriate. 1

10   would be participating victim, victim was an

11   accomplice or otherwise implicated in a criminal

12   act with the prisoner during which the result of

13   the death occurred, drug dealer. There was an

14   illegal act going on here. And that led up to

15   this particular murder. The C is severe trauma,

16   death resulted from severe trauma inflicted with

17   deadly intensity, a shotgun. A shot to this

18   victim and killing him. We have a choice of

19   three numbers. A mitigating number, a middle

20   number or an aggravated number. Given the

21   circumstances of this case we're going to take

22   the middle number of 18 years. We assess 216

23   months which is 18 years for the base offense.

24   And this is how it comes out. We're adding

25   because you used a weapon in this 12022.5 charge

26   on that, 24 months. So now that brings up to

27   HECTOR HERNANDEZ  D-33689  DECISION PAGE 10 06/08/06

1   240 months.  Which is in my head 20 years.

2        DEPUTY COMMISSIONER ROTHLISBERGER:  Yes

3   (laughter).

4        PRESIDING COMMISSIONER SAWYER:  Okay.

5   Post-conviction credit, post-conviction credit

6   from the date the life term started, that's

7   12/22 of 1986 to today's date, 6/8 of '06 is 60

8   months.  Do you know what the post-conviction

9   credit is?  Do you know what I'm talking about

10  here?

11       INMATE HERNANDEZ:  Generally, not

12  exactly.

13       PRESIDING COMMISSIONER SAWYER:  You get

14  four months a year for every year you don't have

15  a 115.

16       INMATE HERNANDEZ:  All righty.

17       PRESIDING COMMISSIONER SAWYER:  And you

18  got five years.  Now some years you had two

19  115's so it's not, we're not taking seven years

20  off.  What we're taking is, what did we took,

21  took five, four or five.

22       DEPUTY COMMISSIONER ROTHLISBERGER:  How

23  did we get to 60?

24       PRESIDING COMMISSIONER SAWYER:  We added

25  the, he had --

26       ATTORNEY TARDIFF:  He had seven, okay --

27  HECTOR HERNANDEZ  D-33689  DECISION PAGE 11 06/08/06

60

1          PRESIDING COMMISSIONER SAWYER:   He had
2    seven 115's but some of them were multiple --
3          DEPUTY COMMISSIONER ROTHLISBERGER:   Were
4    in the same year.
5          ATTORNEY TARDIFF:   So it was more than
6    five years or whatever.   How many years were --
7          DEPUTY COMMISSIONER ROTHLISBERGER:   What
8    did I do with the --
9          PRESIDING COMMISSIONER SAWYER:   It was 76
10   months total.
11         DEPUTY COMMISSIONER ROTHLISBERGER:   Oh,
12   here we go.   Yeah it was 76 months minus 16.
13         PRESIDING COMMISSIONER SAWYER:   Minus 16.
14   We gave you four years because --
15         DEPUTY COMMISSIONER ROTHLISBERGER:
16   Right.
17         PRESIDING COMMISSIONER SAWYER:   These
18   seven 115's occurred --
19         DEPUTY COMMISSIONER ROTHLISBERGER:
20   Didn't all happen in different years.
21         PRESIDING COMMISSIONER SAWYER:   -- over a
22   four year period.
23         DEPUTY COMMISSIONER ROTHLISBERGER:
24   Right.
25         ATTORNEY TARDIFF:   So he didn't get the
26   credit for four years.
27   HECTOR HERNANDEZ   D-33689   DECISION PAGE 12 06/08/06

61

1        PRESIDING COMMISSIONER SAWYER:  He didn't

2   get the credit for four years.

3        DEPUTY COMMISSIONER ROTHLISBERGER:

4   Right.

5        PRESIDING COMMISSIONER SAWYER:  He lost

6   16 months.

7        DEPUTY COMMISSIONER ROTHLISBERGER:

8   Right.

9        PRESIDING COMMISSIONER SAWYER:  So he had

10  76 months of credit.  We took 16 months off of

11  that which gives you 60, five years.  So we're

12  going from 20 years down to five years.  Twenty

13  years minus five years gives you a total of 118

14  -- of a 180 months, which is 15 years

15  essentially, 15 or 14.

16        ATTORNEY TARDIFF:  Wait a minute, the

17  credit is four --

18        PRESIDING COMMISSIONER SAWYER:  Fifteen

19  years.

20        ATTORNEY TARDIFF:  -- four months off for

21  each year of no 115's.  How many years was he

22  115 free?

23        PRESIDING COMMISSIONER SAWYER:  Well we

24  figured his time at 19 years because it'll be 20

25  years in December.

26        ATTORNEY TARDIFF:  Okay.

27  HECTOR HERNANDEZ  D-33689  DECISION PAGE 13 06/08/06

62

1           DEPUTY COMMISSIONER ROTHLISBERGER:

2    Right.

3           PRESIDING COMMISSIONER SAWYER:  If we

4    figured his time at 19 years that he's been

5    down.

6           ATTORNEY TARDIFF:  And five years.  He

7    wasn't credited with five years.

8           PRESIDING COMMISSIONER SAWYER:  He was

9    credited for five years.

10          DEPUTY COMMISSIONER ROTHLISBERGER:  He

11   was.

12          PRESIDING COMMISSIONER SAWYER:  He was

13   given five years credit, 60 months.

14          ATTORNEY TARDIFF:  No, but how many years

15   of 115's?

16          DEPUTY COMMISSIONER ROTHLISBERGER:  Well

17   I have times four, 19 years times four.

18          ATTORNEY TARDIFF:  That would be 15 years

19   of good time.

20          PRESIDING COMMISSIONER SAWYER:  That's

21   correct.

22          DEPUTY COMMISSIONER ROTHLISBERGER:

23   That's correct.

24          ATTORNEY TARDIFF:  Times four gives him,

25   that's how you got the 60.

26   //

27   HECTOR HERNANDEZ  D-33689  DECISION PAGE 14 06/08/06

63

1          **DEPUTY COMMISSIONER ROTHLISBERGER:**

2   That's how we got there.  We just -- Right.

3          **PRESIDING COMMISSIONER SAWYER:**  There are

4   several ways you can go.

5          **ATTORNEY TARDIFF:**  Okay.  You went the

6   other way.

7          **DEPUTY COMMISSIONER ROTHLISBERGER:**  Thank

8   you counsel.

9          **ATTORNEY TARDIFF:**  Thank you.

10         **PRESIDING COMMISSIONER SAWYER:**  I move

11   slow (laughter).

12         **ATTORNEY TARDIFF:**  That's where the 60

13   months comes in.

14         **PRESIDING COMMISSIONER SAWYER:**  Okay so

15   you have 180.  Your date then would be 15 years

16   from 12/22 of 1986.

17         **INMATE HERNANDEZ:**  Okay, very good.

18         **PRESIDING COMMISSIONER SAWYER:**  So you've

19   served that 15 years plus.  All right.  Let's

20   finish your conditions for you.  And I'm going

21   to ask you at the end of this if there is, if

22   you have any problem with any of these

23   conditions.  These are imposed.  Do not use

24   alcoholic beverages.  Submit to alcohol testing,

25   submit to anti-narcotic testing, submit to THC

26   testing, participate in substance-abuse programs

27   HECTOR HERNANDEZ  D-33689  DECISION PAGE 15 06/08/06

64

1    such as AA or NA.  Attend outpatient clinic.  Do

2    you have any problems with any of those?

3           INMATE HERNANDEZ:  I have no problem with

4    any of that.

5           PRESIDING COMMISSIONER SAWYER:  I would

6    imagine.  Okay.  We don't have any other special

7    conditions of parole.  The biggest single item,

8    issue is the NA and we're going to be testing

9    you while you're on parole.  And of course it

10   goes without saying that there are going to be

11   other parole conditions.  For example if your

12   father, if you go to live your father and he has

13   a gun in the house he's going to have to remove

14   it, okay.  Because you can't ever possess a gun

15   as an ex-felon.  You'll always unfortunately be

16   an ex-felon, okay.  But in the free world that's

17   not so bad.  So do you have any questions of me

18   or us?

19           INMATE HERNANDEZ:  No questions.

20           PRESIDING COMMISSIONER SAWYER:  Okay.

21   Counsel?

22           ATTORNEY TARDIFF:  I have none.

23           PRESIDING COMMISSIONER SAWYER:  Okay.

24           ATTORNEY TARDIFF:  Thank you.

25           PRESIDING COMMISSIONER SAWYER:  Your

26   welcome.  Oh, now, as was, as you've heard

27   HECTOR HERNANDEZ  D-33689  DECISION PAGE 16 06/08/06

65

1    before, this decision goes to the Decision

2    Review Unit at the Board of Prison (sic)

3    Hearings.  That's our legal folks who will look

4    over and make sure all of our calculations are

5    correct and we've done everything that we need

6    to do by law and regulation.  Then it's sent

7    over to the Governor's Office.  And the Governor

8    and his staff, his staff will make

9    recommendations to him whether to let it go or

10   let it happen or reverse it.  If it is reversed

11   you'll be notified and then it comes back to the

12   Board.  There's 12 commissioners, 11 other

13   commissioners and myself in the state.  We meet

14   once a month and we look at anything the

15   Governor has concerns about.  We meet and

16   discuss those.  And we can send it back from

17   that meeting to the Governor and say we don't

18   agree with you Governor.  Which we do, which we

19   do often.  So it's, we send it back and forth.

20   The Governor can do what he wants at that point.

21   He can reverse your decision.  Let me, let me

22   tell you, if for some reason something happens

23   at the state level and it comes back it's

24   reversed don't get discouraged.  Don't get

25   discouraged.  Sometimes that's not officially a

26   test but that is a test.  That's testing you to

27   HECTOR HERNANDEZ   D-33689   DECISION PAGE 17 06/08/06

66

1   see if you are really going to be able to put up

2   with some stress. Having a date, getting it

3   reversed, oh, so, you know, your character will

4   show at that point. You don't want to get any

5   115's between now and ever. You get a 115 or

6   have a problem along the line, I'd also advise

7   you not to, try to keep it under your hat. It's

8   not easy to do I know. The rumors run around

9   here all the time. But try to keep it under

10  your hat as much as you can so nobody gets

11  jealous. And --

12          DEPUTY COMMISSIONER ROTHLISBERGER:  Tries

13  to sabotage you.

14          PRESIDING COMMISSIONER SAWYER:  Yes

15  sabotage your date. Getting you into a mutual

16  combat --

17          DEPUTY COMMISSIONER ROTHLISBERGER:  And

18  they will.

19          PRESIDING COMMISSIONER SAWYER:  -- or

20  something like that. You know how to handle

21  that. You've never had a mutual combat, okay.

22  So what we're saying is walk on eggs for a

23  while. You'll probably hear in about three or

24  four months. By law they're supposed to let you

25  know within 120 days but sometimes that doesn't

26  happen because we're doing an awful lot of

27  HECTOR HERNANDEZ  D-33689  DECISION PAGE 18 06/08/06

67

1   hearings now.  We're really cranked up on

2   hearings.  And I can tell you that out of the

3   dates I've given I've had the Governor reverse

4   two of them and I won both of those at the Board

5   meeting.  And I've given a number of dates.  So

6   I've got -- He's letting mine go through for

7   some reason or another.  Some people get more.

8   What can I say?  So we're optimistic for you

9   Mr. Hernandez.  We're hoping that you get your

10  date and go live with your mom and dad and your

11  sister and you reunite yourself with your

12  children and your grandchildren and live a

13  successful life.  We've got all the confidence

14  in you.  We don't think we'll be reading about

15  you in the newspaper doing something bad.  Maybe

16  we'll be reading some of your literature.

17        INMATE HERNANDEZ:  Hopefully yes.

18        PRESIDING COMMISSIONER SAWYER:  Okay.

19        INMATE HERNANDEZ:  Absolutely.

20        PRESIDING COMMISSIONER SAWYER:  All

21  right, that concludes -- Do you have anything

22  you'd like to say?

23        DEPUTY COMMISSIONER ROTHLISBERGER:  No,

24  just to wish you all the best of luck.

25        INMATE HERNANDEZ:  Thank you very much.

26  //

27  HECTOR HERNANDEZ  D-33689  DECISION PAGE 19 06/08/06

68

1           DEPUTY COMMISSIONER ROTHLISBERGER:    Carry

2    your message always.

3           PRESIDING COMMISSIONER SAWYER:    Okay,

4    we're 17 minutes past one and that concludes

5    this hearing.

6                          --oOo--

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23   PAROLE GRANTED

                                    OCT 16 2006
24   THIS DECISION WILL BE FINAL ON:_____

25   YOU WILL BE PROMPTLY NOTIFIED, IF PRIOR TO THAT

26   DATE, THE DECISION IS MODIFIED.

27   HECTOR HERNANDEZ   D-33689   DECISION PAGE 20 06/08/06

69

CERTIFICATE AND
DECLARATION OF TRANSCRIBER

I, RAMONA COTA, a duly designated transcriber, PETERS SHORTHAND REPORTING, do hereby declare and certify under penalty of perjury that I have transcribed tape(s) which total one in number and cover a total of pages numbered 1 - 68, and which recording was duly recorded at CORRECTIONAL TRAINING FACILITY, SOLEDAD, CALIFORNIA, in the matter of the SUBSEQUENT PAROLE CONSIDERATION HEARING of HECTOR HERNANDEZ, CDC NO. D-33689, on JUNE 8, 2006, and that the foregoing pages constitute a true, complete, and accurate transcription of the aforementioned tape to the best of my ability.

I hereby certify that I am a disinterested party in the above-mentioned matter and have no interest in the outcome of the hearing.

Dated July 3, 2006, at Sacramento County, California.

RAMONA COTA
TRANSCRIBER
PETERS SHORTHAND REPORTING