# EXHIBIT 13
# Part 4 of 6

COURT OF APPEAL-FIFTH APPELLATE DISTRICT

**FILED**

JAN 25 1988

KEVIN A. SWANSON - CLERK

by_____
　　　　　　　　DEPUTY

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

DOCKETED
- SACRAMENTO
No. SA86 DA0978
Date _____ By K.B

|                                   |   |                          |
|-----------------------------------|---|--------------------------|
| THE PEOPLE,                       | ) |                          |
|                                   | ) |                          |
| Plaintiff and Respondent,         | ) | F007304                  |
|                                   | ) |                          |
| v.                                | ) | (Super. Ct. No. 336275-3)|
|                                   | ) |                          |
| HECTOR HERNANDEZ,                 | ) | O P I N I O N            |
|                                   | ) |                          |
| Defendant and Appellant.          | ) |                          |

APPEAL from a judgment of the Superior Court of Fresno County. John Fitch, Judge.

Berman & Glenn and Mark D. Warshaw, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, J. Robert Jibson and Kate Killeen, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Defendant was charged with violation of Penal Code[1]/

section 187 (murder), and violation of section 211 (robbery).  It
was alleged he used a handgun during commission of the offenses
within the meaning of section 12022.5.  A special circumstance was
also alleged pursuant to section 190.2, subdivision (a)(17)(i)
(murder during commission of or in immediate flight after a
robbery or attempted robbery).  Defendant pled not guilty and
denied the special allegations.  A jury trial followed.

The jury found defendant guilty of second degree murder,
and found true the special allegation he used a firearm during the
commission of the crime.  However, defendant was found not guilty
of robbery.

Defendant was sentenced to 17 years to life: 15 years to
life for the murder plus 2 years for the firearm use enhancement.
He received appropriate credits.

## FACTS

The murder victim in this case was Sylvestre Bustos.
Paramedics pronounced him dead at his home on South Levit Street
in Fresno, in the early morning hours of August 15, 1985.  A
pathologist testified that, based upon the autopsy he performed on
the victim, the cause of death was a shotgun wound to the thoracic
aorta.  The wound was consistent with a shot from a sawed-off
shotgun, and the entry was to the upper left chest, with a
trajectory which was, from front to rear, 20 percent downward in
an individual who was standing upright.  The pathologist estimated

---

[1]/    All statutory references are to the Penal Code unless
otherwise indicated.

the gun was fired from a distance of approximately seven to eight feet, and that it was unlikely the victim was lying down when shot.

A deputy with the Fresno County Sheriff's Department, Scott Morrison, investigated the homicide. He discovered a window on the west side of the building was opened, and a cooler which had apparently been in the window had fallen over. The platform hiding the cooler was collapsed. He found no firearms in the house or on the victim's body, which was found face-down on the floor in a pool of blood.

Morrison did find, however, two shotgun rounds on the floor near the body. One was near the victim's knee, and the other was near his feet. The victim was by a couch. A box of .9 millimeter ammunition, typically used in a semiautomatic handgun, was found by the couch. He found the victim's car key in his pocket and, after going to the car, found $400 in cash under a floor mat.

Another deputy from the sheriff's department, Deputy Rascon, searched the victim's boots and found no heroin inside them, although some had apparently been there prior to the shooting. Rascon observed footprints near the body and followed them to the window where the cooler had been knocked down. There was blood in the area of the window. He then left the house and followed the footprints through two alleys and up to an intersection. The prints appeared to go in different directions at the intersection, which Rascon thought was consistent with someone pacing. Car tire tracks were near where the trail of footprints ended. The footprints Rascon found outside the residence matched the footprints he saw near the body.

3.

A number of people were in the residence at the time the shooting occurred: Dortheo Juarez; Eleno Santa Maria Mojica; and Enrique Casias. All three testified at trial about what they saw and heard on the evening of the shooting.

Juarez and Mojica were asleep on the floor in the kitchen when Jaurez was awakened by a knock on the door. As Casias went to open the door, defendant came in wielding a short-barrelled shotgun and exclaimed, "Give us the chivas." He then told everyone not to move, pointed the gun at Juarez and Casias, and told the victim to "Give him the gun." The victim, who had been sleeping on a couch in the living room, started to rise. He was wearing pants and had a gun under his belt. Juarez ran to the side of the room in order to hide, and noticed that by the time he left the room the victim was standing. He did not hear the victim say anything, and saw no struggle. After hearing the shot, Juarez ran from the house. According to Juarez, the victim was a drug dealer.

Mojica testified he, too, was asleep in the kitchen and was awakened by the sound of people arguing. He looked into the living room, only to see defendant pointing a weapon at him. Defendant told him not to move. He heard a shot, and ran into the bedroom. He did not see a gun on the victim.

Casias testified he had been given immunity from prosecution for testifying about the events which took place on August 15th. He lived with the victim, who was a drug dealer, and at times helped him sell drugs.

Casias was awakened when he heard a knock on the window. He went to the window, opened the curtain and looked out, and recognized defendant, who was standing outside. He opened the

window and defendant asked Casias if he would sell him drugs.
Casias agreed and defendant handed him $20 through the window.
Casias told defendant to wait at the window while he got the
drugs.  He went to retrieve the heroin, which was inside one of
the victim's boots next to the couch in the living room.

As Casias was bending over the victim's boots, the front
door flew open and defendant came in with a shotgun.  Defendant
demanded the victim give him his gun, which was under his belt.
Although there was no argument or fight, Casias heard a gun go
off.  He ran and hid in a side room with the others who were
present that evening.

In addition to the gun in the victim's belt, the
defendant demanded heroin.  At all times, Casias intended to
provide defendant with the heroin he requested.  The last time
Casias saw the victim, he was alive and standing near the couch
with defendant pointing the gun at him.  He did not see the victim
reach for his gun.  After defendant left, the three remaining
people in the house contacted the sheriff's office.

There was also testimony from Mary Lopez, who stated that
prior to the shooting, probably the Monday before, she heard
defendant and the victim arguing at the residence.  Defendant was
angry with the victim over the quantity of heroin the victim was
providing him.  The victim told the defendant to go to hell if he
did not like the amount he was receiving.

A number of individuals, including defendant, testified
for the defense.  Joseph Maldonado testified he had purchased
heroin from the victim in August, and that the victim came out of
his house and approached the car in which Maldonado was a

5.

passenger. The victim drew a gun and told Maldonado he did not want him smoking marijuana, which Maldonado was doing at the time, around his house. Maldonado testified he was a heroin addict who was in custody in the Fresno County Jail. He also testified that this was the only time he purchased heroin from the victim.

Mike Lopez testified he purchased heroin from the victim on several occasions. He also knew Maldonado. According to Lopez, the victim always carried a gun tucked in his pants, and had pulled the gun on him more than once, without provocation. The victim usually pulled the gun after he had been drinking, and the first time he did so he warned Lopez not to think about trying to rob him or rip him off. Lopez testified he personally was never armed and had never threatened the victim in any way.

Defendant testified he had purchased heroin from the victim on several occasions, and that he was addicted to the drug. In fact, he had used it earlier on the day of the shooting. Problems developed in his relationship with the victim because the victim began carrying a gun, and because defendant believed the quality of the heroin was poor or the quantity was less than the victim agreed to supply.

Defendant went to the victim's residence on August 15 with the intent of purchasing more heroin. He took a gun with him because he felt threatened by the victim and thought the victim would treat him differently knowing he was armed. He knocked on the door but received no reply. He then went to the window and spoke with Casias. A sale was negotiated and Casias left.

Afraid the victim or Casias was tampering with the heroin in order to shortchange him, defendant forced his way into the

6.

residence through the front door. He saw four or five people in the room, one of whom was the victim. He was lying on the couch and Casias was standing next to him. He demanded they "give [him] the chiva," at gunpoint. Defendant saw the victim handing Casias the heroin and intercepted it. He also demanded the victim give him the gun which was tucked in the victim's pants. He did so in order to disarm him. He had noticed the gun when he first entered the room.

Casias appeared to be backing away from the victim, and defendant told him not to move. Nevertheless, Casias continued to move. At this point, according to defendant, the victim "made his move" by simultaneously standing up and drawing his gun. Defendant actually believed the victim shot him prior to firing his own gun. After firing a shot at the victim, defendant picked up the victim's gun and fled from the house. He left through the window. Whoever had given him a ride to the victim's home was no longer in the area, so defendant walked to the home of an unidentified friend.

Defendant stated he threw the victim's gun into a river about two days later. The sawed-off shotgun was given to another unidentified friend, after the friend advised him the gun should be disposed of.

### DISCUSSION

I. DOYLE ERROR.

Defendant first finds error in the following exchange between the prosecutor and defendant while defendant was testifying:

prior to leaving the victim's home, and that he threw it in a river a few days later. This too was proof defendant attempted to suppress evidence. If the victim's gun had remained at the murder scene, it may have shown the victim never drew it from his belt, as defendant claimed. In addition, the jury would have had the benefit of knowing whether the gun was loaded at the time of the shooting, and if a shot had been fired from it by the victim (recalling defendant initially testified he believed he was shot at the time he pulled the trigger).

Finally, even assuming it was error to give the instruction, the error was not prejudicial. Defendant has failed to show it is reasonably probable the result would have been more favorable to him absent the error. (People v. Watson (1956) 46 Cal.2d 818, 836.)

The judgment is affirmed.

_____
                                        Acting P.J.

WE CONCUR:

_____
                            J.

_____
                            J.

# EXHIBIT "5"

LIFE PRISONER EVALUATION REPORT
SUBSEQUENT PAROLE CONSIDERATION
HEARING #5
FEBRUARY 2004 CALENDAR

# ADDENDUM

HERNANDEZ, HECTOR                                                    D33689

On March 23, 2004, I issued Inmate Hernandez a copy of his Board Report for his scheduled
Board of Prison Terms hearing scheduled for calendar February 2004.  Inmate Hernandez
indicated he disagreed with his board report in the following section(s)

**PRISONER's** Version, **AGGRAVATING/MITIGATING** Circumstances, **FUTURE PLANS,**
and  the **SUMMARY.**

Hernandez disagreed with the Prisoner's Version, which reads:

1.)     **Prisoner's Version:** "In order to make a statement that would give some clarity and
        resolution, I would practically have to answer the question of, "What is the meaning of
        Life and Death."  As difficult and at times overwhelming as this task is what I've
        endeavored to do.

        I could say my opponent (who became the victim) had been stealing from me and
        threatening my life, and the actual gun shot which took his life was fired in self-defense.
        All of which is true. Yet in order to reach a greater and healthier understanding, I would
        first have to admit responsibility, which is what I've done.  A few of the areas I've
        addressed (in order to gain a deeper understanding of the crime I committed) include my
        childhood, peer environment and spirituality.  Only after extensive self-examination in
        those areas have I reached, the conclusion that I needed a major adjustment in the way I
        relate to others, which entails developing a greater integrity for morals and ethics.  This is
        an ongoing process with continual room for improvement.  May it suffice self-
        examination in those areas have I reached to the conclusion that I needed a major
        adjustment in the way I relate to others, which entails developing a greater integrity for
        morals and ethics. This is an ongoing proves with continual room for improvement.  May
        is suffice to say that this journey of recovery and healing is something I'll be doing for
        the rest of my life."

that report, he stated the following: "In order to make a statement that would give some clarity and resolution, I would practically have to answer the question of, "What is the meaning of Life and Death!" As difficult and at times overwhelming as this task is, it is what I've endeavored to do.

I could say my opponent (who became the victim) had been stealing from me and threatening my life, and that the actual gun shot which took his life was fired in self-defense. All of which is true. Yet in order to reach a greater and healthier understanding, I would first have to admit responsibility, which is what I've done. A few of the areas I've addressed (in order to gain a deeper understanding of the crime I committed) include my childhood, peer environment and spirituality. Only after extensive self-examination in those areas have I reached the conclusion that I needed a major adjustment in the way I relate to others, which entails developing a greater integrity for morals and ethics. This is an ongoing process with continual room for improvement. May it suffice self-examination in those areas have I reached to the conclusion that I needed a major adjustment in the way I relate to others, which entails developing a greater integrity for morals and ethics. This is an ongoing process with continual room for improvement. May it suffice to say that this journey of recovery and healing is something I'll be doing for the rest of my life."

3.  **Aggravating/Mitigating Circumstances:**

    a.  **Aggravating Factors:**

        1.  The victim, was particularly vulnerable in that the prisoner entered the victim's home and shot him while he was lying on his couch and awakened by the prisoner.
        2.  The prisoner had a history of criminal behavior for which the term is not being enhanced under BPT Rule 2286.
        3.  The prisoner engaged in other reliably documented criminal conduct (attempted drug purchase) which was an integral part of the crime for which he is currently committed.
        4.  The inmate was on probation at the time the crime was committed.
        5.  During the commission of the crime, the prisoner had a clear opportunity to cease but instead continued.
        6.  The manner in which the crime was committed created a potential for serious injury to persons other than the victim of the crime.

    b.  **Mitigating Factors:**

1. The prisoner participated in the crime under partially excusable circumstances (heroin inebriation) that do not amount to a legal defense..

B.  **Multiple Crime(s)**: N/A.

    a.  **Summary of Crime**: N/A.

    b.  **Prisoner's Version**: N/A.

## II.  PRECONVICTION FACTORS:

A.  **Juvenile Record**:

7/31/70   Burglarized Doctor's Office in Fresno, Removed $80.00 cash Disposition: Placed on informal probation.

10/5/70   Burglary- Entered a residence, removed 9 different types of weapons, a Polaroid camera, and a radio. Disposition: Placed on probation without wardship until 5/23/71. Dismissed 5/19/71.

4/22/71   Burglary – "S" entered Mission Baptist Church and removed $10.50. Disposition: probation ordered; then released to parents.

9/23/71   Petty Theft "S" and accomplice stole $190.00 from Luallen's 76 Service Station. Disposition: Remain ward of the court, pay restitution, work program Sanger PD.

6/29/72   Burglary. Disposition: Commit to Youth Center; detain Juvenile Hall pending transfer.

7/18/72   Defendant and accomplice were found inside the closed business of Padillas Market. Disposition: Remain ward of Court on probation. Commit to Youth Center suspended.

B.  **Adult Convictions and Arrests**:

1/10/80   Carrying a concealed weapon, carrying a loaded weapon, receiving stolen property. Dispo: no disposition.

11/12/80   Burglary. Dispo: No dispo.

HERNANDEZ, HECTOR      D-33689          CTF-SOLEDAD          FEB/2004

11/14/80    Burglary. Dispo: No dispo.

10/6/81    Harboring a Federal Fugitive. Dispo: Convicted sentenced to 358 days in a Federal Correctional Institute.

8/25/82    Sell or Transport Marijuana, Burglary, Transport/Sell Controlled Substance. Dispo: All charges dismissed.

10/26/84    Under the Influence of Controlled Substance Obstruct/Resist Arrest. Dispo: No dispo.

C.    **Personal Factors:** Hernandez was born on 2/28/59 in Fresno, California to Guadalupe Hernandez and Dolores Mejia. The defendant was raised in Fresno County. He is one of eight children. His brother, Guadalupe Hernandez Jr. was also convicted of murder in an unrelated case. His brother is currently housed at California State Prison, Corcoran. Hernandez completed the tenth grade at Sanger High School in 1975 and passed his General Education Development (GED) test on 5/4/92. He also indicated he completed vocational training in welding at Valley Technical and Trade School in Fresno. Hernandez married Janice Ramirez on 10/3/82 in San Bernardino. Four children were born to this union. The four children range in age from 12 to 17 years of age. The marriage is no longer intact. His work history consists of agriculture related labor. He admitted being a daily user of heroin, using between twenty and forty dollars worth of heroin everyday. He also admitted to being a regular consumer of beer, as well as sniffing glue and paint, and using PCP, LSD and cocaine occasionally. While Hernandez was initially incarcerated in the county jail, he was prescribed Synaquat. Hernandez has not received any psychiatric treatment or medication since coming into the California Department of Corrections.

## III.    POSTCONVICTION FACTORS:

A.    **Special Programming /Accommodations:** None.

B.    **Custody History:** Hernandez was received at the California Medical Facility for his Initial Processing. He transferred and was received at Folsom – IV on 7/29/86. He was subsequently transferred and received at CTF on 10/7/03. On 10/14/86, he received his Initial Classification and was assigned Close B custody and released to the general population. He was assigned to the PIA Textile program as machine operator and earning satisfactory work grades. On 1/26/89, he transferred to CMC as a medical case and return awaiting medical treatment. Hernandez returned to CTF from CMC-East on 4/12/89. On 1/22/90, during Annual Program Review, his custody was reduced to Medium A. He was assigned to the CTF-Central Facility Boiler Room. He was unassigned on 9/3/91,

non-adversely from his Boiler Room assignment. He was reassigned to the Lunch Box Crew on 10/19/91. On 4/22/93, Hernandez transferred to North Kern State Prison under Medium A custody. He was assigned to the Vocational Mill and Cabinet and Teacher's Aide position. On 12/21/95, Hernandez was reassigned to a clerk's position. On 9/16/97, he was received at the CTF. He received his Initial Classification and custody was established at Medium A custody and he was released to the general population. While at CTF, Hernandez work assignments included Textiles, Vocational Graphics and Print. He completed the Vocational Graphic and Print Program per Instructor K. Eng. However, the document was not in the Central File for review. He transferred to East Dorm for housing and job placement. He was assigned to the Landscape and Painter's position on 4/11/03. However, there are no CDC 101 noting the prisoner's work performance during that period. Hernandez is currently assigned to the PIA Wood Furniture Factory (Assembler Shop). His Work Supervisor's record dated 7/1/03 reflect satisfactory work grades.

C.    **Therapy and Self-Help Activities:** Received a CDC 128-B dated 2/18/83 for his participation in NA. Hernandez was voted as Vice Chairman at this time. He received three (3) CDC 128-B's dated 2/18/03, 4/20/03 and 6/13/03 for his attendance in NA.

D.    **Disciplinary History:** None during this review period. However, Hernandez has a total of seven (7) CDC 115's and eleven (11) CDC 128-A's. [See attached Disciplinary Sheet]

E.    **Other:** On 2/20/03, Hernandez appeared before the Board of Prison Terms for his Subsequent Parole Consideration Hearing #4. The Board denied parole for (1) year and recommended that he remain disciplinary free and upgrade educationally (cell study) and participate in self-help and therapy programs.

## IV.    FUTURE PLANS:

A.    **Residence:** Hernandez plans to live with his mother Lolita Hernandez, located at 842 Edgar Street, Sanger, California 93657. Telephone #: (559) 875-3482. There are letters of support from his mother, who will provide a place of residence. She will also provide assistance with food and clothing plus transportation. See support letters in the Miscellaneous section of the Central File.

B.    **Employment:** He indicates that his main desire is to work as a counselor in recovery with youth/drug offenders and violence intervention. Hernandez did not offer any letters of interest from potential employers indicating job offers at this time.



---

    C.    **Assessment:** Parole plans have been reviewed and discussed with Hernandez. He has a family support who will provide him a place to live. However, he did not submit any potential job offers from employers in the county where he plans to parole. His parole plans do not appear solid at this time.

V.    <u>USINS STATUS:</u> N/A.

VI.    <u>SUMMARY:</u>

    A.    Considering the commitment offense, prior record and prison adjustment, this writer believes that the prisoner would probably pose a low degree of threat to the public at this time, if released from prison. This assessment of dangerousness is based on the prisoner's free disciplinary history for ten years, while in a controlled setting. However, his disciplinary history reflects seven CDC 115's and eleven counseling chronos. During this review period, Hernandez completed the Vocational Graphic Arts and Printing Program, according to his Instructor K. Eng. However, the certificate or document is not in the Central File for review at the present time. The prisoner was assigned to the East Dorm landscape/paint position on 4/11/03 to 5/17/03. There are no work supervisor reports noting his work performance. He was reassigned to the PIA Wood Furniture Factory as an assembler and earned satisfactory grades. He participated in three hours of video instruction and discussion of issues related to successfully re-engaging into society per a CDC 128-B dated 11/7/03. He participated in NA meetings per CDC 128-B dated 2/18/03 and during this time was voted as inmate vice-president or chairperson; attended meetings per CDC 128-B's dated 4/2/03, and 6/13/03. However, there are no documents that reflect any credited educational upgrading experience (cell study) as recommended by the Board, and no indication of psychiatric treatment this period. The prisoner's parole plans were discussed. He indicates that he has full support for his mother who would provide financial assistance and a place to live. However, he did not submit any potential job offers from employers in a county where he plans to parole. In discussing the life crime, the prisoner states that he feels bad about the victim and what he has done. He states not only that he killed the victim, he also killed the victim's family and the hope of his children. He indicates that he can't give the victim's life back and tries to find forgiveness within himself. The prisoner indicates involvement with his religious studies have helped him to understand and learned the wisdom of making good sound decisions by abstaining from drugs and alcohol. He indicates that he wants to give to others what he has learned about drugs, alcohol abuse and prevent them of falling into the same "pit lifestyle of drugs and alcohol". He states that he grew up in a rough community, which played a substantial role in leading to the crime. He states that he has paid his debt to society. He indicates that he is determined to live a lifestyle of sobriety



and spiritual peace. He finally states, that he is committed to avoid drugs and alcohol and any negative influences that would impede his freedom again.

B.   Prior to release, the prisoner could benefit from by remaining disciplinary free and upgrade educationally (cell study) and participate in self-help and therapy programs.

C.   This report is based upon an interview with the prisoner on 12/3/03 lasting approximately (1) hour and a complete review of the Central File lasting (3) hours.

D.   Prisoner was afforded an opportunity to review his Central File, per the Olson Decision, on 12/3/03.

E.   No accommodation was required per the Armstrong vs. Davis BPT Parole Proceedings Remedial Plan for effective communication.

BOARD OF PRISON TERMS                                                                          STATE OF CALIFORNIA
LIFE PRISONER: POSTCONVICTION PROGRESS REPORT

☐ DOCUMENTATION HEARING

☒ PAROLE CONSIDERATION HEARING

☐ PROGRESS HEARING

INSTRUCTIONS
    TO CDC STAFF: DOCUMENT EACH 12-MONTH PERIOD FROM THE DATE THE LIFE TERM STARTS TO PRESENT
    TO BPT STAFF: FOR EACH 12-MONTH INCREMENT APPLY THE GUIDELINES UNDER WHICH THE PAROLE DATE WAS ORIGINALLY
        ESTABLISHED, ie., 0-2 MONTHS FOR PBR AND 0-4 MONTHS FOR BPT. SEE BPT §§2290 - 2292, 2410 AND 2439.

| STCONVICTION CREDIT | | | |
|---|---|---|---|
| YEAR | BPT | PBR | REASONS |
| 1/29/03 to 12/15/03 (Present) | | | **PLACEMENT:** Remained at the Correctional Training Facility (CTF) and housed in the general population. 'S' transferred to the CTF East Dorm on 4/1/03. **CUSTODY:** Medium A. **VOC. TRAINING:** Assigned to the Vocational Graphic Arts and Printing program. 'S' completed the program per Instructor K. Eng during the month of April 2003, however, the certificate or document is not in the Central File noting completion of the course. **ACADEMICS:** None during this review period. **WORK RECORD:** Assigned to the East Dorm Landscape/Painter position on 4/11/03 to 5/17/03. However, there are no CDC 101's in the Central File noting 'S' work performance. On 5/17/03, 'S' was assigned to the PIA Wood Furniture Factory as a finisher. He was reassigned on 6/11/03 to the Assembly shop. He earned satisfactory work grades per a CDC 101 dated 7/1/03. He received additional training per a CDC 128B dated 5/17/03, on CAL/OSHA Hazardous Communication Standard, "Right to Know", and received additional training which included Safe Handling and Disposal of Hazardous Materials and Waste. 'S' received five (5) CDC 128-B's Training Certification chrono's on the proper operation and safety procedures of the Air, Eyes and Sound equipment, MSD (Material Safety Data) "Right to Know" information, Back and General Safety and Lockout/Tagout equipment. He received six (6) additional CDC 128-B's Training Certification chrono's dated 7/8/03 on the proper operation and safety procedures of the Abrasive Edge Sander equipment, Ladders, Portable Power and Hand Tools, Fire Safety and Portable Hand Router equipment. Participated in a three (3) hours of Video Instruction and Discussion of issues related to successfully re-engaging into society per a CDC 128-B dated 11/7/03. **GROUP ACTIVITIES:** Received a CDC 128-B dated 2/18/03 for his participation in NA. 'S' was voted as Vice Chairman at this time. He received three (3) CDC 128-B's dated 2/18/03, 4/2/03 and 6/13/03 for his attendance in NA. **PSYCH. TREATMENT:** None during this period. **PRISON BEHAVIOR:** None during this period. **OTHER:** N/A. |

| CORRECTIONAL COUNSELOR'S SIGNATURE | | DATE |
|---|---|---|
| *H S Anton* | | *3/4/04* |
| HERNANDEZ, HECTOR     D-33689     CTF-SOLEDAD | | FEB/2004 |

## DISCIPLINARY SHEET

### CDC 128A's:

| 6/14/88 | CTF | Absence for Job. |
|---------|-----|------------------|

6/14/88     CTF     Absence for Job.

11/6/88     CTF     Out of Bounds.

1/17/89     CTF     Excessive Contact with Visitor.

9/29/89     CTF     Unauthorized Possession.

3/5/90      CTF     Destruction of State Property.

3/26/90     CTF     Unauthorized Absence

4/14/92     CTF     Unauthorized Absence.

6/18/92     CTF     Stealing State Property.

6/20/92     CTF     Stealing State Property.

3/25/94     CTF     Excessive Contact with Visitor.

6/17/00     CTF     Disregarding Yard Call Procedures.

### CDC 115's:

11/18/90    CTF     3004    Disrespect Towards Staff. Guilty: Counseled.

12/18/91    CTF     3006    Possession of Utility Knife Blade (Dangerous Contraband). Guilty: 30 days LOC.

12/18/91    CTF     3016    Possession of Inmate Manufactured Alcohol. Guilty: 90 days LOC.

9/2/92      CTF     3053    Stealing State Food. Guilty: 20 Hours Extra Duty.

9/10/92     CTF     3191B   Out of Possession of Non-Expandable Personal Property. Guilty: 40 Hours Extra Duty.

10/10/92    CTF     3053    Misuse (Stealing) State Food. Guilty: 20 Hours Duty.

2/10/99     CTF     3062    Hair Exceeding 3 Inches in Length. Guilty: 20 Hours Extra Duty.

HERNANDEZ, HECTOR       D-33689                CTF-SOLEDAD              FEB/2004

LIFE PRISONER EVALUATION REPORT
SUBSEQUENT PAROLE CONSIDERATION HEARING
FEBRUARY 2004 CALENDAR

_____    3-4-04
H. Staten                           Date
Correctional Counselor I


_____    3/10/04
W. Stewart                          Date
Correctional Counselor II


_____    3/10/04
J. L. Clancy                        Date
Facility Captain


_____    3-11-04
D.S. Levorse                        Date
Classification and Parole Representative


HERNANDEZ, HECTOR          D33689          CTF-SOLEDAD
BPT 1004 (REV 7/86)

BOARD OF PRISON TERMS                                                      STATE OF CALIFORNIA

## LIFE PRISONER: POSTCONVICTION PROGRESS REPORT

☐ DOCUMENTATION HEARING

☒ PAROLE CONSIDERATION HEARING       *C-file copy*        **ADDENDUM**

☐ PROGRESS HEARING

INSTRUCTIONS
    TO CDC STAFF:  DOCUMENT EACH 12-MONTH PERIOD FROM THE DATE THE LIFE TERM STARTS TO PRESENT
    TO BPT STAFF:  FOR EACH 12-MONTH INCREMENT APPLY THE GUIDELINES UNDER WHICH THE PAROLE DATE WAS ORIGINALLY
        ESTABLISHED, ie., 0-2 MONTHS FOR PBR AND 0-4 MONTHS FOR BPT. SEE BPT §§2290 - 2292, 2410 AND 2439.

| POSTCONVICTION CREDIT | | | REASONS |
|---|---|---|---|
| YEAR | BPT | PBR | |
| 4/8/05 to 5/4/06 (Present) | | | **PLACEMENT:**  CTF II and housed in the general population. **CUSTODY:**  Medium A. **VOC. TRAINING:**  None noted during this review period. **ACADEMICS:**  None noted during this review period. **WORK RECORD:**  PIA Wood Furniture Factory Assembly Shop.  He earned satisfactory to above average work grades per his work supervisor's reports (CDC 101's) dated 6/1/05 and 9/1/05.  He received a 128B dated 12/9/05 for participating in two (2) hours of video instruction and discussion related to community re-entry.  This program is provided through the PIA Inmate Employability Program. **GROUP ACTIVITIES:**  He participated in Narcotics Anonymous group meetings per 128Bs dated 6/28/05, 1/21/05, 1/6/06, and 4/3/06.  He attended Narcotics Anonymous meetings and completed 10 weeks of Hepatitis "C" group meetings with staff psychologist C. Brown Ph.D., per 128-C dated 8/25/05. Hernandez received a letter of accommodation from the Buddahist Meditation and Ethical Practices dated 6/6/05. **PSYCH. TREATMENT:**  None noted during this review period. **PRISON BEHAVIOR:**  None noted during this review period. **OTHER:**  On 4/20/06, Inmate Hernandez was given the opportunity to review his Central File pursuant to the Olson Decision per 128B. |

| CORRECTIONAL COUNSELOR'S SIGNATURE | DATE |
|---|---|
| *Jopter ACC1* | 5-17-06 |
| HERNANDEZ       D33689          CTF-SOLEDAD | |

Sent to inmate on 5-25-06

LIFE PRISONER: POSTCONVICTION PROGRESS REPORT                    **ADDENDUM**

_____     5-17-06
H. Staten                             Date
Correctional Counselor I


_____     5-22-06
R. Leach                              Date
Correctional Counselor II


_____     5-22-06
R. Pope                               Date
Facility Captain


_____     5-23-06
D.S. Levorse                          Date
Classification and Parole Representative


HERNANDEZ              D33689              CTF-SOLEDAD


BPT 1004 (REV 7/86)

# EXHIBIT   "6"

MENTAL HEALTH EVALUATION FOR
THE BOARD OF PRISON HEARINGS
June, 2006 Lifer Calendar

CORRECTIONAL TRAINING FACILITY SOLEDAD
MAY, 2006

C-file copy

| | |
|---|---|
| **NAME:** | **HERNANDEZ, HECTOR** |
| **CDC#:** | **D-33689** |
| **DOB:** | **2/28/59** |
| **OFFENSE:** | **PC 187 MURDER, SECOND DEGREE** |
| **DATE OF OFFENSE:** | **8/15/85** |
| **SENTENCE:** | **17 YEARS TO LIFE** |
| **MEPD:** | **4/21/97** |
| **EVALUATION DATE:** | **5/20/06** |

## I.    IDENTIFYING INFORMATION:

Mr. Hector Hernandez is a 47 year old, first term, separated, Hispanic male from
Fresno County.  He is a Christian.  He has served 20 years in custody on this
offense.

## SOURCES OF INFORMATION:

This evaluation is based upon a single 90 minute interview, plus review of the
central and medical files.

The psychological evaluation, dated 7/1/99, by Dr. Reed, Psychologist, at CTF-
Soledad, contains a Psychosocial Assessment.  This information was reviewed
with the inmate and is still current and valid.  As a result, this information will not
be repeated at this time.

HERNANDEZ, HECTOR
D-33689
5/20/06
PAGE 2

## CLINICAL ASSESSMENT

### XII.    CURRENT MENTAL STATUS/TREATMENT NEEDS

Mr. Hernandez related during the interview in a serious, thoughtful, open and cooperative manner. There was no evidence of any defensiveness or hostility. His mental status was within normal limits. He was alert and well oriented. His thinking was rational, logical and coherent. His speech was normal, fluent and goal oriented. His affect was appropriate. There was no evidence of anxiety or depression. His eye contact was good. Intellectually, he is functioning in the average ranges. His memory was intact. His judgment was intact. His insight and self-awareness was excellent. He has spent a great deal of time in introspection and analysis of his life.

Mr. Hernandez has been certified in Vocational Mill and Cabinet. He continues to work in PIA Furniture Factory, where he is improving his skills in wood working. He is also accomplished in furniture making. He continues to attend Alcoholics Anonymous on a regular basis. He has been attending Alcoholics Anonymous continuously for 15 years. He acknowledges that he had a serious heroin addiction prior to the commitment offense. This drug addiction was related to the commitment offense in that the victim was a drug dealer. He stated that he has been clean and sober for 11 years. He has made a vow to his family that he will not relapse or go back into heroin use. He is very aware of the destructive effects of drug abuse. He is also suffering from Hepatitis C, due to his years of drug use. He is very aware that any use of alcohol or drugs would seriously impair his health. At this point in his life, this is no longer a serious problem.

### CURRENT DIAGNOSTIC IMPRESSION

| | |
|---|---|
| Axis I: | No mental disorder |
| Axis II: | No personality disorder |
| Axis III: | Hepatitis C |
| Axis IV: | Life term incarceration |
| Axis V: | Current GAF: 90 |

### XIII.    REVIEW OF LIFE CRIME

Mr. Hernandez accepts full responsibility for the death of the victim and his actions during the commitment offense. He described his life at that time as being

HERNANDEZ, HECTOR
D-33689
5/20/06
PAGE 3

out of control and spiritually and morally bankrupt. He had just purchased some heroin from the drug dealer who refused to give him the drug. The victim had a history of taking his money without delivering the product. He stated that the victim was lying on the couch, but he was not asleep. The victim had a gun which he drew and shot. At that point, Mr. Hernandez said that he shot the victim.

Mr. Hernandez has spent a great deal of time thinking about his life, trying to understand life in general, and developing religious and spiritual depth. He fully acknowledged his own sinfulness and wrongfulness in the commitment offense. He fully understands the wrongfulness of his lifestyle at that time and his behavior at that time. He did express feelings of sorrow and remorse at the victim's death, as well as the victim's family's loss by suffering and grief. He has participated in the Impact Program which explores the victim's family's grief and losses at length. He stated that he wants to atone for this offense any way that he can. He stated that the only way that he can atone for it, other than apologizing to the family, is to try to do good to others who are suffering that he meets along the way through life. He spoke about trying to lay down his life for another's sake and to learn to die to oneself and one's own selfish motives in order to be able to reach out and help others in any way that he can. He seems to be very sincere in these statements. It is apparent that this man has gone through some serious self-exploration and serious life changes. His feelings appear to be quite sincere and genuine. He seems to be trying to lead a good, productive, helpful to others life.

## XIV.  ASSESSMENT OF DANGEROUSNESS

A. In considering potential for dangerous behavior in the institution, I agree with the prior evaluator that stated that his potential for dangerous behavior is below average in comparison to other inmates. He has never received any disciplinaries for aggressive, violent or dangerous behavior or acting out. He stated that in 1991, he underwent serious life changes, and since that time he has been trying to live a law abiding life.

B. In considering potential for dangerous behavior when released to the community, the Level of Service Inventory-Revised was administered. This is an actuarial measure that assesses criminal history, disciplinary history, substance abuse problems, current attitude and other factors to determine current risk level on parole. He obtained a score of 4.2 cumulative frequency for prison inmates. This score means that if 100 men were released on parole, he would be expected to do better on parole than 95.8 of them. I agree with the prior evaluator that stated that he did

HERNANDEZ, HECTOR
D-33689
5/20/06
PAGE 4

not pose any more risk to the community at this time in his life than the average citizen. In fact, he probably poses less risk, due to his growth, maturity and improvement.

C. At this point in time, there are no significant risk factors in this case.

## XV.  CLINICIAN OBSERVATIONS/COMMENTS/RECOMMENDATIONS

There are no mental or emotional problems in this case that would interfere with routine release planning. This man has excellent wood working skills. He will be able to obtain employment immediately in the community. He also has considerable family support in the community. He plans on living with his parents when he is released. This man's level of insight and self-understanding is impressive. He obviously has undergone significant mental, spiritual and emotional changes over the years of his incarceration. The prognosis for successful adjustment in the community is excellent.

M. Macomber, Ph.D.
Correctional Psychologist
Correctional Training Facility, Soledad

B. Zika, Ph.D.
Senior Psychologist
Correctional Training Facility, Soledad

D:    5/20/06
T:    5/21/06

# EXHIBIT   "7"

PSYCHOLOGICAL EVALUATION FOR THE BOARD OF PRISON TERMS
PAROLE CONSIDERATION HEARING
JULY 1999 LIFER CALENDAR

CORRECTIONAL TRAINING FACILITY, SOLEDAD
JUNE 14, 1999

This is a psychological evaluation for the Board of Prison
Terms on inmate Hector Hernandez.  This report is based upon
a personal clinical interview of the inmate, conducted on
06/14/99, as well as a review of his Central file and unit
health record.  This clinical interview and a review of all
pertinent documents were for the express purpose of
preparing this report.

I.    <u>IDENTIFYING INFORMATION</u>:

      Inmate Hernandez is a 40-year-old, separated, Hispanic
      male who was born on 02/28/59.  He has no stated
      religious preference, but does believe in God.  He has
      no obvious unusual physical characteristics and he
      denied having any nicknames or aliases.

II.   <u>DEVELOPMENTAL HISTORY</u>:

      Inmate Hernandez denied any history of birth defects or
      developmental problems, a history of cruelty to animals
      or arson, or any significant childhood medical
      illnesses.  He also denied a history of physical or
      sexual abuse as either a perpetrator or a victim.

III.  <u>EDUCATIONAL HISTORY</u>:

      Inmate Hernandez attended public school and completed
      the tenth grade.  He ultimately received his GED in
      1992 at CTF.  In 1999, his measured grade level
      (T.A.B.E.) was 12.9.  He denied any history of special
      education or academic or behavioral problems in school.
      His current educational activities include adult
      education classes involving writing and poetry.

IV.   <u>FAMILY HISTORY</u>:

      Inmate Hernandez stated that he has one brother who is
      currently incarcerated in the California Department of
      Corrections.  He has one sister and one brother who
      have substance abuse histories.  He has maintained good
      relationships with all of his family members.

HERNANDEZ, HECTOR
CDC NUMBER:  D-33689
BPT PSYCHOLOGICAL EVALUATION
PAGE TWO


V.   <u>PSYCHOSEXUAL DEVELOPMENT AND SEXUAL ORIENTATION</u>:

     This inmate is a heterosexual male.  He denied any
     history of high-risk sexual behavior or sexually
     aggressive behavior.

VI.  <u>MARITAL HISTORY</u>:

     Inmate Hernandez has been married only one time.  He
     and his wife separated due to incarceration-related
     problems.  He has four children, ranging in ages from
     13 to 18.  His current relationships with his wife and
     children are good, but distant.

VII. <u>MILITARY HISTORY</u>:

     Inmate Hernandez denied any history of military
     service.

VIII.<u>EMPLOYMENT AND INCOME HISTORY</u>:

     Before his current incarceration, inmate Hernandez did
     factory work, landscaping and welding.  While
     incarcerated, he became certified in mill and cabinet
     making.  His current interests include cabinet making.

IX.  <u>SUBSTANCE ABUSE HISTORY</u>:

     Inmate Hernandez acknowledged having a substance abuse
     history involving heroin dependence.  He has attended
     Alcoholics Anonymous since 1995.  He demonstrated good
     understanding of three of the 12 steps incorporated in
     the AA doctrine.

X.   <u>PSYCHIATRIC AND MEDICAL HISTORY</u>:

     Inmate Hernandez has prior psychiatric diagnoses of
     polysubstance abuse, opioid dependence and antisocial
     personality disorder.  He denied any history of medical
     or psychiatric hospitalizations, a history of serious
     accidents or head injuries, a history of suicidal or
     homicidal assaultive behavior (excluding the committing
     offense), or a history of seizures or other
     neurological conditions.  He denied any significant
     disabilities, impairments or illnesses.  He is not
     currently taking any medication.

HERNANDEZ, HECTOR
CDC NUMBER:  D-33689
BPT PSYCHOLOGICAL EVALUATION
PAGE THREE


XI.  **PLANS IF GRANTED RELEASE**:

If granted parole, he plans to live in Fresno County
with his parents, who have agreed to this arrangement.
His financial and vocational plans include furthering
his education, writing, cabinet making, welding and
landscaping.  He has sponsors who have promised to aid
him in getting employment and counseling.  His
prognosis for successful community living is very good.

## CLINICAL ASSESSMENT

XII.  CURRENT MENTAL STATUS/TREATMENT NEEDS:

During the clinical interview, inmate Hernandez was
alert and oriented to person, place and time.  He was
well dressed and groomed.  His speech was articulate
and context·ally meaningful.  His mood and affect were
              ⅟ limits and his behavior was appropriate
              ng.  No evidence of a mood or thought
              demonstrated.  His estimated level of
              functioning was within the average range.

'OSTIC IMPRESSIONS:

           ioid Dependence, in sustained full
           remission in a controlled environment.
AXIS II:   Antisocial Personality Disorder, improving.
AXIS III:  No Contributory Physical Disorder.
AXIS IV:   Incarceration.
AXIS V:    GAF = 90.

In addition to attending Narcotics Anonymous, inmate
Hernandez has also participated in several self-help
programs.  He has attended Religious Science of Mind
programs.  He has also attended the Native American
Spiritual Traditions programs.  He has also attended
the Unitarian Universal Endeavors programs.

His current level of insight and judgment in general
and specifically regarding his commitment offense are
good and supports a positive prediction of successful
adaptation to community living. 

HERNANDEZ, HECTOR
CDC NUMBER:  D-33689
BPT PSYCHOLOGICAL EVALUATION
PAGE FOUR

XIII. REVIEW OF LIFE CRIME:

Inmate Hernandez descril                        s
surrounding his commitme                        epts full
responsibility for the (                   He stated
that he was under the i                 nd that he
was morally and spiritua___, _____,. . ___ver, in
mitigation, he stated that the victim shot first and
that he was acting in self-defense.  He stated that
growing up in a rough community played a substantial
role in leading to the crime.  He demonstrated limited
empathy for the victim, whom he related to as a drug
dealer, and somewhat more empathy for the victim's
family.  He did appear to be genuinely penitent for his
crimes.

XIV.  ASSESSMENT OF DANGEROUSNESS:

A.  His violence potential within a controlled setting
    is considered to be below average relative to this
    Level II inmate population.  He received six CDC-
    1]                         d of 1990 to 1992, and he also
    re                         in 1999 for unacceptable hair
    le                         ived 13 CDC-128s.  However, he
    ha                         disciplinary free since 1994.

B.  Ii                        mmunity, his violence
    po                        ed to be no more than the
    av                        e community.

C.  Heroin abuse does present a significant risk factor
    which may be precursor to violence for this
    individual.

XV.  CLINICIAN OBSERVATIONS/COMMENTS/RECOMMENDATIONS:

1)  This inmate is competent and responsible for his
    behavior.  He has the capacity to abide by
    institutional standards and has largely done so
    during much of his incarceration period.

2)  This inmate does not have a mental disorder which
    would necessitate treatment either during his
    incarceration period or upon parole.

HERNANDEZ, HECTOR
CDC NUMBER:  D-33689
      PSYCHOLOGICAL EVALUATION


This inmate does appear to have a heroin abuse
problem and continued participation in Narcotics
Anonymous during his incarceration and as a
contingency of parole is suggested.


*Joe Reed*

JOE REED, Ph.D., J.D.
Staff Psychologist
Correctional Training Facility, Soledad


*Bruce Bakeman, Ph.D.*

BRUCE M. BAKEMAN, Ph.D.
Senior Psychologist
Correctional Training Facility, Soledad

JR/gj

d:  06/16/99
t:  07/01/99

# EXHIBIT    "8"

LIFE PRISONER EVALUATION REPORT
SUBSEQUENT PAROLE CONSIDERATION HEARING
JANUARY 2003 CALENDAR

HERNANDEZ, HECTOR                                                    D33689

I.    **COMMITMENT FACTORS**:

  A.    **Life Crime**:  All relevant documents from the previous hearings have been considered, and that information appears valid.  The writer has no further information to add.

  B.    **Prisoner's Version**:  In an interview for this report, Inmate Hernandez indicated that his version remains the same as stated in the previous hearings.

  C.    **Aggravating and Mitigating Circumstances**:  Remain the same as stated in the previous hearing.

II.   **PRECONVICTION FACTORS**:  Documents from the previous hearings have been considered, and that information appears valid.  The writer has no further information to add.

III.  **POSTCONVICTION FACTORS**:  Documents from the previous hearings have been considered, and the information remains valid.  During the period of time since the last hearing, the prisoner's behavior has remained the same, in that he has continued to remain disciplinary free, maintained his record of participation in the NA group and has remained enrolled in the Vocational Offset Press/Graphic Arts program.  See Postconviction Progress Report for details.

IV.   **FUTURE PLANS**:  Remain the same as indicated in the previous Board Report.

V.    **SUMMARY**:

  A.    Considering the commitment offense, prior record and prison adjustment, this writer believes that the prisoner would probably continue to pose a low degree of threat to the public at this time, if released from prison.

  B.    Prior to release, the prisoner could benefit from completing his vocational education program, continuing his participation in NA group and remaining disciplinary free.

  C.    This Board Report is based upon a one-hour interview, a thorough review of the Central File, and 19 months incidental contact in the housing unit.  Inmate

HERNANDEZ, HECTOR       D33689              CTF-Soledad              JAN/2003

Hernandez was afforded an opportunity to review his Central File, per the Olson Decision, on 1/28/03.

D.    No accommodation for the purposes of effective communication was required per the Armstrong Remedial Plan.

_____     1/29/03
G. Peabody                          Date
Correctional Counselor I


_____     1/29/03
C. Plymesser                        Date
Correctional Counselor II


_____     1/29/03
L. Trexler                          Date
Facility Captain


_____     1.25.03
D.S. Levorse,  COPR                 Date
Classification and Parole Representative


HERNANDEZ, HECTOR      D33689                CTF              JAN/2003

BOARD OF PRISON TERMS                                                                  STATE OF CALIFORNIA

## LIFE PRISONER: POSTCONVICTION PROGRESS REPORT

---

☐ ~~DOCUMENTATION HEARING~~

☒ PAROLE CONSIDERATION HEARING

☐ PROGRESS HEARING                    **(Life term began 12/22/86)**

---

INSTRUCTIONS
   TO CDC STAFF:  DOCUMENT EACH 12-MONTH PERIOD FROM THE DATE THE LIFE TERM STARTS TO PRESENT
   TO BPT STAFF:  FOR EACH 12-MONTH INCREMENT APPLY THE GUIDELINES UNDER WHICH THE PAROLE DATE WAS ORIGINALLY
        ESTABLISHED, ie., 0-2  MONTHS FOR PBR AND 0-4 MONTHS FOR BPT. SEE BPT §§2290 - 2292, 2410 AND 2439.

| POSTCONVICTION CREDIT | | | REASONS |
|---|---|---|---|
| YEAR | BPT | PBR | |
| 12/01 to 12/02 | | | **PLACEMENT:**  CTF Central. <br> **CUSTODY:**  Medium A. <br> **VOCATION:**  Assigned as a student in the Vocational Print Program with satisfactory assessments and positive ratings on CDC 128-E chronos dated 12/31/01, 3/31/02, 6/30/02 and 9/30/02. <br> **ACADEMIC:**  None during this period. <br> **WORK:**  See VOCATION, above. <br> **GROUP ACTIVITIES:**  Participated in the CTF NA group per CDC 128-B chronos dated 12/26/01, 1/17/02, 4/1/02 (two separate chronos have that date), 6/26/02, 7/24/02 and 10/02/02. <br> **PSYCH TREATMENT:**  None during this period. <br> **PRISON BEHAVIOR:**  Remained disciplinary free during this period. <br> **OTHER:** TB Alert Code 22 dated 5/6/02. |

CORRECTIONAL COUNSELOR'S SIGNATURE                                    DATE  1/29/03

HERNANDEZ, HECTOR          D33689                    CTF-SOLEDAD          JAN/2003

BOARD OF PRISON TERMS                                                                                STATE OF CALIFORNIA

CONTINUATION SHEET: LIFE PRISONER : POSTCONVICTION PROGRESS REPORT

| POSTCONVICTION CREDIT | | | REASONS |
|---|---|---|---|
| YEAR | BPT | PBR | |
| 12/02 to Present (1/28/03) | | | **PLACEMENT**: CTF Central.<br>**CUSTODY**: Med A.<br>**VOCATION**: Assigned as a student in the Vocational Print Program during this period.<br>**ACADEMIC**: None during this period.<br>**WORK**: See VOCATION, above.<br>**GROUP ACTIVITIES**: Participated in the CTF NA group, although there are no CDC 128-B chronos in the file for this period.<br>**PSYCH TREATMENT**: None during this period.<br>**PRISON BEHAVIOR**: Remained disciplinary free during this period.<br>**OTHER**: None. |

ORDER:
☐ BPT date advanced by _____ months.   ☐ BPT date affirmed without change.
☐ PBR date advanced by _____ months.   ☐ PBR date affirmed without change.

SPECIAL CONDITIONS OF PAROLE:
☐ Previously imposed conditions affirmed.
☐ Add or modify

☐ Schedule for Progress Hearing on appropriate institutional calendar

HERNANDEZ, HECTOR       D33689              CTF-SOLEDAD              JAN/2003

BOARD OF PRISON TERMS                                                                                STATE OF CALIFORNIA

# EXHIBIT "9"

L ● PRISONER EVALUATION R●P
SUBSEQUENT PAROLE CONSIDERATION HEARING #3
DECEMBER 2001 CALENDAR

HERNANDEZ, HECTOR                                           D33689


## I.  COMMITMENT FACTORS:

**A.**  **Life Crime:** All relevant documents from the previous hearings have been considered, and that  information appears valid.  The writer has no further information to add.

**B.**  **Prisoner's Version:** In an interview for this report, Inmate Hernandez indicated that his version remains the same as stated in the previous hearings.  In addition, he submitted the following to amplify on his earlier statements:

In order to make a statement that would give some clarity and resolution, I would practically have to answer the question of "What is the meaning of Life and Death!"  As difficult and at times overwhelming as this task is, it is what I've endeavored to do.

I could say my opponent (who became the victim) had been stealing from me and threatening my life, and that the actual gun shot which took his life was fired in self defense.  All of which is true.  Yet in order to reach a greater and healthier understanding, I would first have to admit responsibility, which is what I've done.  A few of the areas I've addressed (in order to gain a deeper understanding of the crime I committed) include my childhood, peer environment and spirituality.  Only after extensive self-examination in those areas have I reached the conclusion that I needed a major adjustment in the way I relate to others, which entails developing a greater integrity for morals and ethics.  This is an ongoing process with continual room for improvement.  May it suffice to say that this journey of recovery and healing is something I'll be doing for the rest of my life.

**C.**  **Aggravating and Mitigating Circumstances:**

**1.**  The following factors in aggravation were noted per DOM Section 62090.11.2.1.1:

- The victim, who was asleep on his couch at the time of the crime, was particularly vulnerable.

- The inmate had a history of criminal behavior for which the term is not being enhanced under BPT Rule 2286.

- The inmate engaged in other reliably documented criminal conduct (attempted drug purchase) which was an integral part of the crime for which he is currently committed.

- The inmate was on probation at the time the crime was committed.

**2.**  The following factor in mitigation was noted per DOM Section 62090.11.2.1.2:

• The inmate participated in the crime under partially excusable circumstances (heroin inebriation) that do not amount to a legal defense.

II.    **PRECONVICTION FACTORS:** Documents from the previous hearings have been considered, and that information appears valid. The writer has no further information to add.

III.   **POSTCONVICTION FACTORS:** Documents from the previous hearings have been considered, and the information remains valid. During the period of time since the last hearing, the prisoner's behavior has improved, in that he has remained disciplinary free, participated in self-help programming (specifically, a 13-week IMPACT workshop and two years of activity in the CTF-Central Narcotics Anonymous group) and continued his enrollment in the Vocational Offset Press/Graphics Arts program, moving from the prep side to the press side on 12/23/00. See Postconviction Progress Report for details.

IV.    **FUTURE PLANS:** Remain the same as indicated in the previous Board Report. In an interview for this report, Hernandez stated that he would also like to explore the possibility of participating in the Delancey Street residential drug program after parole. As with his version of the commitment offense, he has submitted the following statement that he would like to have included with his future plans:

My original plans were to go back into the community and participate in a worthy cause where I could give back to society. There was a time when "Habitat for Humanity" was the place where I really wanted to be of service. And I would be more than happy to be of service at a place where I was needed and would get a sense of doing something really worthy that would also include the ways and means to provide for my basic necessities.

Otherwise, because of all the time I have done, my main plans (and hopes) are to return to my parents' home. There I would be provided with housing and basic necessities until I found a job and the means to provide for myself. While living with my folks (and helping them, as they are now elderly), I would continue my personal journey into greater spiritual awareness. This would include the "12 Step Program" and various spiritual endeavors since spirituality is a great part of my life.

As an alternative, there is a religious rehabilitation center where I would have constant guidance and supervision. Because I have had prior experience in such a living environment, I would have no problem. In fact, I would be most content to do so because it coincides with my thinking and spiritual beliefs. Also, it would allow me to be closer to my family, along with the possibility of earning money to help my loved ones.

V.     **SUMMARY:**

       A.    Considering the commitment offense, prior record and prison adjustment, this writer believes that the prisoner would probably pose a low degree of threat to the public at this time, if released from prison, should he remain drug free. If he resumes his use of alcohol and/or drugs, his degree of threat to the public would be high.

HERNANDEZ, HECTOR       D33689                        CTF                        DEC/2001

LIFE PRISONER EVALUAT. REPORT                                                    3
SUBSEQUENT PAROLE CONSIDERATION HEARING
DECEMBER 2001 CALENDAR

B.    Prior to release, the prisoner could benefit from remaining disciplinary free,
      continuing his participation in the CTF-Central Narcotics Anonymous program
      and completing his current vocational trade program.

C.    This Board Report is based upon a one hour interview, a thorough review of the
      Central File, and seven months incidental contact in the housing unit. Inmate
      Hernandez was afforded an opportunity to review his Central File, per the Olson
      Decision, on 11/26/01.

_____

G. Peabody
Correctional Counselor I


_____

J. Sisk
Correctional Counselor II


_____

P.G. Dennis
Facility Captain


_____

D.S. Levorse
Classification and Parole Representative


HERNANDEZ, HECTOR          D33689                    CTF-Soledad                DEC/2001

BOARD OF PRISON TERMS                                                                STATE OF CALIFORNIA
LIFE PRISONER: POSTCONVICTION PROGRESS REPORT

---

☐    DOCUMENTATION HEARING

☒    PAROLE CONSIDERATION HEARING

☐    PROGRESS HEARING                    (Life term began 12/22/86)

---

INSTRUCTIONS
    TO CDC STAFF:  DOCUMENT EACH 12-MONTH PERIOD FROM THE DATE THE LIFE TERM STARTS TO PRESENT
    TO BPT STAFF:  FOR EACH 12-MONTH INCREMENT APPLY THE GUIDELINES UNDER WHICH THE PAROLE DATE WAS ORIGINALLY
              ESTABLISHED, ie., 0-2 MONTHS FOR PBR AND 0-4 MONTHS FOR BPT. SEE BPT §§2290 - 2292, 2410 AND 2439.

| POSTCONVICTION CREDIT | | | REASONS |
| YEAR | BPT | PBR | |
|---|---|---|---|
| 3/99 to 12/99 | | | **PLACEMENT:** Remained at CTF-Central. <br> **CUSTODY:** Medium A <br> **CLASSIFICATION SCORE:** Remained at 0. <br> **MEDICAL:** TB Alert Code 22 dated 5/3/99. <br> **ACADEMIC:** Assigned to Acad. Ed. (ABE-III) until 6/24/99 with satisfactory assessments and positive comments on CDC 128-E chronos dated 4/7/99 and 7/9/99. GPL of 12.9 noted on CDC 128-B dated 4/1/99. Laudatory chrono dated 8/18/99 documented his academic efforts and improvements. <br> **WORK:** Academic and Vocational Education assignments during this period. <br> **VOCATION:** Assigned to the Vocational Print program from 6/24/99 through the end of the period with satisfactory assessments and positive coments on CDC 128-E chronos dated 7/5/99 and 10/01/99. <br> **GROUP ACTIVITIES:** Participated in the NA Group at CTF-C during this period with attendance documentation provided by CDC 128-B chronos dated 5/6/99, 7/14/99, 10/6/99 and 10/8/99. Participated in the Arts in Corrections Creative Writing Workshop during this period with CDC 128-B laudatory chronos dated 4/15/99 and 11/29/99. Also completed the Arts in Corrections Screen Writing Course per CDC 128-B dated 11/3/99. <br> **PSYCH TREATMENT:** None during this period. <br> **PRISON BEHAVIOR:** Remained disciplinary free during this period. |

---

| CORRECTIONAL COUNSELOR'S SIGNATURE | DATE |
|---|---|
| *Peabody* | |

| HERNANDEZ, HECTOR | D33689 | CTF-SOLEDAD | DEC/2001 |