# EXHIBIT 15
# Part 5 of 7

# EXHIBIT   "9"

L    PRISONER EVALUATION REP    '
SUBSEQUENT PAROLE CONSIDERATION HEARING #3
DECEMBER 2001 CALENDAR

HERNANDEZ, HECTOR                                              D33689

I.  COMMITMENT FACTORS:

    A.    **Life Crime:** All relevant documents from the previous hearings have been considered, and that information appears valid. The writer has no further information to add.

    B.    **Prisoner's Version:** In an interview for this report, Inmate Hernandez indicated that his version remains the same as stated in the previous hearings. In addition, he submitted the following to amplify on his earlier statements:

        In order to make a statement that would give some clarity and resolution, I would practically have to answer the question of "What is the meaning of Life and Death!" As difficult and at times overwhelming as this task is, it is what I've endeavored to do.

        I could say my opponent (who became the victim) had been stealing from me and threatening my life, and that the actual gun shot which took his life was fired in self defense. All of which is true. Yet in order to reach a greater and healthier understanding, I would first have to admit responsibility, which is what I've done. A few of the areas I've addressed (in order to gain a deeper understanding of the crime I committed) include my childhood, peer environment and spirituality. Only after extensive self-examination in those areas have I reached the conclusion that I needed a major adjustment in the way I relate to others, which entails developing a greater integrity for morals and ethics. This is an ongoing process with continual room for improvement. May it suffice to say that this journey of recovery and healing is something I'll be doing for the rest of my life.

    C.    **Aggravating and Mitigating Circumstances:**

        1.    The following factors in aggravation were noted per DOM Section 62090.11.2.1.1:

            •    The victim, who was asleep on his couch at the time of the crime, was particularly vulnerable.

            •    The inmate had a history of criminal behavior for which the term is not being enhanced under BPT Rule 2286.

            •    The inmate engaged in other reliably documented criminal conduct (attempted drug purchase) which was an integral part of the crime for which he is currently committed.

            •    The inmate was on probation at the time the crime was committed.

        2.    The following factor in mitigation was noted per DOM Section 62090.11.2.1.2:

- The inmate participated in the crime under partially excusable circumstances (heroin inebriation) that do not amount to a legal defense.

II.  **PRECONVICTION FACTORS:** Documents from the previous hearings have been considered, and that information appears valid. The writer has no further information to add.

III.  **POSTCONVICTION FACTORS:** Documents from the previous hearings have been considered, and the information remains valid. During the period of time since the last hearing, the prisoner's behavior has improved, in that he has remained disciplinary free, participated in self-help programming (specifically, a 13-week IMPACT workshop and two years of activity in the CTF-Central Narcotics Anonymous group) and continued his enrollment in the Vocational Offset Press/Graphics Arts program, moving from the prep side to the press side on 12/23/00. See Postconviction Progress Report for details.

IV.  **FUTURE PLANS:** Remain the same as indicated in the previous Board Report. In an interview for this report, Hernandez stated that he would also like to explore the possibility of participating in the Delancey Street residential drug program after parole. As with his version of the commitment offense, he has submitted the following statement that he would like to have included with his future plans:

My original plans were to go back into the community and participate in a worthy cause where I could give back to society. There was a time when "Habitat for Humanity" was the place where I really wanted to be of service. And I would be more than happy to be of service at a place where I was needed and would get a sense of doing something really worthy that would also include the ways and means to provide for my basic necessities.

Otherwise, because of all the time I have done, my main plans (and hopes) are to return to my parents' home. There I would be provided with housing and basic necessities until I found a job and the means to provide for myself. While living with my folks (and helping them, as they are now elderly), I would continue my personal journey into greater spiritual awareness. This would include the "12 Step Program" and various spiritual endeavors since spirituality is a great part of my life.

As an alternative, there is a religious rehabilitation center where I would have constant guidance and supervision. Because I have had prior experience in such a living environment, I would have no problem. In fact, I would be most content to do so because it coincides with my thinking and spiritual beliefs. Also, it would allow me to be closer to my family, along with the possibility of earning money to help my loved ones.

V.  **SUMMARY:**

A.  Considering the commitment offense, prior record and prison adjustment, this writer believes that the prisoner would probably pose a low degree of threat to the public at this time, if released from prison, should he remain drug free. If he resumes his use of alcohol and/or drugs, his degree of threat to the public would be high.

HERNANDEZ, HECTOR    D33689                    CTF                    DEC/2001

LIFE PRISONER EVALUAT.    <EPORT                                    3
SUBSEQUENT PAROLE CONSIDERATION HEARING
DECEMBER 2001 CALENDAR

     B.    Prior to release, the prisoner could benefit from remaining disciplinary free, continuing his participation in the CTF-Central Narcotics Anonymous program and completing his current vocational trade program.

     C.    This Board Report is based upon a one hour interview, a thorough review of the Central File, and seven months incidental contact in the housing unit. Inmate Hernandez was afforded an opportunity to review his Central File, per the Olson Decision, on 11/26/01.

HERNANDEZ, HECTOR    D33689            CTF             DEC/2001

G. Peabody
Correctional Counselor I


J. Sisk
Correctional Counselor II


C.C. _____, P.C. (for TCA)
P.G. Dennis
Facility Captain


D.S. Levorse    C&PR
Classification and Parole Representative


HERNANDEZ, HECTOR    D33689    CTF-Soledad    DEC/2001

BOARD OF PRISON TERMS                                                                STATE OF CALIFORNIA
LIFE PRISONER: POSTCONVIC . ON PROGRESS REPORT

☐  DOCUMENTATION HEARING

☒  PAROLE CONSIDERATION HEARING

☐  PROGRESS HEARING                              (Life term began 12/22/86)

INSTRUCTIONS
    TO CDC STAFF:  DOCUMENT EACH 12-MONTH PERIOD FROM THE DATE THE LIFE TERM STARTS TO PRESENT
    TO BPT STAFF:  FOR EACH 12-MONTH INCREMENT APPLY THE GUIDELINES UNDER WHICH THE PAROLE DATE WAS ORIGINALLY
        ESTABLISHED, ie., 0-2 MONTHS FOR PBR AND 0-4 MONTHS FOR BPT. SEE BPT §§2290 - 2292, 2410 AND 2439.

| POSTCONVICTION CREDIT | | | |
|---|---|---|---|
| YEAR | BPT | PBR | REASONS |
| 3/99 to 12/99 | | | **PLACEMENT**: Remained at CTF-Central. **CUSTODY**:  Medium A **CLASSIFICATION SCORE**:  Remained at 0. **MEDICAL**: TB Alert Code 22 dated 5/3/99. **ACADEMIC**:  Assigned to Acad. Ed. (ABE-III) until 6/24/99 with satisfactory assessments and positive comments on CDC 128-E chronos dated 4/7/99 and 7/9/99. GPL of 12.9 noted on CDC 128-B dated 4/1/99.  Laudatory chrono dated 8/18/99 documented his academic efforts and improvements. **WORK**:  Academic and Vocational Education assignments during this period. **VOCATION**:  Assigned to the Vocational Print program from 6/24/99 through the end of the period with satisfactory assessments and positive coments on CDC 128-E chronos dated 7/5/99 and 10/01/99. **GROUP ACTIVITIES**:  Participated in the NA Group at CTF-C during this period with attendance documentation provided by CDC 128-B chronos dated 5/6/99, 7/14/99, 10/6/99 and 10/8/99.  Participated in the Arts in Corrections Creative Writing Workshop during this period with CDC 128-B laudatory chronos dated 4/15/99 and 11/29/99.  Also completed the Arts in Corrections Screen Writing Course per CDC 128-B dated 11/3/99. **PSYCH TREATMENT**:  None during this period. **PRISON BEHAVIOR**:  Remained disciplinary free during this period. |

CORRECTIONAL COUNSELOR'S SIGNATURE                                             DATE

HERNANDEZ, HECTOR      D33689              CTF-SOLEDAD              DEC/2001

BOARD OF PRISON TERMS                                                                      STATE OF CALIFORNIA

CONTINUATION SHEET: LIFE PRISONER : POSTCONVICTION PROGRESS REPORT

| POSTCONVICTION CREDIT | | | REASONS |
|---|---|---|---|
| YEAR | BPT | PBR | |
| 12/99 to 12/00 | | | **PLACEMENT**: Remained at CTF-Central during this period. **CUSTODY**: Medium A **CLASSIFICATION SCORE**: Remained at 0 during this period. **MEDICAL**: TB Alert Code 22 dated 5/25/00. **ACADEMIC**: None during this period. **WORK**: Vocational Education assignment during this period. **VOCATION**: Assigned to the Vocational Print program during this period with satisfactory assessments and positive coments on CDC 128-E chronos dated 1/5/00, 4/6/00, 7/14/00 and 10/4/00. **GROUP ACTIVITIES**: Participated in the NA Group at CTF-C during this period with attendance documentation provided by CDC 128-B chronos dated 2/10/00, 8/22/00, 9/28/00 and 12/26/00. Completed courses in the cause, prevention, treatment and management of tuberculosis (10/5/00), sexually transmitted disease (10/5/00), HIV/AIDS (10/6/00) and hepatitis (10/10/00). **PSYCH TREATMENT**: None during this period. **PRISON BEHAVIOR**: Remained disciplinary free during this period. |

ORDER:
☐  BPT date advanced by       months.         ☐   BPT date affirmed without change.
☐  PBR date advanced by       months.         ☐   PBR date affirmed without change.

SPECIAL CONDITIONS OF PAROLE:
☐   Previously imposed conditions affirmed.
☐   Add or modify

☒   Schedule for Progress Hearing on appropriate institutional calendar

HERNANDEZ, HECTOR     D33689                    CTF-SOLEDAD                    DEC/2001

BOARD OF PRISON TERMS                                                                      STATE OF CALIFORNIA

BPT 1004 (REV 7/86)                           Page _2_

BOARD OF PRISON TERMS                                                                                                    STATE OF CALIFORNIA

CONTINUATION SHEET: LIFE PRISONER : POSTCONVICTION PROGRESS REPORT

| POSTCONVICTION CREDIT | | | REASONS |
|---|---|---|---|
| YEAR | BPT | PBR | |
| 12/00 to Present (11/26/01) | | | **PLACEMENT:** Remained at CTF-Central during this period. **CUSTODY:** Medium A **CLASSIFICATION SCORE:** Remained at 0 during this period. **MEDICAL:** TB Alert Code 22 dated 5/4/01. **ACADEMIC:** None during this period. **WORK:** Vocational Education assignment during this period. **VOCATION:** Assigned to the Vocational Print program during this period with satisfactory assessments and positive coments on CDC 128-E chronos dated 12/31/00, 1/5/01, 3/31/01, 6/30/01 and 9/30/01. **GROUP ACTIVITIES:** Participated in the NA Group at CTF-C during this period with attendance documentation provided by CDC 128-B chronos dated 4/27/01, 6/27/01,10/01/01 and 10/10/01. Participated in administrative support and/or as an instructor in the Inmate Peer Education Program per CDC 128-B chronos dated 2/27/01, 2/28/01, 4/17/01, 4/23/01 and 9/18/01. Completed the thirteen-week IMPACT workshop per CDC 128-B dated 11/7/01. **PSYCH TREATMENT:** None during this period. **PRISON BEHAVIOR:** Remained disciplinary free during this period. |

ORDER:
- ☐   BPT date advanced by      months.
- ☐   PBR date advanced by      months.
- ☐   BPT date affirmed without change.
- ☐   PBR date affirmed without change.

SPECIAL CONDITIONS OF PAROLE:
- ☐   Previously imposed  conditions affirmed.
- ☐   Add or modify

☐   Schedule for Progress Hearing on appropriate institutional calendar

HERNANDEZ, HECTOR          D33689                    CTF-SOLEDAD                    DEC/2001

BOARD OF PRISON TERMS                                                                                                    STATE OF CALIFORNIA

EXHIBIT     "10"

LIFE PRISONER EVALUATION REPORT
SUBSEQUENT HEARING
JULY 1999 CALENDAR

HERNANDEZ, HECTOR                                             D-33689

I.    **COMMITMENT FACTORS**:

A.    **LIFE CRIME**: Murder 2nd (P187), Case # FRE336275-3 with use of a firearm (P12022.5). He
was sentenced to 15 years to Life with a MEPD of 4/5/96. Victim: Silvestere Bustos, age
unknown.

1.    **Summary of Crime:** On 8/15/85 at approximately 3:56 a.m. Officer F. Lopez was
dispatched to 2448 South Eleventh #4 Calwa, regarding an injured person. Upon arrival
Officer Lopez met four Mexican males and one female standing outside the residence.
Upon entering the living room of the residence, the officer observed a Mexican male
subject lying on the floor with a large pool of blood under the chest and face area. The
victim was pronounced dead at the scene. The victim was identified as Silvestere Odulio
Bustos. Subsequent investigation determined that the victim had been shot at close range
by a shotgun. The officers made contact with several witnesses to the crime, one of
whom was Enrique Casias (a roommate of the victim). He testified that at 3:00 a.m. on
8/15/85 there was a knock on the door at which time he (Casias) observed Hernandez
standing there. Hernandez asked Casias if he had some heroin then gave him $20.00.
Casias said he told Hernandez let me see if my friend has some, referring to victim
Bustos. Casias was getting "pieces" from Bustos boots when Hernandez kicked open the
door and entered the residence with a shotgun and stated "give me the gun and give me
the "chiva," which means heroin. According to Casias, as soon as Hernandez said "Give
me the gun" Hernandez shot Bustos. The Probation officer's Report (POR) indicates that
several witnesses were interviewed and that their statements correlated with Casias'
statement. They also relayed in part that Hernandez had been to the residence on
numerous occasions to purchase drugs and one day prior to the incident, had been in an
argument with the victim about money. Hernandez was convicted of the crime by jury
trial on 5/13/86. This information was obtained from the POR pgs 2 and 3.

2.    **Prisoner's Version:** Hernandez stated that it is still hard for him to try to understand
what happened on the date of the offense. He said it's really tough on him to think about
it. He said he knows nobody can understand the torment he has gone through. He stated
he lives one day at a time and is extremely remorseful. He indicated he has tried to do
everything possible to avoid being back in that position, by changing the type of people
he is around, avoiding drugs and other negative influences. Hernandez stated what he did
was wrong and he deserved the time he received. However, he went on to say that he
wants his freedom, a good life, and the chance to help his children. Hernandez states that

he doesn't feel that keeping him locked up any longer will benefit him anymore nor does he feel if let out that he would be a risk to society.

B.    AGGRAVATING/MITIGATING CIRCUMSTANCES

1.    Aggravating Factors:

a.    Victim was particularly vulnerable due to the fact that he was lying down on a couch at the time of the crime.

b.    The inmate had a history of criminal behavior which his term is not being enhanced under Board of Prison Terms (BPT) Rule 2286.

c.    The inmate has engaged in other reliably documented criminal conduct which was an integral part of the crime for which they are currently committed.

d.    The inmate had a special relationship of trust with the victim in that he killed his own drug dealer.

e.    The inmate was on probation at the time the crime was committed.

2.    Mitigating Factors:    None

II.    PRECONVICTION FACTORS

A.    Juvenile Record:

07/31/70  Burglarized Doctors Office in Fresno, Removed $80.00 cash  Disposition: Placed on informal probation

10/05/70  Burglary- Entered a residence, removed 9 different types of weapons, a Polaroid carmera, and a radio.  Disp:  Placed on probation without wardship until 5/23/71. Dismissed 5/19/71.

04/22/71  Burglary-"S" entered Mission Baptist Church and removed $10.50  Disp. probation ordered; then released to parents.

09/23/71  Petty Theft "S" and accomplice stole $190.00 from Luallen's 76 Service Station.  Disp:  Remain ward of the court, pay restitution, work program Sanger P.D.

06/29/72:  Burglary  Disp:  Commit to Youth Center; detain Juvenile Hall pending transfer.

07/18/72:  Defendant and accomplice were found inside the closed business of Padillas Market  Disp:  Remain ward of Court on probation.  Commit to Youth Center suspended.

11/16/72  Burglary  Disp: Comm. to Youth Center detain Juv. Hall pending transfer.

11/28/73  Burglary  Disp: Remain ward of court. commit c.k. Wakefield School detain Juvenile
          Hall not to exceed 180 days.

11/06/74  Joyriding-Carry Conc. WPN Take vehicle w/o owners consent·F/A  Disp: 12/03/74
          Detained Juvenile Hall. Committed to CYA.

11/13/75  Armed Robbery Resisting Officer .Disp: Count one dismissed; Def. Juv.

12/30/75  Armed Robbery, Asslt with Deadly WPN  Disp: Recommit to CYA detained Juv Hall
          pend tx.

03/12/78  P245A Asslt w/DWPN  Disp: P.D. Sanger 1 yr BP 364 days w/credit 57 days.

03/13/78  H & S Poss CS Heroin Poss  Disp: CYA 03/14/79 Poss Cont Sub H & S 11350
          Disp: CYA 12/17/79 paroled Discharged 2/16/82.

B.    <u>Adult Convictions</u>:

01/10/80  Carrying a concealed weapon, carrying a loaded weapon, receiving stolen property
          Disp: no disposition

11/12/80  Burglary  Disp: No Disp.

11/14/80  Burglary  Disp: No Disp.

10/06/81  Harboring a Federal Fugitive  Disp: Convicted sentenced to 358 days in a Federal
          Correctional Institute.

08/25/82  Sell or Transport marijuana Burglary, Transport /Sell a controlled substance  Disp: All
          charges dismissed

10/26/84  Under Influence of a Controlled Substance Obstruct/Resist Arrest  Disp: No Disp.

C.    <u>Personal Factors</u>: Hernandez was born on 2/28/59 in Fresno, California to Guadalupe
Hernandez and Dolores Mejia. The defendant was raised in Fresno County. He is one of eight
children. His brother, Guadalupe Hernandez Jr. was also convicted of murder in an unrelated
case. His brother is currently housed at the California State Prison, Corcoran. Hernandez
completed the tenth grade at Sanger High School in 1975 and passed his General Education
Development (GED) test on 5/4/92. He also indicated he completed vocational training in
welding at Valley Technical and Trade School in Fresno. Hernandez married Janice Ramirez on
10/3/82 in San Bernardino. Four children were born to this union. The four children range in
age from 12 to 17 years of age. The marriage is no longer intact. His work history consists of

agriculture related labor. He admitted being a daily user of heroin, using between twenty and forty dollars worth of heroin everyday. He also admitted to being a regular consumer of beer, as well as sniffing-glue and paint, and using PCP, LSD and cocaine occasionally. While Hernandez was initially incarcerated in the county jail, he was prescribed Synaquat. Hernandez has not received any psychiatric treatment or medication since coming into the California Department of Corrections.

## III.    POSTCONVICTION FACTORS

A.    Custody History: 07/07/86 Received at California Medical Facility 10/07/87 Received at the Correctional Training Facility. 03/01/89 Received at the California Men's Colony 04/12/89 Received at the Correctional Training Facility. 04/22/93 Received at North Kern State Prison. 09/16/97 Received at the Correctional Training Facility.

B.    Work, Education, Vocation, Therapy & Self-Help Activities: Hernandez has had extensive experience working in textiles. He has also worked in the culinary boiler room and was assigned to academic education, as well as vocational mill and cabinet. He passed his General Education Development (GED)) test on July 7, 1992. He has several certificates of completion for portions of the mill and cabinet program. He completed that program on 6/26/96. He has also regularly been attending Alcoholics and Narcotics Anonymous meetings throughout his incarceration. He also has a chrono indicating attendance for over a year attending the religious science. He completed a Literacy Thinking Life Skills self-help program in 1966, and the Mind Transformation self-help program in 1997.

C.    Disciplinary History: See attached Disciplinary Sheet.

## IV.    FUTURE PLANS

A.    Residence: Hernandez stated he plans to live with his parents, Guadalupe and Lolita Hernandez at 842 Edgar, Sanger, California 93657 (559) 875-3482.

B.    Employment: Hernandez indicated his main desire is to work as a counselor in Recovery Counseling and Violence Intervention. As a second choice, he would seek employment in the Mill and Cabinett area. He also plans on writing articles and books.

## V.    USINS STATUS: Hernandez is a U.S. citizen, having been born in California.

## VI.    SUMMARY

A.    Considering the commitment offense, prior juvenile history, and prison behavior, drugs seemed to have played a significant part in the mistakes Hernandez made in his life. If Hernandez were able to obtain & utilize the help needed through Narcotics Anonymous & other group therapy he would probably present minimal risk to the public at this time, if released from prison.

B.   Prior to release this Hernandez could benefit from continued self-help programs or individual therapy and completion of another vocational Trade, and continued disciplinary-free behavior.

C.   This Board Report was based on a one hour interview with the inmate and a thorough two hour review of his Central File.  Hernandez reviewed his file on 4/2/99, and signed a 128-B to indicate his file review.  That chrono has been placed into the general chrono section of his file.

_P. Miner_
Correctional Counselor I

_B. Barragan_
Correctional Counselor II

_J.L. Clancy_
Facility Captain

_J.K. Tyler_
Classification and Parole Representative

Hernandez, Hector          D-33689                CTF                07/99

BOARD OF PRISON TERMS                                                          STATE OF CALIFORNIA
LIFE PRISONER: POSTCONVICTION PROGRESS REPORT

☐   DOCUMENTATION HEARING

☒   PAROLE CONSIDERATION HEARING

☐   PROGRESS HEARING

INSTRUCTIONS
    TO CDC STAFF:  DOCUMENT EACH 12-MONTH PERIOD FROM THE DATE THE LIFE TERM STARTS TO PRESENT
    TO BPT STAFF:  FOR EACH 12-MONTH INCREMENT APPLY THE GUIDELINES UNDER WHICH THE PAROLE DATE WAS ORIGINALLY
        ESTABLISHED, ie., 0-2 MONTHS FOR PBR AND 0-4 MONTHS FOR BPT. SEE BPT §§2290 - 2292, 2410 AND 2439.

| POSTCONVICTION CREDIT | | | |
|---|---|---|---|
| YEAR | BPT | PBR | REASONS |
| 07/97 to 07/98 | | | **PLACEMENT:**  Remained housed at the Correctional Training Facility.<br>**CUSTODY:**   Remained Medium A<br>**CLASSIFICATION SCORE:**  Remained 0<br>**ACADEMIC:**  None this period.<br>**WORK:**  Hernandez was assigned to Textiles.  He received Work Supervisor Reports dated 11/25/97, 3/1/98 and 6/1/98 with satisfactory to above average grades.<br>**VOCATION:**  None this period.<br>**GROUP ACTIVITIES:**  None this period.<br>**PSYCH TREATMENT:**  None<br>**PRISON BEHAVIOR:**  Hernandez remained disciplinary-free. |

CORRECTIONAL COUNSELOR'S SIGNATURE

*R. R. Meyer*

DATE  5/12/99

Hernandez, Hector          D-33689          CTF          07/99

BOARD OF PRISON TERMS                                                                                    STATE OF CALIFORNIA

CONTINUATION SHEET: LIFE PRISONER : POSTCONVICTION PROGRESS REPORT

| POSTCONVICTION CREDIT | | | REASONS |
|---|---|---|---|
| YEAR | BPT | PBR | |
| 07/98 to Present | | | **PLACEMENT:** Remained housed at the Correctional Training Facility <br> **CUSTODY:** Remained Medium A <br> **CLASSIFICATION SCORE:** Remained 0 <br> **ACADEMIC:** Was assigned to Education on 10/15/98 and remains in school. One Education Progress Report dated 12/31/98 indicates above average progress. <br> **WORK:** None <br> **VOCATION:** None <br> **GROUP ACTIVITIES:** Hernandez received a 128-B indicating participation in Narcotics Anonymous from November 1998 through January 1999. <br> **PSYCH TREATMENT:** None <br> **PRISON BEHAVIOR:** Hernandez received one CDC 115 this period on 2/10/99 for having his hair longer than three inches. He was found guilty and assessed 20 hour extra duty. |

ORDER:

☐ BPT date advanced by _____ months.  
☐ PBR date advanced by _____ months.

☐ BPT date affirmed without change.  
☐ PBR date affirmed without change.

SPECIAL CONDITIONS OF PAROLE:

☐ Previously imposed conditions affirmed.  
☐ Add or modify

☐ Schedule for Progress Hearing on appropriate institutional calendar

| Hernandez, Hector | D-33689 | CTF | 07/99 |
|---|---|---|---|

BOARD OF PRISON TERMS                                                                                    STATE OF CALIFORNIA

# EXHIBIT   "11"

LIFE PRISONER EVALUATION
SUBSEQUENT PAROLE CONSIDERATION
HEARING FOR WEEK OF JULY 21, 1997

INMATE:   HERNANDEZ, HECTOR
CDC#      D-33689

I.       COMMITMENT FACTORS:

         A.   Life Crime:   Murder 2nd (PC 187) with the use of a firearm (PC 12022.5), Case
         #FRE336275-3. Sentence: 15 years to Life. MEPD 4-5-96, Victim: Silvestre
         Bustos, age 23 years.

         B.   Prisoner's Version:   Remained the same as stated in the previous hearing.

         C.   Aggravating Circumstances and Mitigating Circumstances:   Remains the same as
         in the previous hearing.

II.      PRE-CONVICTION FACTORS:   Documents from the previous hearing have been
         considered and the information remains valid.

III.     POST-CONVICTION FACTORS:   Documents from the precious hearing have been
         considered and the information remains valid.  During the period of time since the last
         hearing, the prisoner's behavior remained consistently positive. He remained disciplinary-
         free and committed himself to making major changes in his life vocationally and personally
         as evidenced by his numerous laudatory chronos, appreciation letters, and self-help
         program certificates. See attached Post-Conviction Progress Report for details.

IV.      FUTURE PLANS:   Remain the same as indicated in the previous Board report.  He
         stated he has contact with a chaplain in Fresno who will guide him into getting settled in a
         spiritual environment, where he can be of service to humanity and help himself start a
         brand new life. He said, he believes in doing good, not trying to look good or sound
         good.

LIFE PRISONER EVALUATION
INITIAL PAROLE CONSIDERATION
HEARING FOR WEEK OF
PAGE 2


V.        SUMMARY:

          A.     Considering the commitment offense, prior record and prison adjustment, the
                 writer believes the prisoner would probably pose a low to moderate degree of
                 threat to the public at this time, if released from prison.



          B.     Prior to release, the prisoner could benefit from maintaining a disciplinary-free
                 record, participating in a work assignment, completing trade training and
                 participating in self-help therapy program.

          C.     This Board report is based upon 1-hour of interview, incidental contact in housing
                 unit, and review of Central File.



Prepared by:



S. Vilano
Correctional Counselor I



R. Allen
Correctional Counselor II

# LIFE PRISONER: POSTCO  ⌐ .ON PROGRESS REPORT

- [ ] DOCUMENTATION HEARING
- [X] PAROLE CONSIDERATION HEARING
- [ ] PROGRESS HEARING

## INSTRUCTIONS

TO CDC STAFF:  DOCUMENT EACH 12-MONTH PERIOD FROM THE DATE THE LIFE TERM STARTS TO PRESENT.

TO BPT STAFF:  FOR EACH 12-MONTH INCREMENT APPLY THE GUIDELINES UNDER WHICH THE PAROLE DATE WAS ORIGINAL
ESTABLISHED, i.e., 0-2 MONTHS FOR PBR AND 0-4 MONTHS FOR BPT. SEE BPT §§2290 - 2292, 2410 AND 243:

| POSTCONVICTION CREDIT | | | REASONS |
|---|---|---|---|
| YEAR | BPT | PBR | |
| 1-15-95<br><br>TO<br><br>1-14-96 | | | He remained at NKSP-III under Med A Custody, assigned as Vocational Mill & Cabinet Teacher's Aide on 12-21-95 from clerk position since 12-14-94 with above average supervisor's work reports.  On 1-15-95, he received a laudatory chrono from the chaplain for his active participation in self-improvement programs offered by the chapel in areas of morals, ethics and values.  He is lauded for having made some major changes in his life regarding his personal conduct and his understanding of personal responsibility of actions and how they affect others.  He remained disciplinary-free.  There are no medical or psych concerns. |
| 1-15-96<br><br>TO<br><br>1-14-97 | | *j* | He remained at NKSP-III under Med A Custody as Vocational Mill & Cabinet Teacher's Aide with good reports.  On 1-19-95 his housing C/O Lauded him for being disciplinary-free and for his respectful demeanor towards staff.  On 6-26-96, he received a certificate of appreciation for excellent leadership in the Narcotics Anonymous Men with Second Chances Program.  On 7-2-96, he received a laudatory chrono from his vocational Mill and Cabinet instructor for excellent performance as his Teacher's Aide.  On 11-22-96 he again received a laudatory chrono from the Education Supervisor congratulating him for his commitment and significant contribution to the Laubach & Literacy Thinking Lifeskills Self-help Program as tutor, and for completion of 40-hour instruction in the development of Cognitive Skills as well as Pro-social traits of personality.  The NKSP Literacy Council Tutors won the 1996 California Literacy Award.  He remained disciplinary-free and there are no medical or psych concerns. |

CORRECTIONAL COUNSELOR SIGNATURE _SHVilano_

DATE _5-14-97_

| NAME | CDC NUMBER | INSTITUTION | CALENDAR | HEARING DATE |
|---|---|---|---|---|
| HERNANDEZ, HECTOR | D-33689 | NKSP | MAY/1997 | JULY 21, 19 |

BOARD OF PRISON TERMS                                                                    STATE OF CALIFORNIA

## CONTINUATION SHEET: LIFE PRISONER: POSTCONVICTION PROGRESS REPORT

| POSTCONVICTION CREDIT | | | REASONS |
|---|---|---|---|
| YEAR | BPT | PBR | |
| 1-15-97<br>TO<br>5-14-97 | | | He remained at NKSP under a Medium A Custody assigned as Vocational Mill & Cabinet Teacher's Aide with good reports. On 2-9-97, he completed a 40-hour course in Character Development through the Mind Transformation Self-Help Program based on scriptures to strengthen his pro-social traits of personality. On 2-11-97, he was lauded for being an asset to the NKSP Laubach Literacy Program as a tutor for the past 13 months. On 2-13-97 the NKSP Artist Facilitator lauded him for participating in the Arts-In-Corrections Program. He was commended for being a great asset in the Creative Writing class and highly employable as an artist. On 2-24-97, the Academic Instructor lauded him for exemplary attitude and performance while he was a student and tutor of the Adult School Voluntary Drug Relapse Prevention Program. In the Miscellaneous Section of his C-file there are numerous completion certificates of self-help programs, such as Alcoholic Anonymous, Narcotics Anonymous, Amer-I-Can Program, Literary Thinking Lifeskills, GED, appreciation letters by staff and inmates and letters of support from friends and family. He remained disciplinary-free and has no medical or psych concerns. |

ORDER:

☐ BPT date advanced by _____ months.      ☐ BPT date affirmed without change.

☐ PBR date advanced by _____ months.      ☐ PBR date affirmed without change.

SPECIAL CONDITIONS OF PAROLE:

☐ Previously imposed conditions affirmed.

☐ Add or modify _____

_____

☐ Schedule for Progress Hearing on appropriate institutional calendar.

| NAME | CDC NUMBER | INSTITUTION | CALENDAR | HEARING DATE |
|---|---|---|---|---|
| HERNNANDEZ, HECTOR | D-33689 | NKSP | MAT/1997 | JULY 21,199 |

# EXHIBIT "12"

LIFE PRISONER EVALUATION
INITIAL PAROLE CONSIDERATION
HEARING FOR WEEK OF
PAGE 1

## LIFE PRISONER EVALUATION
## INITIAL PAROLE CONSIDERATION
## HEARING FOR WEEK OF MAY 22, 1995

I.      <u>COMMITMENT FACTORS:</u>

A.      <u>Life Crime:</u>   Murder 2nd (P187) case# FRE 336275-3 with use of a
        firearm (P12022.5). He was sentences to 15 years to life with a MEPD of
        4-05-96. Victim: Silvestere Bustos, age unknown.

1.      <u>Offense Summary:</u>  On August 15,1985 at approximately 3:56 a.m.
        Officer F. Lopez was dispatched to 2448 South Eleventh #4 Calwa,
        regarding an injured person. Upon arrival Officer Lopez met four
        mexican males and one female standing outside the residence.
        Upon entering the living room of the residence, the Officer
        observed a mexican male subject lying on the floor with a large
        pool of blood under the chest and face area. The victim was
        pronounced dead at the scene. The victim was identified as
        Silvestere Odulio Bustos. Subsequent investigation determined
        that the victim had been shot at close range by a shotgun. The
        officers made contact with several witnesses to the crime, one of
        whom was Enrique Casias ( a roommate of the victim). He testified
        that at 3:00 a.m. on Aug.15, 1985 there was a knock on the door at
        which time he (Casias) observed Hernandez standing there.
        Hernandez asked Casias if he had some (Heroin) then gave him
        $20.00. Casias said he told Hernandez let me see if my friend has
        some referring to victim Bustos. Casias was getting "pieces" from
        Bustos boots when Hernandez kicked open the door and entered
        the residence with a shotgun and stated " Give me the gun and
        give me the "chiva"." which means Heroin. According to Casias, as
        soon as Hernandez said "Give me the gun" Hernandez shot
        Bustos. The P.O.R. indicates other witnesses were interviewed and
        their statements correlated with Casias statement, they also
        relayed in part, that Hernandez had been to the residence on
        numerous occasions to purchase drugs and one day prior to the
        incident, had been in an argument with the victim about money.
        Hernandez was convicted of the crime, by jury trial on May 13,
        1986.

2.      <u>Prisoner's Version:</u>  Inmate states its too difficult to try and
        understand what happened on the date of the offense. It's really
        tough on him to think about it. "it's too much." He states that he's

LIFE PRISONER EVALUATION
INITIAL PAROLE CONSIDERATION
HEARING FOR WEEK OF
PAGE 2

tried to do everything possible to avoid being back in that position, by changing the type of people he's around, and avioding drugs and any negative influences.

"S" states what he did was wrong and that he deserved what he has received (Time). But "I want a good life and I want to help my children and I want my freedom."

Hernandez states that he doesn't feel that keeping him locked up any longer will benefit him any more nor does he feel if let out that he would be a risk to society. Hernandez appeared sincere in his statements. He maintained eye contact throughout interview, and seemed genuine in his remorse.

3.   · Aggravating Circumstances:

1.   Victim was particularly vulnerable, in that the Defendant shot him while he was lying down on the couch.
2.   The planning, sophistication and professionalism with which the crime was carried out indicated premeditation.
3.   The Defendant was engaged in a pattern of violent conduct.
4.   The Defendants prior convictions as an adult and juvenile commissions of crime were increasingly serious in nature..
5.   The Defendant has served prior prison terms.
6.   The Defendant was on probation when he committed the instant offense.
7.   The Defendants prior performance on probation and parole was unsatisfactory.

4.   Mitigating Circumstances:

1.   No mitigating factors found under Rule 423 a.
2.   Under Rule 423B it is noted that the Defendant was suffering from a mental or physical condition that significantly reduced his culpability for the crime due to his stated use of heroin one day prior to the commission of the crime.

HERNANDEZ, Hector   D-33689            NKSP                              5-95

LIFE PRISONER EVALUATION
INITIAL PAROLE CONSIDERATION
HEARING FOR WEEK OF
PAGE 3

    B.   Multiple Crimes:  None

II.    PRE-CONVICTION FACTORS:

    Juvenile Record:  POR pgs 5,6,7,8, & 9

| | CRIME | DISPOSITION |
|---|---|---|
| 7-31-70 | Burglarized Doctors Office in Fresno, Removed $80.00 cash | Placed on informal probation |
| 10-05-70 | Burglary - Entered a residence, removed 9 different types of weapons, a polaroid camera, and a radio. | Placed on probation without wardship Until 5-23-71. Dismissed 5-19-71. |
| 4-22-71 | Burglary-"S" entered Mission Baptist Church and removed $10.50. | Probation ordered; then released to parents. |
| 9-23-71 | Petty Theft "S" and accomplice stole $190.00 from Luallen's 76 Service Station. | Remain ward of the court, pay restitution, work program Sanger P.D. |
| 6-29-72 | Burglary | Commit to Youth Center; detain Juvenile Hall pending transfer. |
| 7-18-72 | Defendant and accomplice were found inside the closed business of Padillas Market | Remain ward of Court on probation. Commit to youth center suspended. |
| 11-16-72 | Burglary | Comm. to youth center detain Juv. hall pending TX. |
| 11-28-73 | Burglary | Remain ward of court. commit c.k. Wakefield School detain Juvenile hall not to exceed 180 days. |

LIFE PRISONER EVALUATION
INITIAL PAROLE CONSIDERATION
HEARING FOR WEEK OF
PAGE 4

| | | |
|---|---|---|
| 11-6-74 | Joyriding-carry conc. WPN | Detained juvenile hall. |
| 12-3-74 | Take vehicle w/o owners consent F/A | Commited to CYA |
| 11-13-75 | Armed robbery Resisting officer | Count one dismissed; Def. juv. |
| 12-30-75 | Armed robbery, Asslt with deadly WPN | Recommit to CYA detained juv hall pend tx. |
| 3-12-78 | P245A Asslt w/DWPN | P.D. Sanger 1yr Bp 364 ds w/credit 57 ds. |
| 3-13-78 | H&S Poss CS Heroin Poss | CYA |
| 3-14-79 | Poss cont sub H&S 11350 | CYA 12-17-79 Paroled Discharged 2-16-82 |
| 10-6-81 | (1) Acc Aft fact (2) Conc pers frm | PC both counts 179 ds ea. CT. serv. consec. |
| 2-22-82 | (1) A-cc Aft fact (2) Conc pes frm | Latuna Fed CTR 7-23-82 Rel. Exp in Sanger, CA |
| 10-26-84 | H&S 11550 (A) and enforce PC 148 resist | 2 yrs FF 180 ds exc. 90 in 31 ds cred DWI no A/C 110 fn. |

Adult Convictions:  CVC 23152A CVC 14601, Misdemeanors only

C.   Personal Factors:
- Prisoner Hernandez was born on 2-28-59 in Fresno Calif. to Guadalupe & Delores. He is one of 8 children. The father is a Machinist and the mother is employed by the Barr Packing Shed. One of the Prisoners brothers, Guadalupe Jr. is currently incarcerated at CTF on a charge of murder. Prisoner states one other brother is in prison for a possession charge, and that his sister had a brief run in with the law but has since turned her life around. Hernandez completed the 10th grade at Sanger High School in 1975 and obtained his GED in Federal Prison, Recent TABE scores

LIFE PRISONER EVALUATION
INITIAL PAROLE CONSIDERATION
HEARING FOR WEEK OF
PAGE 5

reflect a GPL; of 12 + 9. "S" received Vocational Training at Valley Technical and Trade School in Fresno in 1980 & 1981 in Welding, Also obtained skills in machine operation while incarcerated at CTF-Central. The POR indicates no Military Service. Hernandez is pending divorce from Genie Ramirez; from this union three girls and one boy were born. Hernandez states he grew up in a home with very little love he states his mother was "morbid" and his father "hardworking but unaffectionate".

III.        POST CONVICTION FACTORS:

For program behavior observation please review attached post conviction report. Overall Institutional behavior "Ideal Programmer" "S" has remained Disciplinary Free since 10-10-92 There are two 115's for stealing state food which were reduced to administrative. And one serious 115 noted for possession of blade dated 12-18-91.

IV.         FUTURE PLANS:  Hernandez states that upon initial release he would reside with parents in Sanger. Until he could find work, then he would find a place to
live         of his own, surrounding himself with positive people to help maintain a positive stride. "S" states he will do any kind of work if he was unable to put his welding skills to use, including Agricultural Labor as he says "I have lots of experience in". He says he has faith in God and believes he will be fine. He said that it is a goal for him to do volunteer work for the community maybe through a local church, most importantly Hernandez stated he no longer wanted to be around people using drugs or any other negative type people, and that he would attend other self help programs.

V.          SUMMARY:

A.    Considering the commitment offense, prior juvenile history, and prison behavior, this writer believes what is evident, that drugs seemed to have played a significant part in the mistakes Hernandez made in his life. And that if Hernandez were able to obtain & utilize the help needed through Narcotics Anonymous & other group therapy he would probably present minimal risk to the public at this time., if released from prison.

B.    Prior to release this prisoner could benefit from continued self help programs or individual therapy and completion of another Vocational Trade. (He is currently assigned to Vocational Mill & Cabinet), and continued disciplinary free behavior.

LIFE PRISONER EVALUATION
INITIAL PAROLE CONSIDERATION
HEARING FOR WEEK OF
PAGE 6

C.    This Report is based on a 1 hour interview, c-file, and contact with work supervisors, correctional officers in the housing unit as well as my own observation of him while assigned as "A" Facility Sergeant. And as his assigned counselor.

Prepared by:


_____
R. Walker
Correctional Counselor I


_____
J. Steed
Correctional Counselor II

BOARD OF PRISON TERMS                                                      STATE OF CALIFORN

# LIFE PRISONER: POSTCONVICTION PROGRESS REPORT

☐ DOCUMENTATION HEARING

☒ PAROLE CONSIDERATION HEARING

☐ PROGRESS HEARING

## INSTRUCTIONS

TO CDC STAFF:  DOCUMENT EACH 12-MONTH PERIOD FROM THE DATE THE LIFE TERM STARTS TO PRESENT.

TO BPT STAFF:  FOR EACH 12-MONTH INCREMENT APPLY THE GUIDELINES UNDER WHICH THE PAROLE DATE WAS ORIGINALL
ESTABLISHED, i.e., 0-2 MONTHS FOR PBR AND 0-4 MONTHS FOR BPT. SEE BPT §§2290 - 2292, 2410 AND 2439

| POSTCONVICTION CREDIT | | | REASONS |
|---|---|---|---|
| YEAR | BPT | PBR | |
| 10/92<br><br>To<br><br>10/93 | | | <u>PLACEMENT:</u>    CTF-III, on 4-22-93 Hernandez was transferred to NKSP. <u>CUSTODY:</u> Med A. <u>VOCATIONAL TRAINING:</u> on 10-22-93. "S" was assigned to Vocational Mill + Cabinet and has received a laudatory chrono indicating above average performance.  <u>ACADEMICS:</u> TABE test results of 3-29-93 indicate a GPL of 12.9 + ".S" passed the GED test on July 7, 1992.  <u>WORK RECORD:</u> Assigned to Yard Crew Facility A.  <u>GROUP ACTIVITIES:</u> Active Participant Alcoholics Anonymous since 8-16-89. "S" participated in a children's walk-a-thon refer to 128B date April 1993. No other group activities noted.  <u>PSYCH TREATMENT:</u>    NONE.    <u>PRISON BEHAVIOR:</u>    Two administrative 115's noted for stealing state food. |
| 10/93<br><br>To<br><br>10/94 | | J | <u>PLACEMENT:</u>    NKSP.    <u>CUSTODY:</u>    Med A <u>VOCATIONAL TRAINING:</u>  Assigned to Voc Mill & Cab from 10-23-93 to 12-14-94.  <u>ACADEMICS:</u>    No educational upgrading noted.  <u>WORK RECORD:</u>    See vocational.  <u>GROUP ACTIVITIES:</u>  None.  <u>PSYCH TREATMENT:</u>    None.    <u>PRISON BEHAVIOR:</u>    No adverse documentation this review.  <u>OTHER:</u>  Laudatory chrono dated 7-7-94. |
| 10/94<br><br>To<br><br>Present | | | <u>PLACEMENT:</u>    NKSP.    <u>CUSTODY:</u>    Assigned <u>VOCATIONAL TRAINING:</u>    None.  <u>WORK RECORD:</u> Assigned to vocational mill + cabinet as clerk since 12-15-94.  <u>GROUP ACTIVITIES:</u>    None attended this review.  <u>PSYCH TREATMENT:</u>  None.  <u>PRISON BEHAVIOR:</u>  No Disciplinaries noted.  <u>OTHER:</u>  None. |

CORRECTIONAL COUNSELOR SIGNATURE    c cI    DATE  1/19/95

| NAME | CDC NUMBER | INSTITUTION | CALENDAR | HEARING DAT |
|---|---|---|---|---|
| HERNANDEZ, Hector | D33689 | NKSP. | 1/95 | 5/26/95 |

BPT 1004 (REV 7/86)                         PAGE 1 of 1

BOARD OF PRISON TERMS                                                                    STATE OF CALIFORNI

## LIFE PRISONER: POSTCONVICTION PROGRESS REPORT

☒ DOCUMENTATION HEARING

☐ PAROLE CONSIDERATION HEARING

☐ PROGRESS HEARING

INSTRUCTIONS

TO CDC STAFF:  DOCUMENT EACH 12-MONTH PERIOD FROM THE DATE THE LIFE TERM STARTS TO PRESENT.

TO BPT STAFF:  FOR EACH 12-MONTH INCREMENT APPLY THE GUIDELINES UNDER WHICH THE PAROLE DATE WAS ORIGINALL'
ESTABLISHED, i.e., 0-2 MONTHS FOR PBR AND 0-4 MONTHS FOR BPT. SEE BPT §§2290 - 2292, 2410 AND 2439.

| POSTCONVICTION CREDIT | | | REASONS |
|---|---|---|---|
| YEAR | BPT | PBR | |
| 10-89 TO 10-90 | | | Remained at CTF-Central general population with Close B custody, Work Group/Privilege A1/A, assigned to Textiles and classification score of 44 points. On 1-22-90, Hernandez appeared before Institutional Classification Committee for a Custody Reduction Review to Medium A custody. On 4-3-90, Hernandez was un-assigned from his Textiles assignment non-adverse, continue his Work Group/Privilege Group A1A and placed on the Boiler Room Waiting List. On 5-1-90, Hernandez was assigned to the Boiler Room. Hernandez appeared before Unit Classification Committee for a Annual Review on 9-6-90, his classification score was adjusted to 32, with a Grade Placement Level of 9.0. Remained disciplinary free during this period. |
| 10-90 TO 10-91 | | | Remained at CTF-Central general population with Medium A custody, Work Group/Privilege Group A1A, assigned to Boiler Room and classification score of 32 points. On 11-18-90, Hernandez received a CDC Administrative Disciplinary Report for Disrespect Towards Staff. Hernandez received a CDC 128-B dated 2-22-91 noting his involvement and participation in the Alcoholics Anonymous program. On 8-1-91, Hernandez appeared before Unit Classification Committee for a Annual Review, classification score adjusted to 24 points. Hernandez was unassigned on 9-3-91 non-adverse from his Boiler Room assignment. |
| 10-91 TO | | | Remained at CTF-Central general population with Medium A custody. Work Group/Privilege Group A1/A, non-adverse unassigned. Hernandez was assigned to the Lunch Box Crew on 10-19-91. On 12-13-91, Hernandez tested for his Grade Placement Level with 12.9 results. |

CORRECTIONAL COUNSELOR SIGNATURE

R. _____  CCI                                                              DATE  12-3-92

NAME  HERNANDEZ, H.    CDC NUMBER  D-33689  INSTITUTION  CTF    CALENDAR  12/92    HEARING DATI

| POSTCONVICTION CREDIT | | | REASONS |
|---|---|---|---|
| YEAR | BPT | PBR | |
| PRESENT | | | Hernandez appeared before Unit Classification Committee for a Annual Review, his classification score was adjusted to 30 points. On 12-18-91, Hernandez received two (2) serious CDC 115 Disciplinary Reports for Possession of Utility Knife Blade and Possession of Inmate Manufactured Alcohol. Hernandez appeared before Unit Classification Committee on 1-15-92 to confirm the above mention CDC 115's, classification score was adjusted to 36 points. On 9-2-92, Hernandez received an CDC Administrative Disciplinary Report for Stealing State Food. Hernandez appeared before Unit Classification Committee for an Annual Review on 7-23-92, classification score was adjusted to 30 points. On 9-10-92 Hernandez received an Administrative Disciplinary Report for Lending Personal Property. Hernandez received an Administrative Disciplinary Report on 10-10-92 for Stealing State Food and on 10-22-92 he was removed from his Lunch Box Crew assignment. The un-assignment was adverse therefore his Work Group/Privilege Group changed to A2/B. |

ORDER:

☐ BPT date advanced by _____ months _____ ☐ BPT date affirmed without change

☐ PBR date advanced by _____ months _____ ☐ PBR date affirmed without change

SPECIAL CONDITIONS OF PAROLE:

☐ Previously imposed conditions affirmed.

☐ Add or modify _____

☐ Schedule for Progress Hearing on appropriate institutional calendar.

| NAME HERNANDEZ, H. | CDC NUMBER D-33689 | INSTITUTION CTF | CALENDAR 12/92 | HEARING DATE |

BOARD OF PRISON TERMS                                                                 STATE OF CALIFORNIA

## LIFE PRISONER: POSTCONVICTION PROGRESS REPORT

[x] DOCUMENTATION HEARING

[ ] PAROLE CONSIDERATION HEARING

[ ] PROGRESS HEARING

INSTRUCTIONS
    TO CDC STAFF:  DOCUMENT EACH 12-MONTH PERIOD FROM THE DATE THE LIFE TERM STARTS TO PRESENT.
    TO BPT STAFF:  FOR EACH 12-MONTH INCREMENT APPLY THE GUIDELINES UNDER WHICH THE PAROLE DATE WAS ORIGINALLY
                   ESTABLISHED, i.e., 0-2 MONTHS FOR PBR AND 0-4 MONTHS FOR BPT. SEE BPT §§2290 - 2292, 2410 AND 2439.

| POSTCONVICTION CREDIT | | | REASONS |
|---|---|---|---|
| YEAR | BPT | PBR | |
| 7–86 to 7–87 | | | Hernandez was received CDC on 7-7-86 and housed at NRC–CMF.  Transferred and received at Folsom prison on 7-29-86.  He was further CSR endorsed for CTF as a good behavior override with a clean disciplinary record.  On 10-7-86, he was received at CTF–C for level III override placement, he was established custody as Clo B, work group A2B, and placed on Industries (textiles) and Support Services waiting list.  11-7-86, assigned to textiles as a machine operator and remained on assignment with average and above average work performance reports.  Remained disciplinary free.  No medical or psych problems noted. |
| 7–87 to 7–88 | | | Remained housed at CTF–C mainline, continues with Clo B status and continues assigned to textiles with average and above average work performance report, 3-1-88, he is promoted to a leadman position and continues to earn good supervisor reports with average to above average, demonstrates good team work and out puts very good. Continues disciplinary free.  No medical or psychiatric problems noted. |
| 7–88 to present | | | Remains housed at CTF–C mainline as Clo B custody.  Continues assigned as leadman on the textiles program with average to above average supervisory reports. 1-26-89, he was transferred to CMC–E as a medical and return awaiting treatment for Pilonidal Cystius.  4-12-89, he transferred and returned to CTF–C from CMC–E as medical return.  Continued with Clo B custody, placed back on textiles as leadman.  Supervisory reports indicate at this time "S" shows little interest in job assignment. On 4-14-89 "S" is non-adverse unassigned.  On 4-29-89 he is reassigned to the textiles program and has continued with such.  "S" has remained disciplinary free since his reception date and there are no medical or |

CORRECTIONAL COUNSELOR SIGNATURE  *Moncayo CSP*

DATE  10-19-89

| NAME | CDC NUMBER | INSTITUTION | CALENDAR | HEARING DATE |
|---|---|---|---|---|
| HERNANDEZ | D33689 | CTF | 12/89 | |

BPT 1004 (REV 7 86)                          PAGE 1 of 2

BOARD OF PRISON TERMS                                                                                    STATE OF CALIFORN

## CONTINUATION SHEET: LIFE PRISONER: POSTCONVICTION PROGRESS REPORT

| POSTCONVICTION CREDIT | | | REASONS |
|---|---|---|---|
| YEAR | BPT | PBR | |
| (continued)<br>7-88<br>to<br>present | | | psychiatric problems noted. |

**ORDER:**

☐ BPT date advanced by _____ months.    ☐ BPT date affirmed without change.

☐ PBR date advanced by _____ months.    ☐ PBR date affirmed without change.

**SPECIAL CONDITIONS OF PAROLE:**

☐ Previously imposed conditions affirmed.

☐ Add or modify _____

☐ Schedule for Progress Hearing on appropriate institutional calendar.

| NAME | CDC NUMBER | INSTITUTION | CALENDAR | HEARING DATE |
|---|---|---|---|---|
| HERNANDEZ | D33689 | CTF | | |

BPT 1004 (REV. 7/86)                                 PAGE _2_ of _2_                              PERMANENT ADDENDA

EXHIBIT    "13"

Becoming a writer is one of my best ambitions for as long as I can remember. Aside from numerous letters, I started writing poetry and prose which could be of inspirational use. Here is one excerpt titled "<u>Peace and Tranquility</u>":

> With myself, my fellow man, Mother nature, God
>     Almighty, the Universe.
> When I leave this body, I want to know I've left this
>     world just as it was, if not better.
> Bury this body soon, just please don't defile it with
>     odd kinds of chemicals.
> A plain pine box would be fine thank you.
>
> Ashes to ashes, dust to dust, so that my flesh and
>     blood can go back into the ground;
> Fertilizing the land, as Mother Nature would so wish
>     and desire,
> Perhaps to the mountains and valleys where the eagles
>     soar and horses run free,
> And my spirit to God.
>
> Peace and tranquility to all.

Hector Hernandez
1993


In 1996, while in North Kern State Prison attending a Narcotics Annonymous meeting, the Community Resource manager visited the group and requested anyone willing and able to write something for an upcoming event called a "Drug Free America" starting with the youth of today. Here is my contribution:

To the young and full of life, who are still growing and learning, with a chance at a great future just waiting for you to make it happen:

This is a message and or warning, in order to spare you much grief. Believe me, I know. Sad part about it is I learned the hard way. What's even worse of the whole matter, is that other young one's (my kids) are suffering because of my ignorance and wrong choices.

But it's cool, as long as you (and my kids) will not have to make the same mistakes I did. Then my mistakes in life will not be a total loss.

Please believe me and let me explain, so that you can save yourself (and others too, like maybe your own kids) from lots of needless suffering.

You see, I'm writing this from prison, and have been locked

-1-

up for ten years straight.  And I don't know when I'll get
another chance in the free world.

No doubt about it, we will all have some tough times.  But
unless you hang in there and learn the lessons right there
and then, becoming mature and a better person, well, then
the same problems or trouble will come back to haunt you.

Yeah, o.k., you've got it really tough.  I had it rough
too.  How rough?  Well, just take my word, it was rough.  I
was hurting, seemed like right down to my soul.  Real sad,
then real mad.  So I made lots of wrong choices, thinking it
was the easy way, and that nobody cared anyway, so I may as
well have some kind of fun.  So I smoked weed, drank booze,
sniffed glue, dropped pills and tried just about any drug I
could get, ending up addicted to heroin.  Besides that, one
thing led to another, cruising, hot-rodding, low-riding,
then pure hell and war.  That's right, hell.  At first it
may look cool.  Maybe it seems like an honorable thing to
do.  Taking the law into your own hands and defending
something or someone.

Anyway, all those wrong choices onlly made things worse.
The drugs tore up my brains and body, and in addition, the
warring left my heart cold and lonely.

I must say, it was only by God a miracle that I'm still
living.  Yet it does not mean everything is alright now.
Those wrong choices still haunt me.  And now I want to make
the right choices to make everything alright.  But it's even
tougher now.  And I'm still stuck in prison.

Some people talk bad aout this country of ours, but that
only discourages others, especialy the young ones.  The
truth is this is still a great country, if not the
greatest.  And we should take care of it, starting with
ourselves.

There are people who care.  The rest is up to you.  Drugs
and gangs are no joke and nothing nice.  But life is good
and it's cool to have fun.

Be happy and good luck.
God bless you, God bless America.

Hector Hernandez
1996


In addition, as a foot note, I would like to say, this is
not meant for publication.  I am rewriting this as I wrote
it at that time.  I realize it could use revising, but is
only meant to show my endevours and the progress made.
If and when I were to ever use these writings for
inspiration to the youth and to the public, I would first

-2-

get the counsel of experienced and qualified persons.

The following piece was written on March 13, 1997, while
attending a creative writing class in North Kern State
Prison with writer/instructor Deborah Tobola.

The assignment topic was titled, "Does Disorder in
Consciousness Ever Bother You?"

Psychological disorder is a thief robbing me of the memories
of days and nights that I've lived.

But then again, as my consciouness settles into order, was
it not a request of mine that I could forget all those dark
days, put it all behind me, and live life anew?

And what of those days-events and experiences, can they ever
really be done away with as if it never happened? I think
not. It is me, a part of me, leading up to who I now am.
In spite of consciousness being fogged in disorder.

And this life wish, "Oh, if only I could do it all over,"
would'nt it actually be growth in reverse, equaling it all a
waste? Why not take the bad along with the good and letting
all come to something greater?

Hector Hernandez
1997


While attending a writing class at CTF, Soledad, with
writer/instructor Dan Bessie, through the Arts in
Corrections program, Jack Bowers, Facilitator, requested
contributions for the "Day of the Dead" display.  This was
my submission:

Dia De Los Muertos
(Otherwise known as the Day of the Dead)

Day of the Dead is as much for the living as it is for the
dead.

Saying, Hey you, living dead, what are you waiting for?
Death?

What's that you say, live fast, die young, and have a good
looking corpse?

Yeah, yeah, yeah.

But then why live in the first place.  Why not live life to
its fullest.  Look back at the great people who have gone on
before you.  Look back and learn from all they did.  After
all, it is because of them that we live today.  Then maybe

-3-

in the future, the young and full of life, with the future
at their command, can look back and take encouragement and
wisdom from the life you lived.

So live life to the fullest, in balance and harmony with
nature and the supernatural.

Hector Hernandez
1998


In another writing class at Soledad, with writer/instructor
Claire Braz-Valentine, Jack Bowers was putting on a show
presenting and displaying the ongoing programs of Arts in
Corrections. He asked me to Co-MC. Here's what I wrote:

May I have your attention please, Attention Please.
On behalf of the writers, artists, painters and musicians, I
welcome every one of you to the 1999 Spring Arts Fest.

CTF, Soledad, Arts in Corrections presents a presentation of
intellectually inspiring prose and poetry, soulful sounds of
jazz, and a display of unique styles of art.

All of this is made possible in great part by our
artist/facilitator Jack Bowers, writer/instructor Claire
Braz-Valentine, artist/instructor Jennie Brubaker, and
Community Resource Manager, Jerry Smith.
Much thanks to them.

I was asked to say a few words on how the Arts Program has
been of benefit to me. But I wasn't told what to say.

Whether everyone realizes it or not these arts are a great
for of empowerment. And come on, we all know being locked
up is oppressive.

But through the arts, one takes control of your own
existence. You can create, play sounds, maybe a brand new
tune, or create beauty by painting and drawing, be
interesting, inspiring, healing, etc., etc.

As for me, writing has allowed me to be of service and makes
me feel useful. I write, bless, share, console, encourage,
entertain and break the loneliness, express concern and
share kindness. All of which has added purpose and meaning
to life. It's very therapeutic. That's the empowerment I
mentioned.

So if you too are serious about enhancing the quality of
your life, you might want to consider the arts. Just know
this, it will also require dedication and hard work.
But for now, relax and enjoy.

Hector Hernandez, 1999

In 2000, I was approached by one of the faculty and asked to write for the graduation ceremony. Here's the piece I composed:

Ladies and Gentlemen, Distinguished Guests of Honor and fellow students:

Here we are on this occasion to celebrate and honor your graduation. We will be celebrating achievements acquired in the face of overwhelming adversities and finding or making the light when all seemed dark.

Also taking the negatives and turning it into positives, or getting the failures and making a success out of it. Before going any further, may I say we are all works in progress.

I happen to be a lifer, only one of many who seem to be locked into this hopelessness. Yet here's one for you: WE ARE ALL LIFERS. Hopefully doing our best and making the choices that will allow things in life to work out for the best for all concerned.

This here contribution was a struggle, just as I am sure making it to graduation was a struggle for you too. Questions within arise such as: Why should I? What's my motivation? and Where's the incentive?

Even the educators, such as Mrs. Barnes, Mr. Kingston, Mr. Crowther, and Mr. Mack, just to name a few, have labored on and on in their endeavours of educating us. And all that way before the Governor of our state committed to giving educators the recognition and compensation they richly deserve.

And coming back to school as an adult, in itself is not easy. Especially when coming to prison was a failure already. Yet while locked up, you've chosen the freedom to get educated, and have succeeded. You've taken a negative, turned it around, and made something positive out of it.

So on this occasion for joyous celebration of your graduation, may this be a lifelong lesson for the next time you come to those dark days, that we all have, like seasons they will come and they will go. Just tell yourself, I made it then, I can make it again.

Congradulations

Hector Hernandez
2000


In contribution to a publication that writer/facilitator Annie Steinhart was putting together, and with some inspiration from the Vocational Print Shop Instructor, Sally