# EXHIBIT 15
# Part 7 of 7

58

```
 1              CALIFORNIA BOARD OF PRISON TERMS

 2                  D E C I S I O N

 3           DEPUTY COMMISSIONER GARNER-EASTER:  We're

 4      back on record.

 5           PRESIDING COMMISSIONER MUNOZ:  All right.

 6      Thank you.  It's 10 minutes after 10 a.m., and the

 7      parole consideration hearing for Inmate Hernandez

 8      has resumed.  And Mr. Spowart, there was something

 9      you wanted to say, sir.

10           ATTORNEY SPOWART:  Yes.  In my closing

11      argument, I admitted to one point.  There is no

12      person here today from the county of commitment,

13      and there is no letter from either the DA or the

14      sheriff or the police.  And that would lead me to

15      believe that they are not in -- they are not

16      against my client receiving a date today.

17           PRESIDING COMMISSIONER MUNOZ:  All right.

18      Understand that I did mention during the course of

19      the hearing that we had no letters of opposition

20      from any corner, and we certainly considered that

21      during our deliberations.  And Mr. Hernandez, this

22      Panel reviewed all information received from the

23      public and relied on the following circumstances in

24      concluding that you're not suitable for parole, and

25      that you would pose an unreasonable risk of danger

26      to society if released from prison at this time.

27      HECTOR HERNANDEZ  D-33689  DECISION PAGE 1  2/20/03
```

59

1    Many factors were considered. First and foremost

2 .  was the commitment offense and the nature of that

3    offense. This offense was carried out in a cruel

4    manner with a callous disregard for human

5    suffering. And unfortunately one individual, the

6    victim in this case, Mr. Bustos, was killed as a

7    result of your actions. And there were others that

8    were exposed to great risk. Other people were

9    present when you killed Mr. Bustos. You shot him

10   with a shotgun, and they were certainly exposed to

11   great risk. These conclusions are drawn from the

12   Statement of Facts wherein the prisoner, while

13   immersed in a drug lifestyle, he was addicted to

14   heroin at the time of the commitment offense, went

15   to the home of his local supplier, someone he had

16   done business with in the past, to buy some heroin.

17   He claims he armed himself with a shotgun because

18   he had had run-ins with this particular individual,

19   the victim in this case, in the past, or he had

20   been shortchanged either in money or the quality or

21   the amount of the heroin. Apparently he gave

22   someone in the residence some money for some heroin

23 . and grew tired of waiting. Forced entry into the

24   apartment. A confrontation followed and -- between

25   the inmate and the victim. The victim had a

26   handgun, apparently, in his waistband. And during

27   HECTOR HERNANDEZ  D-33689  DECISION PAGE 2  2/20/03

60

1   the confrontation -- during the argument, the

2   inmate grew fearful that the victim would shoot

3   him, and he fired his shotgun at the victim from

4   about seven to eight feet, resulting in the demise

5   of a human being.  The inmate fled the location

6   without rendering aid to the victim and did not

7   turn himself in.  He was arrested a few days later.

8   The -- As he fled, the victim took the weapon that

9   the -- Excuse me.  The inmate took the weapon that

10  the victim had on his waistband.  And at the time

11  of the commitment offense, as I indicated, he was

12  going through an unstable period in his life.  He

13  was addicted to heroin.  His prior criminality

14  includes a number of arrests, primarily property

15  arrest or some violence related arrests.  I think

16  only one conviction.  You went to CYA for an armed

17  robbery.  There -- He has -- The record also

18  reflects some drug-related arrests, a couple of

19  Safety Code violations, and he's failed to profit

20  from society's previous attempts to correct his

21  criminality, which includes juvenile probation,

22  some time in juvenile hall, a CYA commitment, adult

23  probation, some county jail, adult probation, and a

24  prior -- a federal prison term.  During this period

25  of incarceration, this inmate has received eleven

26  128(a)s and seven 115s.  There were no disciplinary

27  HECTOR HERNANDEZ  D-33689  DECISION PAGE 3  2/20/03

1    citations since his last parole consideration

2    hearing.  As a matter of fact, there are none since

3    1999.  The most recent psychological evaluation is

4    a good evaluation.  And that's the 1999 evaluation

5    by Dr. Reed.  It's good and positive.  We looked at

6    his parole plans.  He does have letters of support

7    and commitment from his parents offering their

8    residence and any support they might be able to

9    give him to complete successful parole.  He also

10    has the letter from his defense counsel who is also

11    willing to assist him.  There is no firm job offer

12    at this point.  And the plans -- And the residency

13    plans do comply with the general or the basic rule

14    to reside in the county of residency at the time of

15    the commitment offense.  This Panel makes the

16    following findings, that this inmate needs to

17    continue to participate in self-help programming,

18    any and all that becomes available.  He also needs

19    to take part in therapy if any becomes available.

20    And we realize that there's not much available out

21    there as far as therapy is concerned.  But if

22    anything should come up, we certainly urge this

23    inmate to take part in that therapy.  This Panel

24    feels that the inmate needs to delve deeper into

25    the causation factors involved in the commitment

26    offense.  In speaking with him today, we realize

27    HECTOR HERNANDEZ  D-33689  DECISION PAGE 4  2/20/03

62

1   the inmate is nervous. All inmates are nervous

2   when they come to these hearings. And we -- the --

3   came across in our conversations with this inmate

4   was that he somehow believes that he was acting to

5   protect himself. And we don't think that's the

6   case. The jury didn't think that was the case. He

7   was convicted of murder in the second degree. We

8   do appreciate the gains that he has made, and we

9   certainly hope he continues on that path. He

10  should be commended for his work in AA, his

11  participation in AA and NA, his self-help

12  programming. He's taken part in a 13-week Impact

13  Program in the past. He's taken part with Peer

14  Education. And he's taken -- He took part in the

15  course on communicative disease. However, these

16  positive aspects of his behavior do not outweigh

17  the factors of unsuitability. I should also note

18  that he has completed a vocation, mill and cabinet,

19  and is currently enrolled in the print shop course.

20  This is another one-year denial, Mr. Hernandez.

21  And we recommend that you keep doing what you're

22  doing, sir, remain disciplinary-free. We realize

23  that you're disappointed in the outcome of this

24  hearing. Don't let your disappointment or

25  frustration turn to bitterness. Don't do anything

26  rash or stupid. Stay with the course you're on.

27  HECTOR HERNANDEZ  D-33689  DECISION PAGE 5  2/20/03

# EXHIBIT   "20"

BOARD OF PRISON TERMS                                          STATE OF CALIFORNIA
LIFE PRISONER HEARING DECISION FACE SHEET

[ ] PAROLE GRANTED - (YES)
      CDC:  Do not release prisoner before
            Governor's review

[X] PAROLE DENIED - (NO) — 1 yr

[ ] AGREED UNSUITABLE (Attach 1001A Form) FOR:_____ YEAR(S)
[ ] HEARING POSTPONED/REASON:_____

**Records Use Only**

Parole Release Date

| YR | MO | DAY |
|----|----|-----|

Attach Prison Calculation Sheet

PANEL RECOMMENDATIONS AND REQUESTS

**The Board Recommends:**
[ ] No more 115's or 128A's      [ ] Stay discipline free
[ ] Work to reduce custody level  [ ] Learn a trade*        [ ] Earn positive chronos
[ ] Get self-help*                [ ] Get therapy*          [ ] Get a GED*

[ ] Recommend transfer to_____
[ ] Other_____
      *These programs are recommended if they are offered at your prison and you are eligible/able to participate.

| Penal Code 3042 Notices | [X] Sent  Date:_____APRIL 28, 2004_____ |

Commitment Offense(s) _____ 187/12022.5          MURDER 2ND W/USE OF FIRE ARM
                                Code(s)                Crime(s)
                        _____ 3362753                       1
                                Case #(s)               Count #(s)

| Date Inmate Came to CDC | Date Life Term Began | Minimum Eligible Parole Date |
|-------------------------|----------------------|------------------------------|
| 7/7/86                  | 12/22/86             | 8/3/96                       |

[ ] Initial Hearing      [X] Subsequent (Hearing No.)_____5_____      Date of Last Hearing_____

CDC Representative _____
Attorney for Prisoner _____         Address
D.A. Representative _____            County   FRESNO

This form and the Board's decision at the end of the hearing is only proposed and NOT FINAL. It will not become
final until it is reviewed.

| Chair | Susan Fisher | Date | 7/ / |
|-------|--------------|------|------|
| Panel Member | | Date | / / |
| Panel Member | | Date | / /04 |

HERNANDEZ, HECTOR  D-33689          CTF-SOLEDAD  CALENDAR      DATE

BOARD OF PRISON TERMS                                      STATE OF CALIFORNIA

## SETTING A LIFE PRISONER TERM - PAROLE DENIED

### 11. NOTE TO CDC STAFF:  RECOMMENDATIONS AND REQUESTS

☒ 3.  the panel's belief that the prisoner's current mental health is an
important issue.  In the new full evaluation, the panel requests that the
clinician specifically address the following:

☒ a.  the prisoner's violence potential in the free community;

☒ b.  the significance of alcohol/drugs as it relates to the commitment
offense and an estimate of the prisoner's ability to refrain from
use/abuse of same when released;

☐ c.  the prisoner's psycho-sexual problems;

☒ d.  the extent to which the prisoner has explored the commitment
offense and come to terms with the underlying causes;
*Insight and victim empact*

☐ e.  the need for further therapy programs while incarcerated.

☐ f.  other: _____

_____

_____

☐ 4.  the panel's belief that the prisoner has deteriorated psychologically and
there appears to be a need for treatment.  The panel bases this conclusion
upon

_____

_____

_____

_____

☐ B.  (Other requests to CDC staff): _____  *S. Fisher BPT*
*7/1/04*

_____

*Hernandez*                    D. 33089

53

1      CALIFORNIA BOARD OF PRISON TERMS

2            D E C I S I O N

3          DEPUTY COMMISSIONER LOPEZ:  Okay, we're back

4      on record.

5          PRESIDING COMMISSIONER FISHER:  All right.

6      I want to note for the record that everyone who

7      was previously in the room and identified

8      themselves, has returned to the room.  And, Mr.

9      Hernandez, I'm going to read the decision into the

10     record.  This is going to be a one-year denial,

11     but I want to tell you that we really struggled

12     over this, and we just thought that there were

13     some lose ends that needed to be addressed.

14     You're doing a really good job and I don't want

15     you to be discouraged by this.  You have to

16     understand that if a Panel does a finding of

17     suitability that everything is going to be gone

18     over with a fine tooth comb and we feel that there

19     are some issues that you need to address over the

20     next year.  In concluding that you're not suitable

21     for parole, we reviewed all of the information

22     received from the public and relied on the

23     following circumstances in deciding that we felt

24     that you would pose an unreasonable risk of danger

25     to society or a threat to public safety if

26     released from prison.  And obviously the

27     HECTOR HERNANDEZ  D-33689  DECISION PAGE 1  7/1/04

54

1    commitment offense was one of the first things
2    that we looked at.  This was a very callous
3    offense and the motive for this crime was very
4    trivial and was related to a drive-by.  This was a
5    situation where you went to this man's home and
6    you went there armed.  You stated previously that
7    you thought that he'd been pinching your buys when
8    you were buying heroin from him before.  So, you
9    know, there's certainly an indication that you
10   went there with the gun because of that belief
11   that he'd been pinching your buys, and you said
12   that you believed that he had a gun, but all of
13   the witnesses said that there was only one shot.
14   So this man was shot in his own home with
15   apparently no provocation on his part, you were
16   not shot at according to witnesses.  And then
17   following the crime you disposed of your weapon
18   and stated that you believed that he had shot
19   first, but you also disposed of the gun that was
20   owned by him so there was no way for the police or
21   anyone else to determine that his weapon had or
22   had not been shot.  So the evidence was disposed
23   of and there was no way to really check your
24   story.  During the commission of this crime, there
25   were several other people around who were exposed
26   to danger who could have been shot accidentally
27   HECTOR HERNANDEZ  D-33689  DECISION PAGE 2  7/1/04

55

```
 1   because of the fact that you were shooting at the
 2   victim, Mr. Bustos.  The inmate certainly has an
 3   escalating pattern of criminal conduct.  He has
 4   quite a lengthy history beginning as a juvenile
 5   back in 1970.  He has failed to profit from
 6   society's previous attempts to correct his
 7   criminality and such attempts include Juvenile
 8   Hall, wardship, juvenile probation, and even a
 9   stay in federal prison.  His unstable social
10   history includes the prior criminality that I
11   mentioned as well as heroin addiction.  You have
12   programmed well though.  You have done a good job
13   with your program.  And apparently you have not
14   only taken advantage of the opportunities that
15   have been available to you, but you've also taken
16   the opportunity to help other people with their
17   programming, and I want to commend you for that.
18   We both feel that you've done a good job of using
19   the situation that you find yourself in to the
20   best of your ability.  He has had 11 128
21   counseling chronos since his incarceration for
22   this commitment offense, the last one was in 2000.
23   There have been seven 115s and the last one was
24   back in 1999.  There are some concerns with some
25   of the statements in the psychiatric evaluation.
26   Although parts of it are quite supportive, there
27   HECTOR HERNANDEZ  D-33689  DECISION PAGE 3  7/1/04
```

56

1    are other parts that are open to question, and we

2    are going to be ordering a new psych report.  The

3    first thing that we want to note and ask to have

4    the new psych report evaluate is that in this

5    psych report under current diagnostic impressions

6    under Axis II it notes Antisocial Personality

7    Disorder Improving.  And under review of life

8    crime it says that the inmate demonstrated limited

9    empathy for the victim whom he related to as a

10   drug dealer and somewhat more empathy for the

11   victim's family, although it does state that he

12   appears to be penitent for his crimes.  The

13   prisoner has parole plans.  He has offers of

14   residence and support.  However, he doesn't have

15   -- doesn't have really viable employment plans.

16   You certainly don't need to have a job in order to

17   get a parole date, but you do need to have

18   workable plans, and I'm going to suggest to you

19   that you look in the area of your residence that

20   you would parole out to, get hold of a phone book

21   for that area and write some letters to businesses

22   there where you might be able to send resumes and

23   potentially get an offer of a job fairly quickly

24   after being paroled.  It also wouldn't hurt for

25   you to go ahead and have your friend look into

26   some of the residential programs that you talked

27   HECTOR HERNANDEZ  D-33689  DECISION PAGE 4  7/1/04

57

```
 1   about and get some letters back from them stating
 2   what the program is and that it would be
 3   acceptable to them to have you parole into one of
 4   their programs.  Then you need to get some solid
 5   plans for supporting yourself.  And I commend you
 6   that you want to go out and do the peer support
 7   and the peer counseling kinds of things, but I
 8   have to tell you that it's going to be tough to
 9   find those kinds of positions out there where you
10   can get paid and support yourself.  So you need to
11   have day job, you need to have something in mind
12   that you can do to pay the bills in order to be
13   able to do the volunteer work that you want to do.
14   The Hearing Panel notes that in response to 3042
15   Notices, the District Attorney of Fresno County
16   indicated an opposition to a finding of
17   suitability at this time.  And we do want to
18   commend you for the work that you've done here.
19   Once again you've done a good job with your
20   programming.  You've completed graphic arts,
21   you've completed mill and cabinet.  You got your
22   GED back in '92.  You've been -- you were involved
23   in the Inmate Peer Education program back in '91,
24   and you've been disciplinary free since '99.  Once
25   again, there are just some things that you need to
26   dot the I's and cross the T's on and you just need
27   HECTOR HERNANDEZ  D-33689  DECISION PAGE 5  7/1/04
```

58

1   to continue doing what you're doing as far as your

2   program goes. Currently the positive aspects do

3   not outweigh the factors of unsuitability. The

4   Panel recommends that you continue to upgrade

5   vocationally and educationally anyway you can just

6   because it's a good thing for you to do. Continue

7   to participate in self-help, certainly you know

8   that the NA program, the substance abuse programs,

9   those kinds of things are lifetime commitments.

10  And cooperate in the completion of a new psych

11  report. And that completes the reading of the

12  decision. Do you have any comments, Commissioner?

13        DEPUTY COMMISSIONER LOPEZ:  No.  I wish you

14  luck, sir.

15        PRESIDING COMMISSIONER FISHER:  Good luck,

16  sir.  That completes the hearing --

17        ATTORNEY TARDIFF:  (Inaudible).

18        PRESIDING COMMISSIONER FISHER:  Yes, I'm

19  sorry it's sitting right here.  That completes the

20  hearing.  It's approximately 9:20.

21                    --oOo--

22

23  PAROLE DENIED ONE YEAR

24  THIS DECISION WILL BE FINAL ON:     OCT 29 2004        .

25  YOU WILL BE PROMPTLY NOTIFIED IF, PRIOR TO THAT

26  DATE, THE DECISION IS MODIFIED.

27  HECTOR HERNANDEZ  D-33689  DECISION PAGE 6  7/1/04

59

## CERTIFICATE AND

## DECLARATION OF TRANSCRIBER

I, WENDY THOMAS, a duly designated transcriber, CAPITOL ELECTRONIC REPORTING, do hereby declare and certify under penalty of perjury that I have transcribed tape(s) which total one in number and cover a total of pages numbered 1 through 58, and which recording was duly recorded at CORRECTIONAL TRAINING FACILITY at SOLEDAD, CALIFORNIA in the matter of the SUBSEQUENT PAROLE CONSIDERATION HEARING of HECTOR HERNANDEZ, CDC No. D-33689, on JULY 1, 2004 and that the foregoing pages constitute a true, complete, and accurate transcription of the aforementioned tape(s) to the best of my ability.

I hereby certify that I am a disinterested party in the above-captioned matter and have no interest in the outcome of the hearing.

Dated July 20, 2004 at Sacramento County, California.

_Wendy Thomas_
Wendy Thomas
Transcriber
CAPITOL ELECTRONIC REPORTING

# EXHIBIT "21"

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS AND REHABILITATION                    ARNOLD SCHWARZENEGGER, GOVERNOR

**BOARD OF PAROLE HEARINGS**
DECISION PROCESSING AND SCHEDULING UNIT

P.O. Box 4036
Sacramento, CA 95812-4036



October 20, 2006


Hector Hernandez D-33689
Correctional Training Facility
Highway 101N
Soledad, CA 93960

Dear Mr. Hernandez:

Your parole consideration hearing was conducted on June 8, 2006. Decision Review is completed and the final decision date of your hearing is October 6, 2006. The decision has been approved by the California Department of Corrections and Rehabilitation, Board of Parole Hearings.

The decision finding you suitable for parole may be subject to review by the Governor.

Attached is the last "Decision Page" with the stamped final date and a front cover sheet to your transcript. Please incorporate these pages in your copy of the hearing transcript.


Sincerely,

SANDRA D. MACIEL
Chief, Decision Processing
and Scheduling Unit


cc:    Institution Records Office

Enclosure

Pk

that report, he stated the following: "In order to make a statement that would give some clarity and resolution, I would practically have to answer the question of, "What is the meaning of Life and Death!" As difficult and at times overwhelming as this task is, it is what I've endeavored to do.

I could say my opponent (who became the victim) had been stealing from me and threatening my life, and that the actual gun shot which took his life was fired in self-defense. All of which is true. Yet in order to reach a greater and healthier understanding, I would first have to admit responsibility, which is what I've done. A few of the areas I've addressed (in order to gain a deeper understanding of the crime I committed) include my childhood, peer environment and spirituality. Only after extensive self-examination in those areas have I reached the conclusion that I needed a major adjustment in the way I relate to others, which entails developing a greater integrity for morals and ethics. This is an ongoing process with continual room for improvement. May it suffice self-examination in those areas have I reached to the conclusion that I needed a major adjustment in the way I relate to others, which entails developing a greater integrity for morals and ethics. This is an ongoing process with continual room for improvement. May it suffice to say that this journey of recovery and healing is something I'll be doing for the rest of my life."

3. Aggravating/Mitigating Circumstances:

   a. Aggravating Factors:

      1. The victim, was particularly vulnerable in that the prisoner entered the victim's home and shot him while he was lying on his couch and awakened by the prisoner.
      2. The prisoner had a history of criminal behavior for which the term is not being enhanced under BPT Rule 2286.
      3. The prisoner engaged in other reliably documented criminal conduct (attempted drug purchase) which was an integral part of the crime for which he is currently committed.
      4. The inmate was on probation at the time the crime was committed.
      5. During the commission of the crime, the prisoner had a clear opportunity to cease but instead continued.
      6. The manner in which the crime was committed created a potential for serious injury to persons other than the victim of the crime.

   b. Mitigating Factors:

HERNANDEZ, HECTOR          D-33689                    CTF-SOLEDAD              FEB/2004

1.    The prisoner participated in the crime under partially excusable circumstances (heroin inebriation) that do not amount to a legal defense..

B.    <u>Multiple Crime(s)</u>: N/A.

   a.    <u>Summary of Crime</u>: N/A.

   b.    <u>Prisoner's Version</u>: N/A.

## II.    PRECONVICTION FACTORS:

A.    <u>Juvenile Record</u>:

7/31/70    Burglarized Doctor's Office in Fresno, Removed $80.00 cash Disposition: Placed on informal probation.

10/5/70    Burglary- Entered a residence, removed 9 different types of weapons, a Polaroid camera, and a radio. Disposition: Placed on probation without wardship until 5/23/71. Dismissed 5/19/71.

4/22/71    Burglary – "S" entered Mission Baptist Church and removed $10.50. Disposition: probation ordered; then released to parents.

9/23/71    Petty Theft "S" and accomplice stole $190.00 from Luallen's 76 Service Station. Disposition: Remain ward of the court, pay restitution, work program Sanger PD.

6/29/72    Burglary. Disposition: Commit to Youth Center; detain Juvenile Hall pending transfer.

7/18/72    Defendant and accomplice were found inside the closed business of Padillas Market. Disposition: Remain ward of Court on probation. Commit to Youth Center suspended.

B.    <u>Adult Convictions and Arrests</u>:

1/10/80    Carrying a concealed weapon, carrying a loaded weapon, receiving stolen property. Dispo: no disposition.

11/12/80    Burglary. Dispo: No dispo.

11/14/80      Burglary. Dispo: No dispo.

10/6/81      Harboring a Federal Fugitive. Dispo: Convicted sentenced to 358 days in a Federal Correctional Institute.

8/25/82      Sell or Transport Marijuana, Burglary, Transport/Sell Controlled Substance. Dispo: All charges dismissed.

10/26/84      Under the Influence of Controlled Substance Obstruct/Resist Arrest. Dispo: No dispo.

C.     Personal Factors: Hernandez was born on 2/28/59 in Fresno, California to Guadalupe Hernandez and Dolores Mejia. The defendant was raised in Fresno County. He is one of eight children. His brother, Guadalupe Hernandez Jr. was also convicted of murder in an unrelated case. His brother is currently housed at California State Prison, Corcoran. Hernandez completed the tenth grade at Sanger High School in 1975 and passed his General Education Development (GED) test on 5/4/92. He also indicated he completed vocational training in welding at Valley Technical and Trade School in Fresno. Hernandez married Janice Ramirez on 10/3/82 in San Bernardino. Four children were born to this union. The four children range in age from 12 to 17 years of age. The marriage is no longer intact. His work history consists of agriculture related labor. He admitted being a daily user of heroin, using between twenty and forty dollars worth of heroin everyday. He also admitted to being a regular consumer of beer, as well as sniffing glue and paint, and using PCP, LSD and cocaine occasionally. While Hernandez was initially incarcerated in the county jail, he was prescribed Synaquat. Hernandez has not received any psychiatric treatment or medication since coming into the California Department of Corrections.

## III.    POSTCONVICTION FACTORS:

A.     Special Programming/Accommodations: None.

B.     Custody History: Hernandez was received at the California Medical Facility for his Initial Processing. He transferred and was received at Folsom – IV on 7/29/86. He was subsequently transferred and received at CTF on 10/7/03. On 10/14/86, he received his Initial Classification and was assigned Close B custody and released to the general population. He was assigned to the PIA Textile program as machine operator and earning satisfactory work grades. On 1/26/89, he transferred to CMC as a medical case and return awaiting medical treatment. Hernandez returned to CTF from CMC-East on 4/12/89. On 1/22/90, during Annual Program Review, his custody was reduced to Medium A. He was assigned to the CTF-Central Facility Boiler Room. He was unassigned on 9/3/91,

non-adversely from his Boiler Room assignment. He was reassigned to the Lunch Box Crew on 10/19/91. On 4/22/93, Hernandez transferred to North Kern State Prison under Medium A custody. He was assigned to the Vocational Mill and Cabinet and Teacher's Aide position. On 12/21/95, Hernandez was reassigned to a clerk's position. On 9/16/97, he was received at the CTF. He received his Initial Classification and custody was established at Medium A custody and he was released to the general population. While at CTF, Hernandez work assignments included Textiles, Vocational Graphics and Print. He completed the Vocational Graphic and Print Program per Instructor K. Eng. However, the document was not in the Central File for review. He transferred to East Dorm for housing and job placement. He was assigned to the Landscape and Painter's position on 4/11/03. However, there are no CDC 101 noting the prisoner's work performance during that period. Hernandez is currently assigned to the PIA Wood Furniture Factory (Assembler Shop). His Work Supervisor's record dated 7/1/03 reflect satisfactory work grades.

C.   **Therapy and Self-Help Activities:** Received a CDC 128-B dated 2/18/83 for his participation in NA. Hernandez was voted as Vice Chairman at this time. He received three (3) CDC 128-B's dated 2/18/03, 4/20/03 and 6/13/03 for his attendance in NA.

D.   **Disciplinary History:** None during this review period. However, Hernandez has a total of seven (7) CDC 115's and eleven (11) CDC 128-A's. [See attached Disciplinary Sheet]

E.   **Other:** On 2/20/03, Hernandez appeared before the Board of Prison Terms for his Subsequent Parole Consideration Hearing #4. The Board denied parole for (1) year and recommended that he remain disciplinary free and upgrade educationally (cell study) and participate in self-help and therapy programs.

IV.   **FUTURE PLANS:**

A.   **Residence:** Hernandez plans to live with his mother Lolita Hernandez, located at 842 Edgar Street, Sanger, California 93657. Telephone #: (559) 875-3482. There are letters of support from his mother, who will provide a place of residence. She will also provide assistance with food and clothing plus transportation. See support letters in the Miscellaneous section of the Central File.

B.   **Employment:** He indicates that his main desire is to work as a counselor in recovery with youth/drug offenders and violence intervention. Hernandez did not offer any letters of interest from potential employers indicating job offers at this time .

C.   <u>Assessment:</u> Parole plans have been reviewed and discussed with Hernandez. He has a family support who will provide him a place to live. However, he did not submit any potential job offers from employers in the county where he plans to parole. His parole plans do not appear solid at this time.

V.   <u>USINS STATUS:</u> N/A.

VI.   <u>SUMMARY:</u>

A.   Considering the commitment offense, prior record and prison adjustment, this writer believes that the prisoner would probably pose a low degree of threat to the public at this time, if released from prison. This assessment of dangerousness is based on the prisoner's free disciplinary history for ten years, while in a controlled setting. However, his disciplinary history reflects seven CDC 115's and eleven counseling chronos. During this review period, Hernandez completed the Vocational Graphic Arts and Printing Program, according to his Instructor K. Eng. However, the certificate or document is not in the Central File for review at the present time. The prisoner was assigned to the East Dorm landscape/paint position on 4/11/03 to 5/17/03. There are no work supervisor reports noting his work performance. He was reassigned to the PIA Wood Furniture Factory as an assembler and earned satisfactory grades. He participated in three hours of video instruction and discussion of issues related to successfully re-engaging into society per a CDC 128-B dated 11/7/03. He participated in NA meetings per CDC 128-B dated 2/18/03 and during this time was voted as inmate vice-president or chairperson; attended meetings per CDC 128-B's dated 4/2/03, and 6/13/03. However, there are no documents that reflect any credited educational upgrading experience (cell study) as recommended by the Board, and no indication of psychiatric treatment this period. The prisoner's parole plans were discussed. He indicates that he has full support for his mother who would provide financial assistance and a place to live. However, he did not submit any potential job offers from employers in a county where he plans to parole. In discussing the life crime, the prisoner states that he feels bad about the victim and what he has done. He states not only that he killed the victim, he also killed the victim's family and the hope of his children. He indicates that he can't give the victim's life back and tries to find forgiveness within himself. The prisoner indicates involvement with his religious studies have helped him to understand and learned the wisdom of making good sound decisions by abstaining from drugs and alcohol. He indicates that he wants to give to others what he has learned about drugs, alcohol abuse and prevent them of falling into the same "pit lifestyle of drugs and alcohol". He states that he grew up in a rough community, which played a substantial role in leading to the crime. He states that he has paid his debt to society. He indicates that he is determined to live a lifestyle of sobriety

and spiritual peace. He finally states, that he is committed to avoid drugs and alcohol and any negative influences that would impede his freedom again.

B.    Prior to release, the prisoner could benefit from by remaining disciplinary free and upgrade educationally (cell study) and participate in self-help and therapy programs.

C.    This report is based upon an interview with the prisoner on 12/3/03 lasting approximately (1) hour and a complete review of the Central File lasting (3) hours.

D.    Prisoner was afforded an opportunity to review his Central File, per the Olson Decision, on 12/3/03.

E.    No accommodation was required per the Armstrong vs. Davis BPT Parole Proceedings Remedial Plan for effective communication.

HERNANDEZ, HECTOR        D-33689                CTF-SOLEDAD            FEB/2004

BOARD OF PRISON TERMS                                                                        STATE OF CALIFORNIA
LIFE PRISONER: POSTCONVICTION PROGRESS REPORT

☐   DOCUMENTATION HEARING

☒   PAROLE CONSIDERATION HEARING

☐   PROGRESS HEARING

INSTRUCTIONS
    TO CDC STAFF: DOCUMENT EACH 12-MONTH PERIOD FROM THE DATE THE LIFE TERM STARTS TO PRESENT
    TO BPT STAFF: FOR EACH 12-MONTH INCREMENT APPLY THE GUIDELINES UNDER WHICH THE PAROLE DATE WAS ORIGINALLY
        ESTABLISHED, ie., 0-2 MONTHS FOR PBR AND 0-4 MONTHS FOR BPT. SEE BPT §§2290 - 2292, 2410 AND 2439.

| STCONVICTION CREDIT | | | REASONS |
|---|---|---|---|
| YEAR | BPT | PBR | |
| 1/29/03 to 12/15/03 (Present) | | | **PLACEMENT:** Remained at the Correctional Training Facility (CTF) and housed in the general population. 'S' transferred to the CTF East Dorm on 4/1/03. **CUSTODY:** Medium A. **VOC. TRAINING:** Assigned to the Vocational Graphic Arts and Printing program. 'S' completed the program per Instructor K. Eng during the month of April 2003, however, the certificate or document is not in the Central File noting completion of the course. **ACADEMICS:** None during this review period. **WORK RECORD:** Assigned to the East Dorm Landscape/Painter position on 4/11/03 to 5/17/03. However, there are no CDC 101's in the Central File noting 'S' work performance. On 5/17/03, 'S' was assigned to the PIA Wood Furniture Factory as a finisher. He was reassigned on 6/11/03 to the Assembly shop. He earned satisfactory work grades per a CDC 101 dated 7/1/03. He received additional training per a CDC 128B dated 5/17/03, on CAL/OSHA Hazardous Communication Standard, "Right to Know", and received additional training which included Safe Handling and Disposal of Hazardous Materials and Waste. 'S' received five (5) CDC 128-B's Training Certification chrono's on the proper operation and safety procedures of the Air, Eyes and Sound equipment, MSD (Material Safety Data) "Right to Know" information, Back and General Safety and Lockout/Tagout equipment. He received six (6) additional CDC 128-B's Training Certification chrono's dated 7/8/03 on the proper operation and safety procedures of the Abrasive Edge Sander equipment, Ladders, Portable Power and Hand Tools, Fire Safety and Portable Hand Router equipment. Participated in a three (3) hours of Video Instruction and Discussion of issues related to successfully re-engaging into society per a CDC 128-B dated 11/7/03. **GROUP ACTIVITIES:** Received a CDC 128-B dated 2/18/03 for his participation in NA. 'S' was voted as Vice Chairman at this time. He received three (3) CDC 128-B's dated 2/18/03, 4/2/03 and 6/13/03 for his attendance in NA. **PSYCH. TREATMENT:** None during this period. **PRISON BEHAVIOR:** None during this period. **OTHER:** N/A. |

| CORRECTIONAL COUNSELOR'S SIGNATURE | | DATE |
|---|---|---|
| *H. Fenton* | | *3/4/04* |

| HERNANDEZ, HECTOR | D-33689 | CTF-SOLEDAD | FEB/2004 |
|---|---|---|---|

DISCIPLINARY SHEET

<u>CDC 128A's:</u>

6/14/88        CTF    Absence for Job.

11/6/88        CTF    Out of Bounds.

1/17/89        CTF    Excessive Contact with Visitor.

9/29/89        CTF    Unauthorized Possession.

3/5/90         CTF    Destruction of State Property.

3/26/90        CTF    Unauthorized Absence

4/14/92        CTF    Unauthorized Absence.

6/18/92        CTF    Stealing State Property.

6/20/92        CTF    Stealing State Property.

3/25/94        CTF    Excessive Contact with Visitor.

6/17/00        CTF    Disregarding Yard Call Procedures.

<u>CDC 115's:</u>

11/18/90       CTF    3004    Disrespect Towards Staff. Guilty: Counseled.

12/18/91       CTF    3006    Possession of Utility Knife Blade (Dangerous Contraband). Guilty:
                               30 days LOC.

12/18/91       CTF    3016    Possession of Inmate Manufactured Alcohol. Guilty: 90 days LOC.

9/2/92         CTF    3053    Stealing State Food. Guilty: 20 Hours Extra Duty.

9/10/92        CTF    3191B   Out of Possession of Non-Expandable Personal Property. Guilty:
                               40 Hours Extra Duty.

10/10/92       CTF    3053    Misuse (Stealing) State Food. Guilty: 20 Hours Duty.

2/10/99        CTF    3062    Hair Exceeding 3 Inches in Length. Guilty: 20 Hours Extra Duty.

HERNANDEZ, HECTOR        D-33689              CTF-SOLEDAD           FEB/2004

LIFE PRISONER EVALUATION REPORT
SUBSEQUENT PAROLE CONSIDERATION HEARING
FEBRUARY 2004 CALENDAR


_____        3-4-04
H. Staton                      Date
Correctional Counselor I


_____        3/10/04
W. Stewart                     Date
Correctional Counselor II


_____        3/10/04
J. L. Clancy                   Date
Facility Captain


_____        3-11-04
D.S. Levorse                   Date
Classification and Parole Representative


HERNANDEZ, HECTOR          D33689          CTF-SOLEDAD
BPT 1004 (REV 7/86)

BOARD OF PRISON TERMS                                                          STATE OF CALIFORNIA
LIFE PRISONER: POSTCONVICTION PROGRESS REPORT

☐ DOCUMENTATION HEARING

☒ PAROLE CONSIDERATION HEARING          *C-file copy*          **ADDENDUM**

☐ PROGRESS HEARING

INSTRUCTIONS
    TO CDC STAFF:  DOCUMENT EACH 12-MONTH PERIOD FROM THE DATE THE LIFE TERM STARTS TO PRESENT
    TO BPT STAFF:  FOR EACH 12-MONTH INCREMENT APPLY THE GUIDELINES UNDER WHICH THE PAROLE DATE WAS ORIGINALLY
        ESTABLISHED, ie., 0-2 MONTHS FOR PBR AND 0-4 MONTHS FOR BPT. SEE BPT §§2290 - 2292, 2410 AND 2439.

| POSTCONVICTION CREDIT | | | |
|---|---|---|---|
| YEAR | BPT | PBR | REASONS |
| 4/8/05 to 5/4/06 (Present) | | | **PLACEMENT**: CTF II and housed in the general population. **CUSTODY**: Medium A. **VOC. TRAINING**: None noted during this review period. **ACADEMICS**: None noted during this review period. **WORK RECORD**: PIA Wood Furniture Factory Assembly Shop. He earned satisfactory to above average work grades per his work supervisor's reports (CDC 101's) dated 6/1/05 and 9/1/05. He received a 128B dated 12/9/05 for participating in two (2) hours of video instruction and discussion related to community re-entry. This program is provided through the PIA Inmate Employability Program. **GROUP ACTIVITIES**: He participated in Narcotics Anonymous group meetings per 128Bs dated 6/28/05, 1/21/05, 1/6/06, and 4/3/06. He attended Narcotics Anonymous meetings and completed 10 weeks of Hepatitis "C" group meetings with staff psychologist C. Brown Ph.D., per 128- C dated 8/25/05. Hernandez received a letter of accommodation from the Buddahist Meditation and Ethical Practices dated 6/6/05. **PSYCH. TREATMENT**: None noted during this review period. **PRISON BEHAVIOR**: None noted during this review period. **OTHER**: On 4/20/06, Inmate Hernandez was given the opportunity to review his Central File pursuant to the Olson Decision per 128B. |

CORRECTIONAL COUNSELOR'S SIGNATURE          DATE
*Soulton A-CC1*                              5-17-06

HERNANDEZ          D33689          CTF-SOLEDAD

Sent to inmate on 5-25-06

BPT 1004 (REV 7/86)

LIFE PRISONER: POSTCONVICTION PROGRESS REPORT                    **ADDENDUM**

_____          5-17-06
H. Staten                                Date
Correctional Counselor I


_____          5-22-06
R. Leach                                 Date
Correctional Counselor II


_____          5-22-06
R. Pope                                  Date
Facility Captain


_____          5-23-06
D.S. Levorse                             Date
Classification and Parole Representative


HERNANDEZ                    D33689                    CTF-SOLEDAD

BPT 1004 (REV 7/86)

**A T T A C H M E N T    A**

1    HC06CRWR678189-GDH-cm

FILED

JAN 1 1 2007

SUPERIOR COURT OF CALIFORNIA
COUNTY OF FRESNO

By_____DEPUTY

8            SUPERIOR COURT OF CALIFORNIA, COUNTY OF FRESNO

9                          CENTRAL DIVISION

11  In re                        )    No. 06CRWR678189      Dept. 71
                                 )
12  HECTOR HERNANDEZ,            )
                                 )         ORDER
13            Petitioner         )
                                 )
14  On Habeas Corpus.            )
   _____)

16          Having considered the petition for writ of habeas corpus
17  filed on December 18, 2006, the court finds that existing evidence
18  does not warrant the requested relief.

19          Petitioner challenges the Governor's reversal of the
20  Parole Board's decision to grant his parole.  However, whether or
21  not this court agrees with the Governor's conclusion, his decision
22  may not be overturned so long as it is supported by "some
23  evidence." (See, e.g., *In re Fuentes* (2005) 135 Cal.App.4th 152,
24  *In re Shaputis* (2005) 135 Cal.App.4th 217, *In re Lowe* (6th Dist.
25  2005) 130 Cal.App.4th 1405, *Rosas v. Nielsen* (9th Cir. 2005) 428
26  F.3d 1229, *In re DeLuna* (2005) 126 Cal.App.4th 585, *In re Scott*
27  (2005) 119 Cal.App.4th 871, *In re Van Houten* (2004) 116 Cal.App.4th
28  339, *Biggs v. Terhune* (9th Cir. 2003) 334 F.3d 910, and *In re*

1   *Rosenkrantz* (2002) 29 Cal.4[th] 616.)   To the extent that petitioner
2   asks the court to apply a different standard, the court must
3   follow the holdings of the Supreme Court and Courts of Appeal,
4   which require application of the "some evidence" standard of
5   review.

6           Here, the court finds that there was at least some
7   evidence that releasing petitioner could pose an unreasonable risk
8   to society or a threat to public safety, because of the violent
9   nature of the original offense, and the escalating pattern of
10  petitioner's criminal conduct before the murder, as well as his
11  multiple disciplinary infractions during his incarceration.

12          According to the record, petitioner was convicted of
13  second-degree murder and sentenced to 15 years to life, plus a
14  two-year enhancement for use of a firearm.   The Board of Parole
15  Hearings granted petitioner's parole on June 8, 2006, after having
16  previously denied him parole seven times. (Exhibit 1 to petition.)
17  However, the Governor reversed the Board's decision on November 2,
18  2006.   (Exhibit 3 to petition.)

19          The Governor relied largely on the seriousness of the
20  underlying offense. (Exhibit 3, p. 2.)   The Governor noted that
21  petitioner shot Sylvestre Bustos to death while attempting to
22  purchase heroin. (*Id.* at p. 1.)   Petitioner went to Bustos' home
23  to buy heroin. (*Ibid.*)   Petitioner spoke to Bustos' roommate,
24  Enrique Casias, through the window. (*Ibid.*)   Casias agreed to
25  sell Bustos heroin for $20. (*Ibid.*)   Petitioner paid the money
26  and Casias went to retrieve the heroin from Bustos' boots.
27  (*Ibid.*) Bustos was asleep on the couch with a gun tucked in his
28  waistband. (*Ibid.*)   When Casias went to get the heroin, petitioner

COUNTY OF FRESNO
Fresno, CA

HC06CRWR678189-GDH

-2-

1  forced his way into the house armed with a sawed-off shotgun.
2  (*Ibid.*)  He demanded Bustos' gun and the heroin.  (*Ibid.*)  When
3  Bustos rose from the couch, petitioner shot him one time from a
4  distance of about seven or eight feet. (*Ibid.*)   He then took
5  Bustos' gun and fled the scene.  (*Ibid.*)

6          The facts cited by the Governor tend to support the
7  conclusion that the murder was committed in a callous manner.  The
8  petitioner shot Bustos at close range with a sawed-off shotgun
9  shortly after Bustos had woken up.   There was some evidence of
10 premeditation, since petitioner went to Bustos' home armed with a
11 shotgun.  Although petitioner claims that he shot Bustos in self-
12 defense, two witnesses testified that they heard only one shot.
13 (Governor's review, p. 2.)   There was also evidence that the
14 petitioner created the dangerous situation by forcing his way into
15 Bustos'  residence  with  a  shotgun.  (*Ibid.*)  Therefore,  the
16 Governor's  skepticism  about  petitioner's  expressed  remorse  and
17 acceptance of responsibility has at least some basis in fact.

18         In  addition,  the  Governor  noted  that  during  his
19 incarceration, petitioner was disciplined seven times for rules
20 violations  involving  grooming  standards,  possession  of  inmate
21 manufactured  alcohol,  possession  of  a  utility  knife  blade,
22 stealing  food,  improperly  loaning  personal  property,  and
23 disrespecting staff.  (*Id.* at p. 1.)   He was also counseled 12
24 times for minor violations, most recently in 2000.  (*Ibid.*)   Thus,
25 petitioner's conduct while incarcerated was not discipline-free,
26 which tends to support the Governor's conclusion that petitioner
27 could still be a risk to public safety if released.

28         In addition, the Governor observed that petitioner had

COUNTY OF FRESNO
Fresno, CA

HC06CRWR678189-GDH

-3-

1  an extensive criminal record before he committed the murder,

2  including juvenile adjudications for armed robbery, assault with a

3  deadly weapon, burglary, petty theft, carrying a concealed

4  firearm, joyriding, and resisting an officer. (*Ibid.*)  He also had

5  convictions as an adult for discharging a firearm at an occupied

6  dwelling or vehicle, harboring a federal fugitive, being under the

7  influence of a controlled substance, and driving under the

8  influence of a controlled substance. (*Ibid.*)  He also admitted to

9  using heroin, cocaine, LSD, marijuana, and PCP. (*Ibid.*)  Thus,

10  the Governor believed that petitioner's criminal history prior to

11  the life offense weighed against his parole suitability. (*Ibid.*)

12         Under the circumstances, there was at least some

13  evidence that petitioner might still pose a risk if released,

14  based on the petitioner's criminal history, as well as the

15  seriousness of the life offense itself and the petitioner's

16  multiple disciplinary infractions while incarcerated.

17  Consequently, the court cannot overturn the Governor's decision.

18         The petition is denied.

19         DATED this   11th   day of January, 2007.

20

21         **GARY S. AUSTIN**

22         GARY ~~D. HOFF~~ Austin
            Judge of the Superior Court

23

24

25

26

27

28

PROOF OF SERVICE BY MAIL

CASE NAME: HERNANDEZ v. SCHWARZENEGGER

CASE NO. : To be assigned

   I, Hector Hernandez    , hereby declare that I am a party to the above titled action and am over the age of eighteen (18), and I did serve a true copy of the following:

   WRIT OF HABEAS CORPUS

by placing a true copy in an envelope with first class postage fully prepaid and said envelope surrendered to correctional staff at the Correctional Training Facility for delivery to the prison mail room and therefrom delivered to the local United States Post Office the next business day from which there is postal service between the place of mailing and the addressee:

   Jerry Brown
   Attorney General
   455 Golden Gate Ave., #11000
   San Francisco, CA 94102

   I declare under penalty of perjury that the foregoing is true and correct, doing so this _19th_ day of __February__, 2007, at Soledad, California.

                                       _Hector Hernandez_
                                       Hector Hernandez