# EXHIBIT 17

**ORIGINAL**

SUPREME COURT
FILED

S150805

MAR − 8 2007

Frederick K. Ohlrich Clerk

_____
Deputy

IN THE SUPREME COURT OF THE STATE OF CALIFORNIA

In the matter of:

    HECTOR HERNANDEZ

Petition for Review
on Habeas Corpus.
_____/

CASE NO.: _____

Court of Appeal No. F052267
Superior Court No. 06RWR678199
Fresno County

# PETITION FOR REVIEW

After Decision of the Court of Appeal, Fifth Appellate District

Denying the Petition   for Writ of Habeas Corpus on March 1, 2007

Hector Hernandez, D-33689
Correctional Training Facility
P.O. Box 689
Soledad, CA 93960

Petitioner in pro per

# IN THE SUPREME COURT OF THE STATE OF CALIFORNIA

In the matter of:

HECTOR HERNANDEZ

Petition for Review
on Habeas Corpus.

_____/

CASE NO.: _____

Court of Appeal No. F052267
Superior Court No. 06RWR678189
Fresno County

## PETITION FOR REVIEW

TO: THE HONORABLE RONALD M. GEORGE, CHIEF JUSTICE, AND THE HONORABLE
ASSOCIATE JUSTICES OF THE SUPREME COURT OF THE STATE OF CALIFORNIA:

COMES NOW Hector Hernandez (hereafter Petitioner) respectfully
requesting review following the decision of the Court of Appeal,
Fifth Appellate District, filed on March 1, 2007, and appended hereto
as ATTACHMENT A, denying Petitioner's writ of habeas corpus.

On May 13, 1986 Petitioner was convicted of one count of second
degree murder in violation of Penal Code § 187. On June 10, 1986
Petitioner was sentenced to an indeterminate term of 15 years to
life pursuant to Penal Code § 190, plus two years for the use of
a firearm.

### QUESTIONS FOR REVIEW

1. DOES RECENT UNITED STATES SUPREME COURT PRECEDENCE HOLDING
   THAT THE "SOME EVIDENCE" STANDARD OF PROOF VIOLATES DUE
   PROCESS IN ADMINISTRATIVE DECISIONS BY THE EXECUTIVE WHEN
   PRISONERS HAVE A LIBERTY INTEREST OVERTURN THIS COURT'S
   "SOME EVIDENCE" STANDARD OF PROOF FOR PAROLE BOARD
   DECISIONS?

2. WAS IT A VIOLATION OF PETITIONER'S RIGHT TO DUE PROCESS
   GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE
   UNITED STATES CONSTITUTION FOR GOVERNOR SCHWARZENEGGER
   TO REVERSE PETITIONER BEING FOUND SUITABLE FOR PAROLE BY
   THE BOARD OF PAROLE HEARINGS BASED ON IMMUTABLE FACTORS
   AND THERE IS NO EVIDENCE PETITIONER IS A CURRENT THREAT TO
   THE PUBLIC?

## NECESSITY FOR REVIEW

Petitioner submits that the issues raised by this petition for review are of statewide importance.  The first question settles a conflict between this Court's 2002 holding that the "some evidence" standard of proof applies to parole suitability hearings conducted by an administrative agency of the Executive, and the United States Supreme Court's holding in 2004 that administrative agency hearings by the Executive, where there is a "liberty interest" held by the prisoners, the standard of proof is "a preponderance of the evidence." The second question is a standard question that comes before this Court every day and is summarily denied, then in most instances, granted by a Federal District Court, suggesting that this Court is giving inadequate review on parole matters where the Executive can give an ipsi dixit finding and state courts will rubber stamp the finding.  This is especially true of the fourth and fifth appellate districts.

A prisoners freedom should not depend on which county or appellate district he or she is out of or how a judge feels on any given day.  The state court decisions in parole matters are so disparate in this state as to be arbitrary.  How is it that a writ challenging the Executive on a second degree murder like that of Rosenkrantz is granted after 19 years by one state court, then lesser egregious second degree murders with as much and more time invested are denied based on the offense?  The timing and gravity of the offense being the only statutory reason to deny parole (Penal Code § 3041(b)).

///////

STATEMENT OF THE CASE

This Court has before it the record of the appellate court, to include the writ of habeas corpus. Petitioner incorporates by reference the facts of the case as presented at pages 5 - 15 of the writ of habeas corpus.

ARGUMENTS

1. DOES RECENT UNITED STATES SUPREME COURT PRECEDENCE HOLDING THAT THE "SOME EVIDENCE" STANDARD OF PROOF VIOLATES DUE PROCESS IN ADMINISTRATIVE DECISIONS BY THE EXECUTIVE WHEN PRISONERS HAVE A LIBERTY INTEREST OVERTURN THIS COURT'S "SOME EVIDENCE" STANDARD OF PROOF FOR PAROLE BOARD DECISIONS?

Relying on Superintendent v. Hill (hereafter Hill) (1985) 472 U.S. 445, this Court held in In re Rosenkrantz (2002) 29 Cal.4th 616, 656, that due process requires the Governor's decision to reverse a finding of suitability for parole by the Board need only be supported by "some evidence." The "some evidence" standard being the standard of proof, for both the Governor and Board of Parole hearings (hereafter Board). Petitioner asks, logically: If the standard of proof is "some evidence," and the standard of judicial review is "some evidence," how then does the "some evidence" standard apply itself?

Hill, supra, was ambiguous as to when the "some evidence" standard applied -- at the administrative decision level, or upon judicial review? That ambiguity was clarified in the recent decision of Hamdi v. Rumsfeld (2004) 542 U.S. 507, 124 S.Ct. 2633, at 2651, the High Court holding that the "'[some evidence]' standard therefore is ill suited to the situation in which a habeas petitioner has received no prior proceedings before any tribunal and had no prior

opportunity to rebut the Executive's factual assertions before a neutral decisionmaker." The Executive is not a "neutral decisionmaker" (In re Dannenberg (2005) 34 Cal.4th 1061, 1105, dissenting opinion [the Executive has "little to gain and potentially much to lose by granting parole, and accordingly, the incentive to give only pro forma consideration to the parole decision is strong."

The Supreme Court, in Carey v. Musladin (2006) 549 U.S. ___ , 2006 DJDAR 16061, 16064 (DJDAR 12/12/06), plurality opinion, internal citations omitted:

"Virtually every one of the Court's opinions announcing a new application of a constitutional principle contains some explanatory language that is intended to provide guidance to lawyers and judges in future cases. It is quite wrong to invite state court judges to discount the importance of such guidance on the ground that it may not have been strictly necessary as an explanation of the Court's specific holding in the case. 'As a general rule, the principle of stare decisis directs us to adhere not only to the holdings of our prior cases, but also their explanations and the governing rules of law'; 'Although technically dicta, ... an important part of the Court's rationale for the result that it reache[s] is entitled to greater weight...'."

Hamdi v. Rumsfeld, supra, 542 U.S. 507, 124 S.Ct. 2633, is United States Supreme Court precedence clearing up the ambiguity in Hill that the standard of proof at the Executive level is "a preponderance of the evidence" and judicial review is then "some evidence," thus it is the law of the land (Yarborough v. Alvarado (2004) 541 U.S. 652, 664 [AEDPA does not require that state and federal courts to wait for nearly identical factual case before a legal rule must be applied]), nullifying In re Rosenkrantz, supra, 29 Cal. 616 on the holding of "some evidence" as a standard of proof.  This Court is bound by Hamdi.

Whether by "a preponderance of the evidence" or "some evidence," the Board's decision was arbitrary, being unsupported by any evidence Petitioner is a current threat to public safety.

2.  WAS IT A VIOLATION OF PETITIONER'S RIGHT TO DUE PROCESS
    GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE
    UNITED STATES CONSTITUTION FOR GOVERNOR SCHWARZENEGGER
    TO REVERSE PETITIONER BEING FOUND SUITABLE FOR PAROLE BY
    THE BOARD OF PAROLE HEARINGS BASED ON IMMUTABLE FACTORS
    AND THERE IS NO EVIDENCE PETITIONER IS A CURRENT THREAT TO
    THE PUBLIC?

A.  The Circumstances Of This Offense Is Not Evidence That Petitioner
    Is Currently A Threat To Public Safety 21 Years After The Fact.

    In denying the writ on this claim, the lower court cited several
appellate decisions using the "some evidence" standard of proof while
ignoring appellate decisions holding the commitment offense is not
reliable evidence over time.  There are too many conflicting opinions
resulting in arbitrary lower court decisions, and this Court is doing
nothing to bring the state into alignment.  See In re Lee (2006)
143 Cal.App.4th 1400, 49 Cal.Rptr.3d 931, 939; In re Elkins (2006)
144 Cal.App.4th 475, 50 Cal.Rptr.3d 503, 518; In re Scott II (2005)
133 Cal.App.4th 573, 595; In re Shaputis (2005) 135 Cal.App.4th 217,
231 [over time the commitment offense and preconviction factors lose
predictive value and are therefore unreliable evidence, being no
evidence]).

    As far as murders go, Petitioner's offense is not far removed
from the ordinary for drug related murders.  On August 15, 1985,
twenty-one years prior to the Governor reversing Petitioner's grant
of parole at Petitioner's SEVENTH parole suitability hearing,
Petitioner shot Sylvester Busots, a drug dealer.  Petitioner admits
he had prior felony convictions, but none for violence against another
person, thus lacking any significant prior history of violent crime
(Cal. Code Regs., tit. 15, § 2402(d)(6) [lack of significant history
of violent crime favors suitability for parole]).

Initially, which means in the beginning, first time, the commitment offense and preconviction behavior has validity, but over time, 15 to 20 years, prior behavior loses its reliability and is no longer evidence (Greenholtz v. Inmates of Nebraska Penal and Correctional Complex (hereafter Greenholtz) (1979) 442 U.S. 1, 10; Biggs v. Terhune (9th Cir. 2003) 334 F.3d 910, 916; Irons v. Warden of California State Prison-Solano (E.D. Cal. 2005) 358 F.Supp.2d 942; Martin v. Marshall (N.D. Cal. 2006) 431 F.Supp.2d 1038; Sanchez v. Marshall (C.D. Cal. 2006) 444 F.Supp.2d 1049; Rosenkrantz v. Marshall (C.D. Cal. 2006) 444 F.Supp.2d 1063).

## B.    Petitioner's Preconviction History of Drug Addiction Is Not Evidence of Current Threat to Public Safety.

Petitioner admits that at the time of the offense he was a drug addict, being addicted to heroin. Petitioner's offense was the result of him being a heroin addict; thus, the primary consideration in this case is Petitioner's current attitude towards drugs. It is uncontradicted that Petitioner's offense was directly related to his drug addiction, as were his prior nonviolent convictions. The forensic evidence provided by Dr. Macomber cogently shows that Petitioner does "not pose any more risk to the community at this time in his life than the average citizen. In fact probably poses less risk due to his growth, maturity and improvement. And found no significant (risk) factors." Reliance on Petitioner's former drug addiction related violence when there is no evidence he may relapse and present a current threat to public safety cannot justify a denial of parole (In re Shaputis, supra, 135 Cal.App.4th, at 231), Petitioner's heroin addiction being "a historic relic, so lacking

- 6 -

in any medical, psychological or behavioral evidentiary support that
it is arbitrary and capricious" (Id., at 232; see also In re Smith
(2003) 114 Cal.App.4th 343, 372; Biggs v. Terhune, supra, 334 F.3d,
at 916-917; Mickens-Thomas v. Vaughn (3rd Cir. 2004) 355 F.3d 294,
304-305).

## C. Petitioner's Ancient Nonviolent Disciplinary History Is Not Evidence of Current Threat to Public Safety.

Although early in Petitioner's incarceration he received several
disciplinary rules violation reports, none were for violence, and
the grooming standard rules violation report was to be expunged from
Petitioner's file.  The 2000 counseling chrono referred to by the
lower court was not a disciplinary rules violation, but merely a
counseling chrono (In re Smith (2003) 109 Cal.App.4th 489, 505
["'counseling chronos' document 'minor misconduct,' not discipline"]).

The last rules violation report Petitioner received was in 1990
for disrespecting staff.  "With respect to petitioner's disciplinary
violations, there is significant evidence in the record of
petitioner's institutional behavior, which reasonably mitigates the
effect that petitioner's past violations have on his unsuitability
for parole" (Martin v. Marshall (N.D. Cal. 2006) 431 F.Supp.2d 1038,
1042).  Martin's 20 rules violations, some for violence, to
Petitioner's 6 nonviolent disciplinary reports is significant.  There
is just no evidence Petitioner is a current threat to public safety
and use of the minor nonviolent disciplinary reports was arbitrary.
///////
///////

D. The Governor Violated Petitioner's Right to Due Process When He Reversed Petitioner's Grant of Parole on an Element of First Degree Murder.

The Governor arbitrarily found that "the murder involved some level of premeditation." All the evidence was presented to a jury of Petitioner's peers, and the jury rejected all elements of first degree murder, including "premeditation" in convicting Petitioner of second degree murder, acquitting Petitioner of first degree murder. Simply, any finding of "premeditation" must be found by a jury, not a politically motivated Governor (Cunningham v. California (2007) ___ U.S. ___; United States v. Booker (2005) 543 U.S. 220; Blakely v. Washington (2004) 542 U.S. 296; Apprendi v. New Jersey (2000) 530 U.S. 466 [element of offense or aggravating factors must be found by jury beyond a reasonable doubt standard of proof, not by a meager "some evidence" standard of proof by the Executive or a judge]). Although Petitioner was sentenced to 15 years to life pursuant to statute (Penal Code § 190), the statutory regulation structuring punishment for second degree murder is found at Cal. Code Regs., tit. 15, § 2403(c), with a maximum of 21 years. Petitioner has satisfied the statutory punishment for second degree murder; the Governor violating Petitioner's right due process and a trial by jury on every element of the offense, a Sixth Amendment violation as well as a due process violation.

AEDPA does not require that state and federal courts to wait for nearly identical factual case before a legal rule must be applied (Yarborough v. Alvarado, supra, 541 U.S. 652, 664), thereby, nullifying In re Rosenkrantz, supra, 29 Cal. 616 on the holding the Executive can elevate the degree of the conviction found by a jury

- 8 -

from second degree murder to first degree murder, denying parole on elements not found by a jury or admitted by the prisoner.

### CONCLUSION

The decision by the Governor to reverse Petitioner's grant of parole, and the state court decisions rubber stamping the Governor's decision, is unreasonable in light of the evidence and both federal and state law, violating clearly established federal law on standard of proof and elements of the offense being found by a jury, violating Petitioner's right to due process.

WHEREFORE, petition for review should be granted, or in the alternative, the Court issue an Order to Show Cause on the writ returnable to a lower court.

Date:  MARCh 5, 2007

Respectfully submitted,

Hector Hernandez

Hector Hernandez
Petitioner in pro per

# ATTACHMENT "A"

IN THE

# Court of Appeal of the State of California

IN AND FOR THE

# Fifth Appellate District



In re                                              F052267

   HECTOR HERNANDEZ,

        On Habeas Corpus.

BY THE COURT*:

    The "Petition For Writ Of Habeas Corpus," filed in this court on February 22, 2007, is denied.

_____ Acting P.J.

*Before Vartabedian, Acting P.J., Gomes, J., and Dawson, J.

## PROOF OF SERVICE BY MAIL

CASE NAME:  HERNANDEZ v. SCHWARZENEGGER

CASE NO. :  Fifth App.Ct. No. F052267

I, _____Hector Hernandez_____, hereby declare that I am a party

to the above titled action and am over the age of eighteen (18),

and I did serve a true copy of the following:

PETITION FOR REVIEW

by placing a true copy in an envelope with first class postage fully

prepaid and said envelope surrendered to correctional staff at the

Correctional Training Facility for delivery to the prison mail room

and therefrom delivered to the local United States Post Office the

next business day from which there is postal service between the

place of mailing and the addressee:

Office of Attorney General          Clerk of the Court
455 Golden Gate Ave., #11000        Appellate Court of California
San Francisco, CA 94102             Fifth Appellate District
                                    2525 Capitol Street
        -                           Fresno, CA 93721

I declare under penalty of perjury that the foregoing is true

and correct, doing so this __6th__ day of __March_____, 2007, at

Soledad, California.

_Hector Hernandez_

# EXHIBIT 18

Court of Appeal, Fifth Appellate District - No. F052267
S150805



# IN THE SUPREME COURT OF CALIFORNIA

### En Banc

In re HECTOR HERNANDEZ on Habeas Corpus

The petition for review is denied.

SUPREME COURT
**FILED**

MAY − **9** 2007

Frederick K. Ohlrich Clerk

_____
Deputy

GEORGE
_____
Chief Justice

W2
SS

# EXHIBIT 19

Westlaw.

--- F.3d ----                                                                    Page 1

--- F.3d ----, 2007 WL 1892862 (C.A.9 (Nev.)), 07 Cal. Daily Op. Serv. 7919
**(Cite as: --- F.3d ----)**

**H**
Foote v. Del Papa
C.A.9 (Nev.),2007.

United States Court of Appeals,Ninth Circuit.
Ricky L. FOOTE, Petitioner-Appellant,
v.
Frankie Sue DEL PAPA; E.K. McDaniel,
Respondents-Appellees.
**No. 06-15094.**

Argued and Submitted Nov. 17, 2006.
Filed July 3, 2007.

**Background:** Following affirmance of his state
court convictions of battery and sexual assault
crimes and denial of postconviction relief,
petitioner sought writ of habeas corpus. The United
States District Court for the District of Nevada,
Robert C. Jones, J., denied relief, and defendant
appealed.

**Holding:** The Court of Appeals, Wallace, Circuit
Judge, held that state postconviction court did not
act contrary to or unreasonably apply federal law in
rejecting petitioner's claim to conflict-free
appointed appellate counsel, where question was an
open one in Supreme Court jurisprudence.

Affirmed.

Opinion, 486 F.3d 1166, superseded.

**[1] Habeas Corpus 197 ⟶487**

197 Habeas Corpus
    197II Grounds for Relief; Illegality of Restraint
        197II(B) Particular Defects and Authority for
Detention in General
            197k482 Counsel
                197k487 k. Conflict of Interest; Joint
Representation. Most Cited Cases
State postconviction court did not act contrary to or
unreasonably apply federal law in rejecting habeas
petitioner's claim to conflict-free appointed
appellate counsel, where question was an open one,
inasmuch as Supreme Court had never held that "
irreconcilable conflict" with appointed appellate
counsel violates Sixth Amendment or that appointed
appellate counsel has a conflict of interest based on
a defendant's dismissed lawsuit against public
defenders office and appointed pre-trial counsel, as
was alleged in case at bar. U.S.C.A. Const.Amend. 6
; 28 U.S.C.A. § 2254.

**[2] Habeas Corpus 197 ⟶482.1**

197 Habeas Corpus
    197II Grounds for Relief; Illegality of Restraint
        197II(B) Particular Defects and Authority for
Detention in General
            197k482 Counsel
                197k482.1 k. In General. Most Cited
Cases
"*Sullivan* exception" to the rule that a habeas
petitioner must show prejudice in connection with
his ineffective assistance of counsel claim arises in
instances where assistance of counsel has been
denied entirely or during a critical stage of the
proceeding. U.S.C.A. Const.Amend. 6; 28 U.S.C.A.
§ 2254.

**[3] Habeas Corpus 197 ⟶487**

197 Habeas Corpus
    197II Grounds for Relief; Illegality of Restraint
        197II(B) Particular Defects and Authority for
Detention in General
            197k482 Counsel
                197k487 k. Conflict of Interest; Joint
Representation. Most Cited Cases
The *Sullivan* exception to the rule that a habeas
petitioner must show prejudice in connection with

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----                                                    Page 2

--- F.3d ----, 2007 WL 1892862 (C.A.9 (Nev.)), 07 Cal. Daily Op. Serv. 7919
**(Cite as: --- F.3d ----)**

his ineffective assistance of counsel claim applies where the petitioner shows: (1) that his counsel actively represented conflicting interests; and (2) that this adversely affected his counsel's performance. U.S.C.A. Const.Amend. 6; 28 U.S.C.A. § 2254.

**[4] Habeas Corpus 197 ⚖═487**

197 Habeas Corpus
   197II Grounds for Relief; Illegality of Restraint
     197II(B) Particular Defects and Authority for Detention in General
       197k482 Counsel
         197k487 k. Conflict of Interest; Joint Representation. Most Cited Cases
Whether *Sullivan* exception to necessity of showing prejudice as result of conflict of interest extends beyond cases involving conflicts of interest arising from joint representation is an open question of Supreme Court jurisprudence, and thus state postconviction court did not act contrary to or unreasonably apply clearly established federal law in denying to apply exception to "irreconcilable conflict" with appointed appellate counsel or to such counsel's conflict of interest allegedly arising from petitioner's dismissed suit against public defenders' office and appointed pre-trial counsel. U.S.C.A. Const.Amend. 6; 28 U.S.C.A. § 2254.

Paul G. Turner, Assistant Federal Public Defender, Las Vegas, NV, for the petitioner-appellant.
David K. Neidert, Senior Deputy Attorney General, Criminal Justice Division, Reno, NV, for the respondents-appellees.

Appeal from the United States District Court for the District of Nevada; Robert C. Jones, Presiding. D.C. No. CV-02-00288-RCJ/RAM.

Before: J. CLIFFORD WALLACE and SIDNEY R. THOMAS, Circuit Judges, and DAVID A. EZRA, [FN*] District Judge.
WALLACE, Circuit Judge:
*1 Foote appeals from the district court's judgment denying his 28 U.S.C. § 2254 habeas corpus petition. We have jurisdiction to review the district court's judgment under 28 U.S.C. § 2253(a). *See*

*Olvera v. Giurbino,* 371 F.3d 569, 572 (9th Cir.2004). We review the judgment de novo, *Nunes v. Mueller,* 350 F.3d 1045, 1051 (9th Cir.2003), and we affirm. [FN1]

**I.**

**A. The Trial Testimony & Direct Appeal**

In the early morning of February 1, 1987, Foote and a man who Foote later identified as his father (or father-in-law) entered the Mint Hotel in Las Vegas, Nevada. Jane Doe, Keith Taylor, and Foote's wife, Vicky, were seated together at a bar in the hotel. Foote and his father argued with Doe, Taylor, and Vicky. A security guard removed Foote and his father from the premises. Approximately 5:30 a.m., Vicky, Doe, and Taylor went to the Footes' apartment. Vicky and Doe went inside while Taylor remained outside in his car.

Doe testified at trial that she was drunk when she arrived at the apartment, where she and Vicky planned to gather some of Vicky's clothes. Doe also testified that they planned to lie to Foote, telling him that Vicky would spend the night at Doe's residence when in fact Taylor and Vicky planned to spend the rest of the night together. According to Doe, an argument erupted between the Footes. Brandishing a knife, Foote forced Doe to perform fellatio and had vaginal intercourse with her. Doe stated that after falling asleep for a time, she was able to leave the apartment with Vicky.

After the State rested its case, the trial judge asked, out of the presence of the jury, whether Foote had chosen not to testify in his own defense, and Foote responded, "Yes." The defense rested without calling any witnesses. In March 1988, following the trial, the court entered a judgment of conviction against Foote for battery with intent to commit a crime, sexual assault, and sexual assault with a deadly weapon. The Nevada Supreme Court dismissed Foote's direct appeal in January 1989.

**B. The Alleged Conflict of Interest**

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----, 2007 WL 1892862 (C.A.9 (Nev.)), 07 Cal. Daily Op. Serv. 7919
**(Cite as: --- F.3d ----)**

Chamberlain, a Deputy Public Defender in the Clark County Public Defenders Office (Public Defenders Office), represented Foote at his May 1987 arraignment in this case. The following month, Foote filed a complaint in United States District Court for the District of Nevada naming Chamberlain and the Public Defenders Office as defendants. Foote alleged that Chamberlain " refused to ask [him] pertinent Questions"; that she " approached [him] ... with a plea Bargain, even though [he] demanded [his] right to trial"; that "all efforts to contact Ms. Chamberlain to prepare his defense [were] futile"; that "Chamberlain refused to supply[him] with all copies of records concerning [his] arrest"; and that she thereby failed to afford him "all of [his] rights as guarante[ed] by] the Constitution of the United States."

In July 1987, the Public Defenders Office filed a motion to withdraw as Foote's counsel, asserting that the lawsuit "create[d] a clear conflict of interest " and that Chamberlain could not "adequately represent the interests of [the] defendant." Apparently, the motion was granted and Foote's retained counsel, Cherry, replaced Chamberlain. In December 1987, the federal district court dismissed Foote's action against Chamberlain and the Public Defenders Office.

**\*2** At the close of sentencing, Cherry and the judge engaged in the following dialogue:
MR. CHERRY: Your Honor, may we have this on calendar next week so he can have a public defender file a notice of appeal in this matter. He is indigent and as he said, he is on disability and he does want to appeal this and I think he should.
THE COURT: There isn't any problem so the public defender could represent him on appeal.
MR. CHERRY: I don't think there is a conflict. I think they represented him at one time, but I want to make sure it's on calendar so a notice is filed.
THE COURT: All right.

The trial court subsequently ordered the re-appointment of the Public Defenders Office to represent Foote in his direct appeal.

In a habeas corpus petition filed in state court in 1990 (1990 State Petition), Foote pressed a claim of

ineffective assistance of appellate counsel based on the Public Defender's alleged conflict of interest. Foote stated that he had written "to the public defenders office and requested that they withdraw from [his] appeal and that they request that the court appoint new independent counsel," but that he " never did receive a response to this letter" and thus " thought that there was nothing further he could do." Foote also alleged that appellate counsel failed to provide him with copies of briefs, police reports, and the Nevada Supreme Court's order dismissing his direct appeal. Finally, Foote alleged that appellate counsel failed to raise meritorious appellate issues. The Nevada Supreme Court rejected Foote's "conflict of interest" claim, characterizing the alleged conflict as merely a " potential " conflict, not an actual one.

## II.

**[1]** Foote asserts a Sixth Amendment right to be represented by conflict-free appointed appellate counsel. We apply the standards of the Antiterrorism and Effective Death Penalty Act (AEDPA) to the Nevada Supreme Court's reasoned decision denying the 1990 State Petition. *See Taylor v. Lewis,* 460 F.3d 1093, 1097 n. 4 (9th Cir.2006). Under AEDPA, we will grant habeas relief if the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1); *see Williams v. Taylor,* 529 U.S. 362, 405-409, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). This last phrase "refers to the holdings ... of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams,* 529 U.S. at 412, 120 S.Ct. 1495.

AEDPA requires that Foote's "conflict of interest" claim not implicate an "open question" in the Court's jurisprudence. *See Carey v. Musladin,* ---U.S. ----, 127 S.Ct. 649, 653, 166 L.Ed.2d 482 (2006). While we have recognized that an " irreconcilable conflict" between a criminal defendant and his trial counsel may entitle a defendant to new counsel, *see United States v. Moore,* 159 F.3d 1154, 1158 (9th Cir.1998), no

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Supreme Court case has held that an "irreconcilable conflict" between the defendant and his appointed appellate counsel violates the Sixth Amendment. Nor has the Supreme Court held that a defendant states a Sixth Amendment claim by alleging that appointed appellate counsel had a conflict of interest due to the defendant's dismissed lawsuit against the public defenders office and appointed pre-trial counsel. Foote's "conflict of interest" claim thus fails.

*3 [2][3] *Cuyler v. Sullivan* does not save Foote's claim. *Sullivan* established that under the Sixth Amendment we will "forgo individual inquiry into whether counsel's inadequate performance undermined the reliability of the verdict in instances where assistance of counsel has been denied entirely or during a critical stage of the proceeding." 446 U.S. 335, 348, 350, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). We have described this principal as the "*Sullivan* exception" to the rule that a habeas petitioner must show prejudice in connection with his ineffective assistance of counsel claim. *See Earp v. Ornoski,* 431 F.3d 1158, 1183 (9th Cir.2005); *see also Mickens v. Taylor,* 535 U.S. 162, 166, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002) (recognizing *Sullivan* exception). The *Sullivan* exception applies where the petitioner shows: (1) that his counsel actively represented conflicting interests; and (2) that this adversely affected his counsel's performance. *See id.* at 1182, *citing Sullivan,* 446 U.S. at 348, 100 S.Ct. 1708. " To show án actual conflict resulting in an adverse effect, [the petitioner] must demonstrate that some plausible alternative defense strategy or tactic might have been pursued but was not and that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests." *Hovey v. Ayers,* 458 F.3d 892, 908 (9th Cir.2006) (quotations omitted).

[4] The Supreme Court has never held that the *Sullivan* exception applies either to a defendant's " irreconcilable conflict" with his appointed appellate counsel or to such counsel's conflict of interest. Indeed, *Mickens* "explicitly concluded that *Sullivan* was limited to joint representation, and that any extension of *Sullivan* outside of the joint representation at trial context remained, 'as far as

the jurisprudence of[the Supreme Court was] concerned, an open question.' " *Earp,* 431 F.3d at 1184, *quoting Mickens,* 535 U.S. at 176, 122 S.Ct. 1237.

Foote's reliance on *Anders v. California,* which involved appointed counsel who failed to file a brief on behalf of his client on appeal, also does not help him. 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). Counsel wrote to the court that he was "of the opinion that there is no merit to the appeal." *Id.* at 742, 87 S.Ct. 1396. The Supreme Court held that this denied the defendant the right to appointed counsel guaranteed by *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), because "[t]he constitutional requirement of substantial equality and fair process can only be attained where counsel acts in the role of an active advocate in behalf of his client, as opposed to that of an amicus curiae." 386 U.S. at 744, 87 S.Ct. 1396. By contrast, Foote's counsel raised claims in the direct appeal.

*Entsminger v. Iowa* is similarly inapposite. 386 U.S. 748, 87 S.Ct. 1402, 18 L.Ed.2d 501 (1967). There, the Court held that petitioner's appointed counsel had not "function[ed] in the active role of an advocate" because he failed to file the papers necessary to perfect a plenary appeal. *Id.* at 751, 87 S.Ct. 1402. Counsel apparently did this because he believed petitioner's appeal lacked merit. *Entsminger* relied on *Anders,* which was issued the same day.

*4 Finally, the holding of *United States v. Cronic* does not apply here. 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). *Cronic* involved the appointment of an inexperienced lawyer shortly before trial. The Tenth Circuit held that the defendant had received ineffective assistance of counsel solely based on the disparity between the government's and defense counsel's experience and time to prepare for trial. *Id.* at 650, 104 S.Ct. 2039. The Supreme Court reversed, holding that the test for effectiveness is the lawyer's actual performance, not extrinsic factors such as time to prepare or degree of experience. *Id.* at 663-66, 104 S.Ct. 2039.

Neither *Sullivan, Anders, Entsminger,* nor *Cronic*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----            Page 5
--- F.3d ----, 2007 WL 1892862 (C.A.9 (Nev.)), 07 Cal. Daily Op. Serv. 7919
(Cite as: --- F.3d ----)

stand for the proposition that a criminal defendant states a Sixth Amendment claim by alleging either an "irreconcilable conflict" with his appointed appellate counsel or that such counsel had a conflict of interest based on the petitioner's dismissed lawsuit against the public defender's office and appointed pre-trial counsel. Therefore, the Nevada Supreme Court's rejection of the conflict of interest claim was neither contrary to, nor an unreasonable application of, established federal law as determined by the Supreme Court of the United States. *See* 28 U.S.C. § 2254(d)(1).

**AFFIRMED.**

     FN* The Honorable David A. Ezra, United States District Judge for the District of Hawaii, sitting by designation.

     FN1. We affirm the district court's denial of Foote's remaining claims in a simultaneously-filed memorandum disposition.

C.A.9 (Nev.),2007.
Foote v. Del Papa
--- F.3d ----, 2007 WL 1892862 (C.A.9 (Nev.)), 07 Cal. Daily Op. Serv. 7919

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.