**NOT FOR CITATION**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HECTOR HERNANDEZ,<br><br>　　　　　Petitioner,<br><br>　vs.<br><br>ARNOLD SCHWARZENEGGER, Governor,<br><br>　　　　　Respondent.　　　　　　　／ | No. C 07-3427 PJH (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

　　　　This is a habeas corpus case filed by a state prisoner pursuant to 28 U.S.C. § 2254. The petition is directed to a denial of parole.

　　　　The court ordered respondent to show cause why the writ should not be granted. Respondent has filed an answer, a memorandum of points and authorities in support of it, and exhibits. Petitioner has responded with a traverse. For the reasons set forth below, the petition will be denied.

**BACKGROUND**

　　　　In 1986, a jury in the Superior Court for the County of Fresno found petitioner guilty of second degree murder with use of a firearm. On June 10, 1986, he was sentenced to a total term of seventeen years to life in state prison, consisting of a term of fifteen years to life for murder plus two years for using a firearm. (Resp. Ex. 1.)

　　　　Petitioner, represented by counsel, appeared for his eighth parole hearing on June

8, 2006 before the Board, which granted parole. (Pet. Ex. 2 at 49.) On November 3, 2006, the Governor of California reviewed the Board's decision and reversed the Board's grant of parole. (Pet. Ex. 3.) The Governor based his decision on the nature of the commitment offense, petitioner's criminal and social history, his disciplinary record in prison, his insufficient parole plans, his lack of remorse, and the District Attorney's opposition to parole. (*Id.*) In his review of the Board's decision finding petitioner suitable for parole, the Governor summarized the facts of the commitment offense as follows:

> On August 15, 1985, Hector Hernandez shot to death Sylvestre Bustos while attempting to purchase heroin. Early that morning, Mr. Hernandez went to Mr. Bustos' home to buy heroin. He knocked on one of the windows, waking Mr. Bustos' roommate, Enrique Casias. Mr. Casias went to the window and saw Mr. Hernandez standing outside. Mr. Casias opened the window and talked with Mr. Hernandez, agreeing to sell him heroin for $20. Mr. Hernandez paid the money and Mr. Casias went to retrieve some heroin. The heroin was inside Mr. Bustos' boots, which were next to the couch in the living room. Mr. Bustos was asleep on the couch with a gun tucked into his waistband.
>
> While Mr. Casias bent over Mr. Bustos' boots, Mr. Hernandez forced his way through the front door of the residence, armed with a sawed-off shotgun. He demanded Mr. Bustos' gun and heroin. When Mr. Bustos rose from the couch, Mr. Hernandez shot him one time from a distance of approximately seven or eight feet. He took Mr. Bustos' gun and fled the scene.

(Pet. Ex. 3 at 1.)

Following the Governor's reversal of the Board's decision, petitioner filed a petition for writ of habeas corpus in superior court, which denied the petition on January 11, 2007. (Resp. Ex. 14.) Petitioner subsequently sought relief in the court of appeal, which summarily denied his petition for habeas relief, and the state supreme court, which summarily denied the petition for review. (Resp. Exs. 16 & 18.) Thereafter, petitioner filed this federal petition for a writ of habeas corpus. Respondent does not dispute that the petition is timely and presents claims that were exhausted in state court. The petition is submitted for a decision on the merits.

2

## STANDARD OF REVIEW

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, falls under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *See id.* at 409.

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." *Miller-El*, 537 U.S. at 340. This presumption is not altered by the fact that the finding was made by a state court of appeals, rather than by a state trial court. *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981); *Bragg v. Galaza*, 242 F.3d 1082, 1087 (9th Cir.), *amended*, 253 F.3d 1150 (9th Cir. 2001). A petitioner must present clear and convincing evidence to overcome § 2254(e)(1)'s presumption of correctness;

conclusory assertions will not do. *Id.*

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

When, as here, there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th Cir.2000). Thus, in order to determine whether the state court decisions were contrary to, or an unreasonable application of, clearly established federal law, the court in this case looks to the opinion of the superior court denying the state habeas petition because the appellate and supreme courts both issued summary denials. (Resp. Exs. 14, 16, 18.)

**DISCUSSION**

As grounds for federal habeas relief, petitioner asserts that his due process rights were denied when the Governor reversed the Board's decision to grant parole based on the unchanging circumstances of his crime and his prior criminal history.

**I.    Due Process in Parole Suitability Determinations**

    **A.    Some Evidence Standard of Judicial Review**

The Ninth Circuit has determined that a California prisoner with a sentence of a term of years to life with the possibility of parole has a protected liberty interest in release on parole and therefore a right to due process in the parole suitability proceedings. *See McQuillion v. Duncan*, 306 F.3d 895, 902 (9th Cir. 2002) (citing *Board of Pardons v. Allen*, 482 U.S. 369 (1987); *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1 (1979)). *See also Irons v. Carey*, 505 F.3d 846, 851 (9th Cir.), *reh'g and reh'g en banc denied*, 506 F.3d 951 (9th Cir. 2007); *Sass v. California Board of Prison Terms*, 461 F.3d 1123, 1127-28 (9th Cir. 2006), *reh'g and reh'g en banc denied*, No. 05-16455 (9th Cir. Feb. 13, 2007); *Biggs v. Terhune*, 334 F.3d 910, 915-16 (9th Cir. 2003).

A parole board's decision satisfies the requirements of due process if "some

evidence" supports the decision. *Sass*, 461 F.3d at 1128-29 (adopting some evidence standard for disciplinary hearings outlined in *Superintendent v. Hill*, 472 U.S. 445, 454-55 (1985)). *See also Irons*, 505 F.3d at 851. "To determine whether the some evidence standard is met 'does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached'" by the parole board. *Sass*, 461 F.3d at 1128 (quoting *Hill*, 472 U.S. at 455-56). The "some evidence standard is minimal, and assures that 'the record is not so devoid of evidence that the findings of the . . . board were without support or otherwise arbitrary.'" *Id.* at 1129 (quoting *Hill*, 472 U.S. at 457).

Respondent contends that an inmate is entitled to only minimal protections to satisfy due process in a parole proceeding. Citing *Greenholtz*, Respondent contends that due process in state parole procedures is satisfied merely if they afford the inmate an opportunity to be heard and a decision informing him why he did not qualify for parole release. The Ninth Circuit, however, has held that requiring less than the some evidence standard "would violate clearly established federal law because it would mean that a state could interfere with a liberty interest - that in parole - without support or in an otherwise arbitrary manner." *Sass*, 461 F.3d at 1129. Thus, the some evidence standard of *Superintendent v. Hill* is clearly established law in the context of parole denial for purposes of federal habeas review. *Id.*

### B.     State Regulations Governing Parole Suitability

In assessing whether the Board's denial of parole was supported by some evidence, the court's "analysis is framed by the statutes and regulations governing parole suitability determinations in the relevant state." *Irons*, 505 F.3d at 851 (citing *Biggs*, 334 F.3d at 915). "Accordingly, here we must look to California law to determine the findings that are necessary to deem a prisoner unsuitable for parole, and then must review the record in order to determine whether the state court decision holding that these findings were supported by 'some evidence' in [petitioner's] case constituted an unreasonable application of the 'some evidence' principle articulated in *Hill*, 472 U.S. at 454." *Id.*

Under California law, "[t]he Board must determine whether a prisoner is presently too dangerous to be deemed suitable for parole based on the 'circumstances tending to show unsuitability' and the 'circumstances tending to show suitability' set forth in Cal. Code. Regs., tit.15 § 2402(c)-(d)." *Id.*

Title fifteen, section 2402, of the California Code of Regulations sets forth the criteria for determining whether an inmate is suitable for release on parole.  The circumstances tending to show that a prisoner is unsuitable include the following: (1) the commitment offense, where the offense was committed in "an especially heinous, atrocious or cruel manner;" (2) the prisoner's previous record of violence; (3) "a history of unstable or tumultuous relationships with others;" (4) commission of "sadistic sexual offenses;" (5) "a lengthy history of severe mental problems related to the offense;" and (6) "serious misconduct in prison or jail."  Cal. Code. Regs., tit. 15 § 2402(c).  The circumstances tending to show that a prisoner is suitable for parole include the following: (1) the prisoner has no juvenile record; (2) the prisoner has experienced reasonably stable relationships with others; (3) the prisoner has shown remorse; (4) the prisoner committed his crime as the result of significant stress in his life; (5) the prisoner suffered from Battered Woman Syndrome at the time of committing the crime; (6) the prisoner lacks any significant history of violent crime; (7) the prisoner's present age reduces the risk of recidivism; (8) the prisoner "has made realistic plans for release or has developed marketable skills that can be put to use upon release;" and (9) institutional activities "indicate an enhanced ability to function within the law upon release."  Cal. Code. Regs., tit. 15 § 2402(d).

### C. *Biggs* Challenge

Petitioner argues that the Board improperly relied on the unchanging circumstances of the commitment offense.  Petitioner relies on *Biggs*, where the Ninth Circuit suggested in dicta that sole reliance on the commitment offense could raise "serious questions" about a state prisoner's liberty interest in parole.  *See Biggs*, 334 F.3d at 916-17.  *Biggs* upheld the initial denial of a parole release date based solely on the nature of the crime and the prisoner's conduct before incarceration, but cautioned that the value of the criminal offense fades over time as a predictor of parole suitability: "The Parole Board's decision is one of

'equity' and requires a careful balancing and assessment of the factors considered. . . . A continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." *Biggs*, 334 F.3d at 916-17.

As the Ninth Circuit noted in *Sass*, "*Biggs* affirmed a denial of parole after holding that the circumstances of the offense and conduct prior to imprisonment constituted some evidence to support the Parole Board's decision." *Sass*, 461 F.3d at 1126 (citing *Biggs*, 334 F.3d at 917). *See Biggs*, 334 F.3d at 916 ("As in the present instance, the parole board's sole supportable reliance on the gravity of the offense and conduct prior to imprisonment to justify denial of parole can be initially justified as fulfilling the requirements set forth by state law.").

The Ninth Circuit has expressed competing views on *Biggs* in subsequent panel decisions. In *Sass*, the Ninth Circuit held that evidence of Sass's prior offenses and the gravity of his commitment offenses constituted some evidence to support the Board's decision. 461 F.3d at 1129. Acknowledging the cautionary statements in *Biggs* concerning the potential for a due process violation by continued reliance in the future on immutable factors, *Sass* criticized that part of the opinion as improper speculation about how future parole hearings could proceed. *Id.*

In *Irons*, however, the Ninth Circuit echoed the concern raised in *Biggs* and expressed its "hope that the Board will come to recognize that in some cases, indefinite detention based solely on an inmate's commitment offense, regardless of the extent of his rehabilitation, will at some point violate due process, given the liberty interest in parole that flows from the relevant California statutes." *Irons*, 505 F.3d at 854 (citing *Biggs*, 334 F.3d at 917). Although the court determined that the Board's unsuitability finding was supported by "some evidence" that Irons's crime was especially cruel and callous, the *Irons* panel pointed out that in the cases holding that sole reliance on the commitment offense did not violate due process, namely, *Irons*, *Sass* and *Biggs*, "the decision was made before the inmate had served the minimum number of years required by his sentence." *Irons*, 505 F.3d at 852-54. *Irons* reasoned that due process was not violated when these prisoners

7

were deemed unsuitable for parole "prior to the expiration of their minimum terms," even if they had demonstrated substantial evidence of rehabilitation. *Id.* at 854.

Recently, the Ninth Circuit held rehearing en banc in *Hayward v. Marshall*, 512 F.3d 536 (9th Cir.), *reh'g en banc granted*, 527 F.3d 797 (9th Cir. 2008), which presented a state prisoner's due process habeas challenge to the denial of parole. The three-judge *Hayward* panel had concluded that the gravity of the commitment offense had no predictive value regarding the petitioner's suitability for parole, and held that the Governor's reversal of parole was not supported by some evidence and resulted in a due process violation. 512 F.3d at 546-47. The Ninth Circuit has not yet issued an en banc decision in *Hayward*; since holding rehearing en banc on June 24, 2008, the Ninth Circuit has ordered briefing on the questions, *inter alia*, whether the order granting rehearing en banc should be vacated and submission of the matter deferred, pending the California Supreme Court's decisions in *In re Lawrence*, No. S154018 and *In re Shaputis*, No. S155872, both of which cases were argued on June 4, 2008. *Hayward v. Marshall*, No. 06-55392, slip op. at 2 (9th Cir. July 10, 2008).

Unless or until the en banc court overrules the holdings of the earlier Ninth Circuit panel decisions in *Biggs*, *Sass* and *Irons*, these cases hold that California's parole scheme creates a federally protected liberty interest in parole and therefore a right to due process which is satisfied if some evidence supports the Board's parole suitability decision. *Sass*, 461 F.3d at 1128-29. These cases also hold that the Board may rely on immutable events, such as the nature of the conviction offense and pre-conviction criminality, to find that the prisoner is not currently suitable for parole, *Sass*, 461 F.3d at 1129. *Biggs* and *Irons* further suggest, however, that over time, the commitment offense and pre-conviction behavior become less reliable predictors of danger to society such that repeated denial of parole based solely on immutable events, regardless of the extent of rehabilitation during incarceration, could violate due process at some point after the prisoner serves the minimum term on his sentence. *See Irons*, 505 F.3d at 853-54.

Petitioner has failed to establish the predicate for his *Biggs* claim. For one thing, the denial of parole was not solely based upon the circumstances of his offense and his prior

8

criminal and social history, but also upon the Governor's finding that petitioner did not demonstrate remorse sufficiently and had inadequate parole plans, petitioner's disciplinary history in prison, and upon the District Attorney's objection to petitioner's release.  In any event, even assuming for purposes of this discussion that *Biggs* and *Irons* recognized an abstract due process right not to have parole repeatedly denied on the basis of the facts of one's crime and one's criminal history, and in the face of extensive evidence of rehabilitation, and also assuming arguendo that the right was violated in petitioner's case, petitioner still cannot obtain relief on this theory, because as there is no clearly-established United States Supreme Court authority recognizing a "*Biggs* claim."  The state courts' rulings therefore could not be contrary to, or an unreasonable application of, clearly-established Supreme Court authority within the meaning of 28 U.S.C. § 2254(d)(1).

### D.  Some Evidence of Parole Unsuitability

In his decision, the Governor considered several factors favoring petitioner's suitability for parole, including petitioner's vocational and educational training in prison, his participation in self-help and substance abuse programs, his close family ties and substantial support from relatives and community members, and positive evaluations from mental health and correctional professionals.  (Pet. Ex. 3 at 1.)  However, the Governor found that these positive factors were outweighed by the following negative factors, indicating unsuitability: (1) the commitment offense was "especially grave" and carried out in a "callous manner," (2) petitioner did not demonstrate remorse sufficiently; (3) petitioner's parole plans were inadequate; (4) petitioner had a record of discipline in prison; (5) petitioner had a history of crime and unstable social relationships; and (6) the Los Angeles County District Attorney opposed parole.  (*Id.* at 2-3.)

In reviewing the Governor's decision, the superior court found "some evidence" in the record supported the denial of parole because the circumstances of the commitment offense were more than the minimum necessary to sustain a second-degree murder conviction, there was an "escalating pattern" in petitioner's criminal history prior to the murder, and petitioner's disciplinary record in prison.  (Resp. Ex. 14 at 2-4.)  The superior court also noted that the Governor's finding that petitioner had insufficient remorse

"has at least some basis in fact." (*Id.* at 3.)[1]

### a. Commitment Offense and Prior History

The state regulations provide that the following factors may be considered in determining whether the commitment offense was "especially heinous, atrocious or cruel:" (A) multiple victims were attacked, injured or killed in the same or separate incidents; (B) the offense was carried out in a dispassionate and calculated manner, such as an execution-style murder; (C) the victim was abused, defiled or mutilated during or after the offense; (D) the offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering; (E) the motive for the crime is inexplicable or very trivial in relation to the offense. Cal. Code Regs., tit. 15 § 2402(c)(1).

To begin with, there was evidence that the offense was carried out in a calculated manner insofar as there was evidence that petitioner had previously quarreled with the victim over whether the victim had shortchanged him in a drug purchase, and that, on the day of the murder, petitioner went to the victim's house with a loaded sawed-off shotgun.[2] (Pet. Ex. 3 at 2.) Secondly, there was evidence of a callous disregard for human suffering insofar as petitioner created a very dangerous situation for both the victim and the victim's roommate by breaking into the victim's house, and then shot the victim, who had just been sleeping and was very vulnerable, at close range with a sawed-off shotgun. (*Id.*) Lastly, the motive for the crime – an apparent attempt to steal drugs or money – was exceedingly trivial in relation to the crime of murder. (*Id.*)

There was also evidence that petitioner had a troubled and violent past prior to committing the murder. *See* 15 Cal. Code Regs. § 2402(c)(2)-(3). He had used a wide variety of drugs, and was a regular heroin user. (Pet. Ex. 3 at 2.) He committed the murder at age 26, by which time he had a long criminal record, including convictions for

---

[1] The superior court did not mention the Governor's findings of inadequate parole plans or the District Attorney's opposition to parole. (Resp. Ex. 14 at 1-4.)

[2] The Governor and superior court found that this evidence indicated premeditation, as in first degree murder. (Resp. Ex. 14 at 3; Pet. Ex. 3 at 2.) State law permitted the Governor to reverse the Board's decision based in part on evidence of premeditation even though the jury's verdict did not encompass a finding of premeditation. (Resp. Ex. 15 (citing *In re Rosenkrantz*, 29 Cal. 4th 616, 679 (2002).)

discharging a firearm into an unoccupied dwelling or vehicle, harboring a fugitive, and driving under the influence of drugs, and juvenile adjudications for armed robbery, assault with a deadly weapon, burglary, carrying a firearm, and resisting arrest. (*Id.*)

The facts of the commitment offense, as well as petitioner's substantial history of crime, violence and drug abuse, provide some evidence that petitioner presented a danger to the public if released on parole.

### b.  Disciplinary History in Prison

There was also evidence that petitioner had engaged in serious misconduct in prison. *See* 15 Cal. Code Regs. § 2402(c)(6). He had been disciplined seven times, including violations of prison rules against possession of a knife blade and possession of alcohol, among others. (Pet. Ex. 3 at 1.) Petitioner had also been counseled on 12 occasions for minor misconduct, most recently in 2001. (*Id.*) Petitioner's disciplinary problems, particularly as substance abuse played such an important role in the commitment offense, could reasonably be viewed by the state courts as some evidence that petitioner would present a danger if released on parole.

### c.  Remorse and Parole Plans

The Governor found a lack of remorse because, as late as 2006, petitioner still was not accepting full responsibility for the crime because he insisted that he shot the victim in self-defense. (*Id.* at 2 (citing the Life Prisoner Evaluation and the mental health evaluation).) Inasmuch as petitioner's insistence upon self-defense and belief that he should not have been convicted indicate that petitioner had not fully accepted responsibility for murdering the victim, this amounted to some evidence that petitioner had potential to continue to offend upon his release from prison.

In addition, the Governor found inadequate parole plans because petitioner did not have a job offer for when he was released from prison. (*Id.*) The evidence that petitioner's parole plans were inadequate is not convincing. Even the Governor acknowledged petitioner's extensive educational and vocational training, his self-help and substance abuse therapy, his "solid relationships and close ties with supportive family and friends." (*Id.* at 1.) It would be unlikely for an employer to offer petitioner a job given the fact that he

11

is incarcerated, has no release date, and has no certainty of ever being released.  As a result, the lack of a job offer does not, in light of petitioner's substantial educational and vocational training and community support, by itself mean that he has not "made realistic plans for release or [] developed marketable skills that can be put to use upon release." *See* 15 Cal. Code. Regs. § 2402(d) (8).

### d. District Attorney's Opposition

The Fresno County District Attorney's Office opposed granting parole.  (Resp. Ex. 12.)  The District Attorney opined that petitioner posed an unreasonable risk to society if released because of the circumstances of the offense, petitioner's juvenile and adult criminal history, petitioner's "lack of insight" into his offense and "the role his drug addiction played," petitioner's "lack of concrete parole plans," and the notation of petitioner's drug abuse as a risk factor in petitioner's psychological evaluation.  (*Id.*)

In sum, the evidence in the record showed that the commitment offense was especially cruel, petitioner had an unstable social history, he had a record of discipline in prison, he did not accept full responsibility for the offense, and the prosecutor opposed release on parole.  Contrary to petitioner's claim that the Governor's decision violated his right to due process, the record contains some evidence to support the Governor's finding that petitioner continued to present a risk of danger to society if released on parole.  Thus, the state courts' denial of habeas relief was neither contrary to nor an unreasonable application of clearly established federal law.

### CONCLUSION

The petition for a writ of habeas corpus is **DENIED**.  The clerk shall close the file.

Dated: January 5, 2009.

PHYLLIS J. HAMILTON
United States District Judge

G:\PRO-SE\PJH\HC.07\HERNANDEZ427.parole_deny.wpd